ORTIZ & ORTIZ, LLP
32-72 Steinway Street, Ste. 402
Astoria, New York 11103
Tel. (718) 522-1117
Fax (718) 596-1302
email@ortizandortiz.com
*Attorneys for the Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

| | |
|---|---|
| MARIA TERESA NOBLE, | **COMPLAINT** |
| Plaintiff, | Civil Case No. |
| – vs.– | JURY TRIAL DEMANDED |
| MOUNT OLIVET CHURCH, INC., aka MOUNT OLIVERT CHURCH, INC., aka MOUNT OLIVER CHURCH INC., aka MOUNT OLIVE CHURCH INC., and ARACELIS STAATZ, as Trustee of Mount Olivet Church, | |
| Defendants. | |

-------------------------------------------------------X

Maria Teresa Noble ("Plaintiff"), by and through her counsel Ortiz & Ortiz LLP, hereby complains of Mount Olivet Church and Aracelis Staatz as Trustee (collectively, the "Defendants") and states, upon information and belief, as follows:

## NATURE OF THE ACTION

1. Mount Olivet Church (the "Church") holds title to the real property known as 2176 Grand Concourse, Bronx County, New York 10457 (the "Property"). Plaintiff entered into a valid contract to purchase the Property in 2014 (the "Contract"), and has been misled and stymied in her efforts to close upon the purchase of the Property since the Contract was signed.

Since the Plaintiff is a religious organization, and requires the approval of the N.Y.S. Attorney General (the "A.G.") to sell the Property, the Plaintiff has expended her time and resources attempting to assist the Defendants in obtaining the A.G.'s approval of the sale since 2014. However, the Defendants have ceased communicating with the Plaintiff and have appeared to abandon their efforts to obtain approval of the sale. The Plaintiff has been damaged by the Defendants breach of the agreement and seeks to compel compliance with the Contract.

## THE PARTIES

2. Maria Teresa Noble ("Noble") is a New Jersey resident.

3. Mount Olivet Church (the "Church") is a religious corporation organized under the Laws of the State of New York.

4. Aracelis Staatz ("Staatz") refers to herself as an officer and Trustee of the Church.

## JURISDICTION

5. This action is between citizens of different states. The amount in controversy, excluding interest and costs, exceeds the sum or value of $75,000. Jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. §1332.

6. Venue is deemed proper in this District pursuant to 28 U.S.C. § 1931. The events giving rise to this action took place within the jurisdiction of this court and the Property is located in this District.

## FACTS

7. Staatz acts on behalf of the Church and controls its actions.

8. Staatz signed a contract of sale, on behalf of the Church, to sell the Property to the

Plaintiff on or about July 9, 2014, for the purchase price of $600,000.00. A copy of the contract is annexed as Exhibit A.

9. The sale of the Property was approved by the Church's members and Board of Directors.

10. The Church was represented by counsel Jaime Ramirez P.C. with offices located in Bronx County, New York, in connection with the sale.

11. Paragraph 1 of the contract required the Plaintiff to provide the Defendant with a fully executed contract and a $15,000.00 deposit.

12. Paragraph 31 of the Rider to the contract provides that the sale is subject to court approval as required by applicable religious corporation law.

13. The Plaintiff tendered a $1,000.00 deposit check upon signing the contract to Mr. Ramirez, and Mr. Ramirez negotiated the check.

14. The Plaintiff tendered a second deposit check in the amount of $14,000.00 to Mr. Ramirez.

15. Mr. Ramirez informed the Plaintiff that he would hold in escrow, but not negotiate, the $14,000 deposit check until the Church obtained the AG's approval of the sale.

16. Noble and her real estate broker Ledwin Oviedo (the "Broker") have invested countless hours over the last four years assisting the Defendants in its attempts to prosecute the sale.

17. The Church retained attorney Laura C. Browne of Bronx County to assist it in obtaining the requisite AG and court approval to sell the Property to the Plaintiff and comply with the terms of the contract.

18. When Ms. Browne was close to completing the process of obtaining the AG's approval, Ms. Browne was discharged by the Church and Staatz.

19. In or after May 2018, the Plaintiff attempted to contact attorney Serge Joseph, of New York County, telephonically and in writing, to inquire as to the status of the sale, and to state that the Plaintiff is ready, willing, and able to close and consummate the purchase of the Property. The Plaintiff received no response to these inquiries.

20. In or after May 2018, the Plaintiff wrote to the Church, Staatz, the members of the Church's Board of Directors to attempt to prosecute the Contract and sale. No one has responded to these inquiries.

21. The Plaintiff is a real estate sales person and investor and has long standing ties to the community in which the Property is located. The Plaintiff sought to purchase the Property because its location is advantageous to the Plaintiff's business.

22. The Plaintiff presently operates from offices across the street from the Property, located at 2153 Grand Concourse, Bronx, New York.

23. Staatz informed the Broker that she wants to recover personally some or all of the proceeds of the sale, and that she could not retain the sales proceeds for her own personal use under applicable New York religious law.

24. The Plaintiff believes that Staatz has caused the Church to breach the contract because Staatz seeks to benefit personally from the sale.

25. The Plaintiff is ready, willing, and able to comply with the terms of the contract, and can close upon the sale as soon as the Church obtains the requisite A.G. and court approval.

26. The Plaintiff believes that the Church is no longer conducting services and

operating as a church, and Staatz does not reside in the Property.

27.     The Plaintiff believes that the Property is in a state of disrepair and has no running water.

28.     The Plaintiff seeks specific performance of the contract.  However, the Plaintiff can not, in good faith, set up a closing and a deadline for the Church to transfer the deed with the knowledge that the Church has not sought A.G. or court approval.

**FIRST CAUSE OF ACTION**
**(Breach of Contract/Specific Performance)**

29.     The Plaintiff reasserts and realleges the allegations contained in Paragraphs 1 though 28.

30.     The contract is a valid and binding contract between the Plaintiff and Defendants.

31.     Staatz has caused the Church to breach the contract of sale by failing to prosecute a petition before the court to approve the sale and seek the A.G.'s approval of the sale.  The Defendants' conduct constitutes a material breach of the Contract.

32.     The Plaintiff is entitled to judgment declaring that the Contract remains in full force and effect and directing the Defendants to specifically perform their obligations under the Contract, including completing the process of obtaining court and A.G. approval of the sale.

33.     The Contract relates to an interest in real property that is unique, special, and irreplaceable.  The specific performance sought by the Plaintiff relates to and affects the title to, or possession, use or enjoyment of real property.

34.     The Plaintiff has no adequate remedy at law and is entitled to specific performance, as monetary damages are inadequate.  Barring specific performance, the Plaintiff

can not be made whole by a an award of monetary damages.

## SECOND CAUSE OF ACTION
### (Breach of Covenant of Good Faith and Fair Dealing)

35. The Plaintiff reasserts and realleges the allegations contained in Paragraphs 1 through 34.

36. Implied in all contracts, including the Contract, is a covenant of good faith and fair dealing which obligates the parties to act in good faith and to use their best efforts to deal fairly with one another.

37. The Defendants have breached the covenant of good faith and fair dealing and have wrongfully deprived, destroyed, and injured the rights of the Plaintiff to receive the value, benefit, and fruits of the Contract by failing to prosecute and complete the process of obtaining court approval of the sale of the Property.

38. The Plaintiff is entitled to judgment declaring that the Contract remains in full force and effect and directing the Defendants to specifically perform their obligations under the Contract, including completing the process of obtaining court and AG approval of the sale.

39. The Contract relates to an interest in real property that is unique, special, and irreplaceable. The specific performance sought by the Plaintiff relates to and affects the title to, or possession, use or enjoyment of real property.

40. The Plaintiff has no adequate remedy at law and is entitled to specific performance, as monetary damages are inadequate. Barring specific performance, the Plaintiff can not be made whole by an award of monetary damages.

WHEREFORE, the Plaintiff demands judgment against Defendants as follows:

a.     On the First Cause of Action, for a judgment declaring and adjudging that the Contract remains in full force and effect and directing that the Plaintiff comply with the terms of the Contract, including seeking court approval of the sale of the Property;

b.     On the Second Cause of Action, for a judgment declaring and adjudging that the Contract remains in full force and effect and directing that the Plaintiff comply with the terms of the Contract, including seeking court approval of the sale of the Property;

c.     And granting such other and further relief as deemed just.

Dated: August 27, 2018
      Astoria, New York

                                               S/*Norma E. Ortiz*
                                               Norma E. Ortiz
                                               Ortiz & Ortiz, L.L.P.
                                               32-72 Steinway Street, Ste. 402
                                               Astoria, New York 11103
                                               Tel. (718) 522-1117
                                               Fax (718) 596-1302
                                               *Counsel to the Plaintiff*

# EXHIBIT A
## (Copy of Contract of Sale)

Reorder Form No. 8068 (3/00)- Residential contract of sale 2-91

*Jointly prepared by the Real Property Section of the New York State Bar Association, the New York State Land Title Association, the Committee on Real Property Law of the Association of the Bar of the City of New York and the Committee on Real Property Law of the New York County Lawyers' Association.*

Warning: NO REPRESENTATION IS MADE THAT THIS FORM OR CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("PLAIN LANGUAGE").

### CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT

NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION.
This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of the law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

**Residential Contract of Sale**

*Date.* **CONTRACT OF SALE**, made as of JULY 9, 2014 BETWEEN MT. OLIVET CHURCH INC.

*Parties:* Address: 2176 GRAND CONCOURSE BRONX, NEW YORK 10456
Social Security Number/Fed. I.D. No(s):

hereinafter called "SELLER", and MARIA T. NOBLE AND/OR HER ASSIGNEE

Address: 250 GORGE ROAD APT 12 D CLIFFSIDE PARK 07010
Social Security Number/Fed. I.D. No.(s):

hereinafter called "PURCHASER".

The parties hereby agree as follows:

*Premises:* 1. Seller shall sell and convey and Purchaser shall purchase the property, together will all buildings and improvements thereon (collectively the "Premises"), more fully described on a separate page marked "Schedule A", annexed hereto and made a part hereof and also known as:

Street Address: 2176 GRAND CONCOUSRE BRONX, NEW YORK

Tax Map Designation: BLOCK 3157 LOT 14

Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

*Personal Property.* 2. This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, bathroom and kitchen cabinets, mantels, door mirrors, switch plates and door hardware, venetian blinds, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine, clothes dryer, garbage disposal unit, range, oven, refrigerator, freezer, air conditioning equipment and installations, wall to wall carpeting and built-ins not excluded below (strike out inapplicable items). ALL AS PRESENTLY EXISTING

Excluded from this sale are furniture and household furnishings and

*Purchase Price:* 3. The purchase price is $ 600,000.00

payable as follows:

(a) on the signing of this contract, by Purchaser's check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "Downpayment"): $15,000.00
(b) by allowance for the principal amount unpaid on the existing mortgage on the date hereof, payment of which Purchaser shall assume by joinder in the deed: $0
(c) by a purchase money note and mortgage from Purchaser to Seller: $0

(d) balance at Closing in accordance with paragraph 7: $585,000.00

*Existing Mortgage:* 4. ~~(Delete if inapplicable) If this sale is subject to an existing mortgage as indicated in paragraph 3(b) above:~~
(a) The premises shall be conveyed subject to the continuing lien of the existing mortgage, which is presently payable, with interest at the rate of percent per annum, in monthly installments of $ which include principal, interest and escrow amounts, if any, and with any balance of principal being due and payable on
(b) To the extent that any required payments are made on the existing mortgage between the date hereof and Closing which reduce the unpaid principal amount thereof below the amount shown in paragraph 3(b), then the balance of the price payable at Closing under paragraph 3(d) shall be increased by the amount of the payments of principal. Seller represents and warrants that the amount shown in paragraph 3(b) is substantially correct and agrees that only payments required by the existing mortgage will be made between the date hereof and Closing.
(c) If there is a mortgagee escrow account, Seller shall assign it to Purchaser, if it can be assigned, and in that case Purchaser shall pay the amount in the escrow account to Seller at Closing.
(d) Seller shall deliver to Purchaser at Closing a certificate dated not more than 30 days before Closing signed by the holder of the existing mortgage, in form for recording, certifying the amount of the unpaid principal, the date to which interest has been paid and the amounts, if any, claimed to be unpaid for principal and interest, itemizing the same. Seller shall pay the fees for recording such certificate. If the holder of the existing mortgage is a bank or other institution as defined in Section 274-a of the Real Property Law ("Institutional Lender"), it may, instead of the certificate, furnish a letter signed by a duly authorized officer, employee or agent, dated not more than 30 days before Closing, containing the same information.
(e) Seller represents and warrants that (i) Seller has delivered to Purchaser true and complete copies of the existing mortgage, the note secured thereby and any extensions and modifications thereof, (ii) the existing mortgage is not now, and at the time of Closing will not be, in default, and (iii) the existing mortgage does not contain any provision that permits the holder of the mortgage to require its immediate payment in full or to change any other term thereof by reason of the sale or conveyance of the Premises.

*Purchase Money Mortgage* 5. ~~(Delete if inapplicable) If there is to be a purchase money mortgage as indicated in paragraph 3(c) above:~~
(a) The purchase money note and mortgage shall be drawn by the attorney for Seller in the form attached or, if not, in the standard form adopted by the New York State Land Title Association. Purchaser shall pay at Closing the mortgage recording tax, recording fees and the attorney's fees in the amount of $ for its preparation.
(b) The purchase money note and mortgage shall also provide that it is subject and subordinate to the lien of the existing mortgage and any extensions, modifications, replacements or consolidations of the existing mortgage, provided that (i) the interest rate thereof shall not be greater than percent per annum and the total debt service thereunder shall not be greater than $ per annum, and (ii) if the principal amount thereof shall exceed the amount of principal owing and unpaid on the existing mortgage at the time of placing such new mortgage or consolidated mortgage, the excess be paid to the holder of such purchase money mortgage in reduction of the principal thereof. The purchase money mortgage shall also provide that such payment to the holder thereof shall not alter or affect the regular installments, if any, of principal payable thereunder and that the holder thereof will, on demand and without charge therefor, execute, acknowledge and deliver any agreement or agreements further to effectuate such subordination.

*Downpayment in Escrow* 6. (a) Sellers' attorney ("Escrowee") shall hold the Downpayment for Seller's account in escrow in a segregated bank account at until Closing or sooner termination of this contract and shall pay over or apply the Downpayment in accordance with the terms of this paragraph. Escrowee shall (not) *(Delete if inapplicable)* hold the Downpayment in an interest-bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Downpayment shall be place in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, nonappealable judgment, order or decree of a court. However,

Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.
  (b) Parties acknowledge that, although Escrowee is holding the Downpayment for Seller's account, for all other purposes Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally agree to defend, indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorney's fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.
  (c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.
  (d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provision of this paragraph by signing in the place indicated on the signature page of this contract.
  (e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

**Acceptable Funds:**

7. All money payable under this contract, unless otherwise specified, shall be paid by:
  (a) Cash, but not over $1,000.00;
  (b) Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon not less than 3 business days notice (by telephone or otherwise) to Purchaser;
  (c) As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $1,000.00; and
  (d) As otherwise agreed to in writing by Seller or Seller's attorney.

**Mortgage Contingency:**

8. *(Delete if inapplicable)* The obligations of Purchaser hereunder are conditional upon issuance on or beore sept 9, , 2014, (the "Commitment Date") of a written commitment from any Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, ~~other than a VA, FHA or other~~ governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of $480,000.00 or such lesser sum as Purchaser shall be willing to accept, at the prevailing fixed rate of interest not to exceed prevailing or initial adjustable rate of interest not to exceed prevailing for a term of at least 30 years and on other customary commitment terms, whether or not conditional upon any factors other than an appraisal satisfactory to the Institutional Lender. Purchaser shall (a) make prompt application to an Institutional Lender for such mortgage loan, (b) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (c) pay all fees, points and charges required in connection with such application and loan, (d) pursue such application with diligence, (e) cooperate in good faith with such Institutional Lender to obtain such commitment and (f) ~~promptly give Notice to Seller of the name and address of each Institutional Lender to which Purchaser has made such application~~. Purchaser shall comply with all requirements of such commitment (or of any other commitment accepted by Purchaser) and shall furnish Seller with a copy thereof promptly after receipt thereof. If such commitment is not issued on or before the Commitment Date, then, unless Purchaser has accepted a commitment that does not comply with the requirements set forth above, Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, in which case this contract shall be deemed cancelled and thereafter neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 27. ~~If Purchaser fails to give notice of cancellation~~ or if Purchaser shall accept a commitment that does not comply with the terms set forth above, then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph.

**Permitted Exceptions:**

9 The Premises are sold and shall be conveyed subject to:
  (a) Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use;
  (b) Consents for the erection of any structures on, under or above any streets on which the Premises abut;
  MINOA (c) Encroachment of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;
  (d) Real estate taxes that are a lien, but are not yet due and payable; and
  (e) The other matters, if any, including a survey exception, set forth in a Rider attached.
  CLOSING

**Governmental Violations and Orders:**

10. (a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the date hereof by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.
  (b) *(Delete if inapplicable)* All obligations affecting the Premises pursuant to the Administrative Code of the City of New York incurred prior to Closing and payable in money shall be discharged by Seller at or prior to Closing.

**Seller's Representations:**

11. (a) Seller represents and warrants to Purchaser that:
  (i) The Premises abut or have a right of access to a public road;
  (ii) Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;
  (iii) Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (Collectively "FIRPTA");
  (iv) The Premises are not affected by any exemptions or abatements of taxes; and
  (v) Seller has been known by no other name for the past ten years, except: none

  (b) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.
  (c) Except as otherwise expressly set forth in this contract, none of Seller's convenants, representations, warranties or other obligations contained in this contract shall survive Closing.

**Condition of Property:**

12. Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16(f)), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract. Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

**Insurable Title:**

13. Seller shall give and Purchaser shall accept such title as any reputable title company shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this contract.

**Closing, Deed and Title:**

14. (a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a bargain and sale deed with covenants deed in proper statutory short form for record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.
  (b) If Seller is a corporation, it shall deliver to Purchaser at the time of Closing (i) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (ii) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that Section.

**Closing Date and Place:**

15. Closing shall take place at the office of JAIME RAMIREZ ESQ at         o'clock on SEPTEMBER 22, 2014 or, upon reasonable notice (by telephone or otherwise) by Purchaser, at the office of LENDER'S COUNSEL

**Conditions to Closing:**

16. This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:

  (a) The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.
  (b) The delivery by Seller to Purchaser of a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their uses as a TWO family dwelling the date of Closing.
  (c) The delivery by Seller to Purchaser of a duly executed and sworn affidavit (in form prescribed by law) claiming exemption of the sale contemplated hereby, if such be the case, under Article 31-B of the Tax Law of the State of New York and the Regulations promulgated thereunder, as the same may be amended from time to time (collectively the "Gains Tax Law"); or if such sale shall not be exempt under the Gains Tax Law, Seller and Purchaser agree to comply in a timely manner with the requirements of the Gains Tax Law and, at Closing, Seller shall deliver to Purchaser (i) an official return showing no tax due, or (ii) an official return accompanied by a certified or official bank check drawn on a New York State banking institution payable to the order of the New York State Department of Taxation and Finance in the amount of the tax shown to be due thereon. Seller shall (x) pay promptly any additional tax that may become due under the Gains Tax Law, together with interest and penalties thereon, if any, which may be assessed or become due after Closing, and/or execute any other documents that may be required in respect thereof, and (y) indemnify, defend and save Purchaser harmless from and against any of the foregoing and any damage, liability, cost or expense (including reasonable attorney's fees) which may be suffered or incurred by Purchaser by reason of the nonpayment thereof. The provisions of this subparagraph (c) shall survive Closing.
  (d) The delivery by Seller to Purchaser of a certification stating that Seller is not a foreign person, which certification shall be in the form then required by FIRPTA. If Seller fails to deliver the aforesaid certification or if Purchaser is not entitled under FIRPTA to rely on such certification, Purchaser

shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

(e) The delivery of the Premises and all building(s) and improvements comprising a part thereof in broom clean condition, vacant and free of leases or tenancies, together with keys to the Premises.

(f) All plumbing (including water supply and septic systems, if any), heating and air conditioning, if any, electrical and mechanical systems, equipment and machinery in the building(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing.

(g) If the Premises are a one or two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices.

(h) The delivery by the parties of any other affidavits required as a condition of recording the deed.

**Deed Transfer and Recording Taxes:**

17. At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

**Apportionments and Other Adjustments; Water Meter and Installment Assessments:**

18. (a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing.

(i) Taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed; (ii) fuel; (iii) interest on the existing mortgage; (iv) premiums on existing transferable insurance policies and renewals of those expiring prior to Closing; (v) vault charges; (vi) rents as and when collected.

(b) If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately proceeding fiscal period applied to that latest assessed valuation.

(c) If there is a water meter on the Premises, Seller shall furnish a reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.

(d) If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.

(e) Any errors or omissions in computing apportionments or other adjustments at closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

**Allowance for Unpaid Taxes, etc.:**

19. Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less that five business days after closing, provided that official bills therefor computed to said date are produced at Closing.

**Use of Purchase Price to Remove Encumbrances:**

20. If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear of such matters. Upon notice (by telephone or otherwise), given not less than 3 business days before Closing, Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

**Title Examination; Seller's Inability to Convey; Limitations of Liability.**

21. (a) Purchaser shall order an examination of title in respect of the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract or, if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.

(b) If at the date of Closing Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called "Defects"), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other that those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects, Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeding in removing, remedying or complying with such Defects at the expiration of such adjournment(s) and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, the existing mortgage (unless this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.

(c) If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser and, unless cancelled as a result of Purchaser's default or pursuant to paragraph 8, to reimburse Purchaser for the net cost of examination of title, including any appropriate additional charges related thereto, and the net cost, if actually paid or incurred by Purchaser, for updating the existing survey of the Premises or of a new survey, and (ii) the obligations under paragraph 27 shall survive the termination of this contract.

**Affidavit as to Judgments, Bankruptcies, etc.:**

22. If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.

**Defaults and Remedies:**

23. (a) If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

(b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

**Purchaser's Lien:**

24. All money paid on account of this contract, and then reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges, are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

**Notices:**

25. Any notice or other communication ("Notice") shall be in writing and either (a) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or

(b) delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered.

**No. Assignment:**

26. This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void.

**Broker:**

27. Seller and Purchaser each represents and warrants to other that it has not dealt with any broker in connection with this sale other than NONE ("Broker") and Seller shall pay Broker any commission earned pursuant to a separate agreement between Seller and Broker. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorneys' fees, arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur, the termination of this contract.

**Miscellaneous:**

28. (a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

(b) Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributes, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

(c) Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.

(d) The captions in this contract are for convenience of reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this contract or any provision hereof.

(e) This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

(f) Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This subparagraph shall survive Closing.

(g) Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and

# 1st RIDER TO CONTRACT OF SALE

RIDER ATTACHED TO AND MADE A PART OF THE CONTRACT OF SALE BETWEEN:

SELLER:         MT. OLIVET CHURCH INC.

PURCHASER(S):   MARIA T. NOBLE AND OR ASSIGNEE

PREMISES:       2176 GRAND CONCOURSE BRONX NEW YORK

1. **ADDITIONAL EXCEPTIONS.** Supplementing Paragraph 9: The premises are to be sold and conveyed subject to the following matters, in addition to those matter listed in Paragraph 9:

a) Covenants, restrictions, rights of way, easements, reservations and agreements of record, if any, insofar as the same may now be in force or effect, provided same are not violated by the present structure or use of the Premises, and do not render title uninsurable;
b) Any state of facts an accurate survey of the Premises may show, provided the same does not render title unmarketable;
c) Building and zoning regulations and ordinances of the city, town or village in which the premises lie which are not violated by the existing structure or its present.
d) Rights, if any, of the municipality in which the Premises are located or of any public utility, telephone or cable television company, to install, maintain, operate and/or repair pipes, wires cables, poles and related equipment in, under, over and upon the Premises;
e) Possible encroachments of fences and variations between record lines and fences; encroachments or projections upon street or road of any stoops, areas, gratings, steps, windows, balconies, ornaments, brick, leaves, trim and cornices and the like;
f) Any state of facts a personal inspection of the Premises would show;

2. **REPAIRS.** It is understood and agreed that seller shall not be under any obligation whatsoever to make and/or pay for any repairs, alterations or improvements, including the cost of any and all inspections required by the lending institution or any other organization as a condition to the issuance of the mortgage commitment referred to previously.

3. **ASSIGNMENTS.** This contract may be assigned without the written consent of the seller.

4. **DISCLOSURES.** In the event the Seller or Purchaser or any of the principals, stockholders, directors, officers or employers of the Seller or Purchaser herein are licensed Real Estate Brokers/Salesman the Seller and/or Purchaser acknowledged that

full disclosure of this fact has been made to them, and that the purchaser is purchasing the property for possible resale at a profit.

5. **MORTGAGE CONTINGENCY:** If Purchaser is unable to obtain a commitment for such mortgage Seller's attorney shall, upon request, have the right to see copies of the application filed by the Purchaser (S) with the proposed mortgagee. If requested, Purchaser (s) will request, in writing, that mortgagee send a copy of the application to Seller's attorney.

If Purchaser is unable to obtain a firm commitment within such time, then either party may cancel this contract, subject to terms of preprinted contract, by written notice to the other party and upon refund of the down payment terminate without further liability on the part of either party to the other.

6. **NOTICES.** All notices under this contract shall be in writing, mailed, or delivered to the office of counsel for the respective parties, that have represented said parties at the signing of this contract, (or to successor counsel whose appearance has been so designated in writing). However, all notices under this contract which would have the effect of canceling and/or rescinding and/or otherwise terminating this contract, including but not limited to a Purchaser's failure to obtain mortgage commitment notice@ shall be so sent by certified mail. Notices signed by said counsel shall be sufficient.

7. **PERSONALITY.** All personal property included in this sale will be conveyed in as is condition, less normal wear and tear from the date of this contract to the closing of title.

8. **VIOLATIONS.** All notices of violation of law or municipal ordinance orders or requirement, which in the aggregate do not exceed Five Hundred ($500.00) Dollars to correct, noted in or issued by the Department of Housing and Buildings, Fire, Labor Health or other State or Municipal Authorities having jurisdiction against or affecting the premises at the date hereof shall be complied with by the Seller on or before closing and the premises shall be conveyed free of same or a credit at Seller's option in order to correct the violations. In the event cost of correcting such violations exceed Five Hundred ($500.00) Dollars in the aggregate, Seller shall have the right to elect, within ten (10) days of receipt of written notice, to cure and consummate the transaction contemplated hereby or to cancel this contract by written notice to Purchaser. In the event Seller elects to cancel the contact pursuant hereto, Seller's sole liability shall be limited to the return of the Deposit and the parties shall have no further rights or liabilities to each other under the terms and provisions of this contract. Notwithstanding the foregoing, Purchaser may elect to take the premises subject to such violations without any offset whatsoever and without any claim against or liability on the part of the Seller, except as herein provided.

9. **TRAVEL ALLOWANCE.** In the event the closing of Title should take place outside of the New York City Metropolitan area, or Westchester County the buyer shall pay the sum of Three hundred Fifty ($350.00) as a travel allowance to the sellers attorney.

10. **TITLE EXAMINATION.** Purchaser agrees to order, immediately after obtaining a mortgage commitment, an examination of the title to the premises to be made on Purchaser's behalf, and, at least 10 days before the date for the closing of title, to send to the attorneys for Seller a copy of the report of such examination of title and a written statement of any objections to title of the closing of title hereunder. If Purchaser or Purchaser's attorney fails to Give Seller's attorney such notice of objection (other than bring down to date searches), then any defect or encumbrance of exception appearing on such report of title, or affecting the premises at the time of closing, shall not be deemed to be an objection to title or to the closing of title hereunder, and Purchaser shall take title subject hereto.

11. **INABILITY TO CONVEY TITLE.** If the Seller shall be unable to convey title in accordance with the provisions of this Agreement, any payments made by the Purchaser on account of the purchase price, shall be refunded, together with the reasonable expense incurred for examination of title (not exceeding the usual net charges of title issued, and the net cost of a survey), whereupon this Agreement shall be terminated and neither party hereto shall have any further rights again the other, except that, if the premises are affected by any encumbrance, outstanding interest or expression of title not expressly consented to herein by the Purchaser, which render the Seller's title to the premises unmarketable, and, which may, according to reasonable expectations, be removed within fifteen (15) days, the Seller shall have the privilege to remove or satisfy the same, and shall for this purpose be entitled to an adjournment of the closing of title to the premises marketable. The Purchaser may, nevertheless, accept such title as the Seller may be able to convey, without reduction of the purchase price, or any credit against the same and without liability on the part of the Seller.

12. **CONTRACT MODIFICATION AND EXTENSION.** Seller (s) does hereby appoint Seller's attorney herein as his agent and Purchaser(s) does hereby appoint his attorney, herein as his agent to execute any and all instrument in writing, having reference to this contract including but not limited to, modifications thereof and extensions of time for obtaining mortgage, if any, and extension of time for closing or otherwise.

13. **DEED ACCEPTANCE.** The acceptance of deed by Purchaser(s) shall be deemed to be full performance and discharge and every agreement and obligation on the part of the Seller(s) to be performed pursuant to the provisions of this agreement, except those, if any,

which are herein specifically stated to survive the delivery of the deed.

14. **SUBMISSION NOT AN OFFER.** The submission of this agreement by the Seller or their attorneys to Purchaser does not constitute an offer or an acceptance of an offer. This agreement shall not be binding upon the Sellers unless (i) the agreement has been fully executed by the Purchaser and Seller, and a fully executed copy has been delivered to each party by their respective attorneys; and (ii) Purchaser has paid the down payment pursuant to Paragraph 1 of the form printed contract.

15. **CONTRACT CANNOT BE RECORDED.** The parties agrees that neither this agreement nor any memorandum or notice thereof shall be recorded or tendered for recording in the County Clerk's Office of the County in which the land is situated. Purchaser further agrees that if this agreement, or any memorandum or short form thereof shall be recorded in any such office, this agreement, upon notice by the Seller to the Purchaser, may be deemed to void at Seller's option and of no further force and effect and such notice, if reported, shall be deemed sufficient and adequate notice to third parties that this agreement is void and of no further force and effect.

16. **CONFLICT.** If there is any conflict between the provisions contained in this Addendum and the provision of the printed form contract, the provisions in this addendum shall govern and be controlling to the extent necessary to resolve the conflict.

17. **AMBIGUITY.** Both parties shall be deemed to have drafted this Agreement. In the event any provisions are found to be ambiguous, same shall not be construed against either party.

18. Purchaser shall have the right to inspect the premises within forty-eight (48) hours prior to closing.

19. **HEATING/COOLING BILLS.** The purchasers herein acknowledged that they have a right to the summary of the heating and/or cooling bills or a complete set of said bills, under Section 17-103, Chapter 555 of the Laws of the State of New York commonly known as the Truth in Heating Law. The purchasers herein waive their right to companies of said bills and acknowledge that they have not requested them in connection with this transaction.

20. At closing, the premises will have an operable single station smoke detecting alarm device in accordance with the New York State Executive Law, Chapter 971, Section 270.5.

21. **PURCHASER REPRESENTATIONS.** Purchasers warrant and represent (i) that they have assets sufficient to complete this transaction; (ii) that they have no personal knowledge of any circumstances that would render them unacceptable to any lending institution by reason of outstanding loans, obligations or liabilities which would adversely affect their credit standing; (iii) that until the closing of title, they will not deliberately or knowingly change their financial status so as to render their mortgage application unacceptable to the lending institution. Purchasers acknowledge and represent that this transaction is not contingent on the Purchasers' ability to sell any other real or personal property.

22. **CERTIFICATE OF OCCUPANCY.** Supplementing paragraph #16B of the printed contract. This presentation shall not be construed to obligate Seller to incur any cost of expense to obtain a Certificate of Occupancy, Certificate of Completion and/or letter as herein above provided; and in the event that Seller cannot comply with this representation without incurring any cost, Seller shall have the option of canceling this Contract and returning to the Purchaser the down payment paid hereunder and thereupon the rights and obligations of the parities shall cease and terminate unless Purchaser waives this condition.

23. **PREPARATION OF CONTRACT.** In the event Purchaser is unable to obtain a mortgage commitment in accordance to the terms of the Contract, Purchaser agrees to pay the Seller's attorney the sum of one hundred and fifty ($150.00) dollars for preparation of the Contract. Seller's attorney shall be authorized to deduct said amount form the downpayment

24. **TERMITE INSPECTION.** Purchasers shall order a termite inspection by a reputable company, and if premises are found to be infested with termites or other wood destroying insects, the Seller shall have the option of either canceling said contract or curing premises of said infestation. Said termite inspection shall be completed within twenty (20) days from the date hereof. The purchaser shall serve written notice upon Seller's attorney within twenty (20) days after Purchaser receives the inspection report.

25. **POSSESSION.** **Vacant and broom clean possession** of the ENTIRE within described premises shall be delivered to Purchaser within 7 days after the closing of title. However, the attorney for the Seller shall hold in escrow the sum of $3,500.00 security for the faithful performance of the above agreement. In the event that Seller does not deliver vacant possession as set forth, then in that event, the attorney for the Seller is authorized to pay out of said escrow deposit the sum of $375.00 per day to the Purchaser as liquidated damages for each and every additional day that Seller remains in possession beyond the agreed period. All adjustments to be as of the day of possession.

In the event Seller unable to deliver premises vacant as of the date of closing, Seller shall be entitled to an adjournment of up to ninety (90) days to bring a disposes proceeding against its current tenant.

If after (90) days, premises cannot be delivered vacant, Seller may at his option cancel this contract and return to Purchaser the down payment paid hereunder and all costs for any title expenses, mortgage application and cancellation fees, and appraisals. Purchaser, at his option, may take title to the premises on the date of Closing, subject to any tenancy remaining in the premises, whereby Seller shall assign any and all rights caused of action, etc., against tenant to Purchaser. Seller shall be relieved of all claims and shall bear no responsibility to continue or bring forth any proceedings against the tenant.

26. **APPLIANCES.** Notwithstanding the above, seller's liability in connection with any appliance shall be limited to the sum of **ONE HUNDRED TWENTY FIVE ($125.00) DOLLARS 00/100** per appliance. The Purchaser shall have the right to inspect the premises within forty-eight (48) hours prior to closing and of taking possession in order to ascertain the condition of the premises.

27. **PROPERTY CONDITION DISCLOSURE.** Article 14 of the Real Property Law of the State of New York ("the Property Condition Disclosure Act" or "PCDA") provides that the Seller of a one (1) to four (4) family dwelling ("the Premises") must deliver to the prospective Purchaser of the Premises prior to signing by the Purchaser of a binding Contract of Sale a certified Property Condition Disclosure Statement ("PCDS") regarding certain conditions and information concerning the Premises which are known to the Seller. Such PCDS is not a warranty of any kind by the Seller or by any agency representing the Seller in this transaction. It is not a substitute for any inspections or test which may be conducted by the Purchaser or qualified agents on behalf of the Purchaser, and the Purchaser is encouraged to obtain his or her own independent professional engineer inspections and environmental tests and is also encouraged to check public records pertaining to the premises. Seller represents that Seller does not have actual knowledge, records or personal recollection of facts and/or events suitable to accurately complete the information requested to be set forth in the state formulated PCDS.

Section 465 of the PCDA provides that in the event that a Seller fails to deliver a PCDS before the Purchaser signs a binding Contract of Sale, the Purchaser is to receive upon the transfer of title a credit against the purchase price in the sum of $500.00. Seller hereby offers to give the Purchaser, at closing, a credit against the purchase price in the sum of $500.00. Purchaser hereby accepts the offer, in return for which credit; the Purchaser hereby released the Seller from any obligation otherwise imposed by the PCDA to deliver a PCDS.

28.  **ADJOURNMENT FEE.**  In the event the seller's attorney appears at scheduled closing and the closing has to be adjourned or cancelled through no fault of the Seller, then Purchaser shall apply to the seller's attorney a fee of $250.00.

29. **RETURNED CHECK.**  In the event the purchaser's down payment check is dishonored then in that event seller's shall be entitled to all remedies at law including contract cancellation and the purchaser shall pay seller's attorney the sum of $100.00 as a service fee in addition to replacing said dishonored check with either a certified check or official bank check.

30.  **SHORT SALE.**            ( )   Short sale (**check if applicable**)
This transaction shall be subject to seller's mortgagee (s) accepting a short sale application for the instant premises and shall be subject to any terms requested by mortgagee (s).  If any proposed terms are unacceptable to purchaser, purchaser shall have right to cancel transaction and receive return of down payment.  Seller acknowledges that he or she will not receive any proceeds at closing.

31.      COURT APPROVAL.  THIS TRANSACTION SHALL BE SUBJECT TO COURT APPROVAL AS REQUIRED PURSUANT TO THE APPLICABLE RELIGIOUS CORPORATION LAWS.

_____           _____
Seller                                                            Purchaser

_____           _____
Seller                                                            Purchaser

Jaime Ramirez, P.C.
751 Commonwealth Avenue
Bronx, New York 10473
Tel.: 718-542-6629 Fax.: 718-542-6630
ramirezlaw@optonline.net

### Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards

**Lead Warning Statement**

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

**Seller's Disclosure**
(a) Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):
    (i) ☐ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

    _____
    (ii) ☒ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.
(b) Records and reports available to the seller (check (i) or (ii) below):
    (i) ☐ Seller has provided the purchaser with all available records and reports pertaining to leadbased paint and/or lead-based paint hazards in the housing (list documents below).

    _____
    ☒ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Purchaser's Acknowledgment (initial)**
(c) _____ Purchaser has received copies of all information listed above.
(d) _____ Purchaser has received the pamphlet *Protect Your Family from Lead in Your Home*.
(e) Purchaser has (check (i) or (ii) below):
    (i) ☒ received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or
    (ii) ☐ waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**Agent's Acknowledgment (initial)**
(f) _____ Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**
The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| Seller [signed] | Date | Seller | Date |
|---|---|---|---|
| Purchaser [signed: Maria D. Noelle] | Date | Purchaser | Date |
| Agent | Date | Agent | Date |

documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

(h) This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by, any other person or entity.

IN WITNESS WHEREOF, this contract has been duly executed by the parties hereto.

_____    (✓) _Maria B. Noble_____
Seller                                                                                  Purchaser
MT. OLIVET CHURCH INC.                                            MARIA T. NOBLE

_____X_____    _____
Seller                                                                                  Purchaser
BY: ARACELIS STAATZ

Attorney for Seller: JAIME RAMIREZ              Attorney for Purchaser:

Address: 3058 CROSS BRONX EXPRESSWAY UNIT 1    Address:
BRONX, NEW YORK 10465

                                                                       Tel:                Fax:
Tel: 718 542 6629          Fax: 718 542 6630

Receipt of the Down payment is acknowledged and the undersigned agrees to act in accordance with the provisions of Paragraph 6 above.

                                                    Escrowee

### Contract of Sale                                          PREMISES

TITLE NO.                                              DISTRICT

                    TO                                 SECTION



**DISTRIBUTED BY**

**YOUR TITLE EXPERTS**
The Judicial Title Insurance Agency LLC
800-281-TITLE (8485)  FAX: 800-FAX-9396

BLOCK

LOT

COUNTY or TOWN

STREET NUMBER ADDRESS