# Exhibit A

Reorder Form No. 8068 (3/00)- Residential contract of sale 2-91

Jointly prepared by the Real Property Section of the New York State Bar Association, the New York State Land Title Association, the Committee on Real Property Law of the Association of the Bar of the City of New York and the Committee on Real Property Law of the New York County Lawyers' Association.

Warning: NO REPRESENTATION IS MADE THAT THIS FORM OR CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("PLAIN LANGUAGE").

## CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT

NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION.
This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provisions is made in this contract, Section 1-311 of the General Obligations Law will apply. One part of the law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

**Date:** **CONTRACT OF SALE,** made as of JULY 9, 2014
BETWEEN MT. OLIVET CHURCH INC.

**Residential Contract of Sale**

**Parties:**

Address 2176 GRAND CONCOURSE BRONX, NEW YORK 10456
Social Security Number/Fed. I.D. No(s):

hereinafter called "SELLER", and MARIA T. NOBLE AND/OR HER ASSIGNEE

Address: 250 GORGE ROAD APT 12 D CLIFFSIDE PARK 07010
Social Security Number/Fed. I.D. No.(s):

hereinafter called "PURCHASER".

The parties hereby agree as follows:

**Premises:**

1. Seller shall sell and convey and Purchaser shall purchase the property, together will all buildings and improvements thereon (collectively the "Premises"), more fully described on a separate page marked "Schedule A", annexed hereto and made a part hereof and also known as:

Street Address: 2176 GRAND CONCOURSE BRONX, NEW YORK

Tax Map Designation: BLOCK 3157 LOT 14

Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

**Personal Property:**

2. This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, bathroom and kitchen cabinets, mantels, door mirrors, switch plates and door hardware, venetian blinds, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine, clothes dryer, garbage disposal unit, range, oven, refrigerator, freezer, air conditioning equipment and installations, wall to wall carpeting and built-ins not excluded below (strike out inapplicable items). ALL AS PRESENTLY EXISTING

Excluded from this sale are furniture and household furnishings and

**Purchase Price:**

3. The purchase price is $                                    600,000.00

payable as follows:

(a) on the signing of this contract, by Purchaser's check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "Downpayment"):         $15,000.00

(b) by allowance for the principal amount unpaid on the existing mortgage on the date hereof, payment of which Purchaser shall assume by joinder in the deed:         $0

(c) by a purchase money note and mortgage from Purchaser to Seller:         $0

(d) balance at Closing in accordance with paragraph 7:         $585,000.00

**Existing Mortgage:**

4.  ~~(Delete if inapplicable) If this sale is subject to an existing mortgage as indicated in paragraph 3(b) above:~~

(a) The premises shall be conveyed subject to the continuing lien of the existing mortgage, which is presently payable, with interest at the rate of         percent per annum, in monthly installments of $         which include principal, interest and escrow amounts, if any, and with any balance of principal being due and payable on

(b) To the extent that any required payments are made on the existing mortgage between the date hereof and Closing which reduce the unpaid principal amount thereof below the amount shown in paragraph 3(b), then the balance of the price payable at Closing under paragraph 3(d) shall be increased by the amount of the payments of principal. Seller represents and warrants that the amount shown in paragraph 3(b) is substantially correct and agrees that only payments required by the existing mortgage will be made between the date hereof and Closing.

(c) If there is a mortgage escrow account, Seller shall assign it to Purchaser, if it can be assigned, and in that case Purchaser shall pay the amount in the escrow account to Seller at Closing.

(d) Seller shall deliver to Purchaser at Closing a certificate dated not more than 30 days before Closing signed by the holder of the existing mortgage, in form for recording, certifying the amount of the unpaid principal, the date to which interest has been paid and the amounts, if any, claimed to be unpaid principal and interest, itemizing the same. Seller shall pay the fees for recording such certificate. If the holder of the existing mortgage is a bank or other institution as defined in Section 274-a of the Real Property Law ("Institutional Lender"), it may, instead of the certificate, furnish a letter signed by a duly authorized officer, employee or agent, dated not more than 30 days before Closing, containing the same information.

(e) Seller represents and warrants that (i) Seller has delivered to Purchaser true and complete copies of the existing mortgage, the note secured thereby and any extensions and modifications thereof, (d) the existing mortgage is not now, and at the time of Closing will not be, in default, and (iii) the existing mortgage does not contain any provision that permits the holder of the mortgage to require its immediate payment in full or to change any other term ~~thereof by reason of the sale or conveyance of the Premises.~~

**Purchase Money Mortgage:**

5.  ~~(Delete if inapplicable) If there is to be a purchase money mortgage as indicated in paragraph 3(c) above:~~

(a) The purchase money note and mortgage shall be drawn by the attorney for Seller in the form attached or, if not, in the standard form adopted by the New York State Land Title Association. Purchaser shall pay at Closing the mortgage recording tax, recording fees and the attorney's fees in the amount of $         for its preparation.

(b) The purchase money note and mortgage shall also provide that it is subject and subordinate to the lien of the existing mortgage and any extensions, modifications, replacements or consolidations of the existing mortgage, provided that (i) the interest rate thereof shall not be greater than percent per annum and the total debt service thereunder shall not be greater than $         per annum, and (ii) if the principal amount thereof shall exceed the amount of principal owing and unpaid on the existing mortgage at the time of placing such new mortgage or consolidated mortgage, the excess be paid to the holder of such purchase money mortgage is in reduction of the principal thereof. The purchase money mortgage shall also provide that such payments to the holder of the existing mortgage which are paid at the regular installments, if any, of principal payable thereunder and that the holder thereof will, on demand and without charge ~~therefor, execute, acknowledge and deliver any agreement or agreements further to effectuate such subordination.~~

**Downpayment in Escrow:**

6. Seller's attorney ("Escrowee") shall hold the Downpayment for Seller's account in escrow in a segregated bank account at         until Closing or sooner termination of this contract and shall pay over or apply the Downpayment in accordance with the terms of this paragraph. Escrowee shall (not) (Delete if inapplicable) hold the Downpayment in an interest-bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Downpayment shall be place in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, nonappealable judgment, order or decree of a court. However,

Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) Parties acknowledge that, although Escrowee is holding the Downpayment for Seller's account, for all other purposes Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally agree to defend, indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorney's fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provision of this paragraph by signing in the place indicated on the signature page of this contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

Acceptable Funds:

7. All money payable under this contract, unless otherwise specified, shall be paid by:

(a) Cash, but not over $1,000.00;

(b) Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon not less than 3 business days notice (by telephone or otherwise) to Purchaser;

(c) As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $1,000.00; and

(d) As otherwise agreed to in writing by Seller or Seller's attorney.

Mortgage Contingency:

8. (Delete if inapplicable) The obligations of Purchaser hereunder are conditional upon issuance on or before sept 9, , 2014, (the "Commitment Date") of a written commitment from any Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of $450,000.00 or such lesser sum as Purchaser shall be willing to accept, at the prevailing fixed rate of interest not to exceed prevailing or initial adjustable rate of interest not to exceed prevailing for a term of at least 30 years and on other customary commitment terms, whether or not conditional upon any factors other than an appraisal satisfactory to the Institutional Lender. Purchaser shall (a) make prompt application to an Institutional Lender for such mortgage loan, (b) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (c) pay all fees, points and charges required in connection with such application and loan, (d) pursue such application with diligence, (e) cooperate in good faith with such Institutional Lender to obtain such commitment and (f) promptly give Notice to Seller of the name and address of each such Institutional Lender to which Purchaser has submitted an application. Purchaser shall comply with all requirements of such commitment (or of any other commitment accepted by Purchaser) and shall furnish Seller with a copy thereof promptly after receipt thereof. If such commitment is not issued on or before the Commitment Date, then, unless Purchaser has accepted a commitment that does not comply with the requirements set forth above, Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, in which case this contract shall be deemed cancelled and thereafter neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 27. If Purchaser fails to give notice of cancellation or if Purchaser shall accept a commitment that does not comply with the terms set forth above, then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph.

Permitted Exceptions:

9. The Premises are sold and shall be conveyed subject to:

(a) Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use;

(b) Consents for the erection of any structures on, under or above any streets on which the Premises abut;

(c) Encroachment of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;

(d) Real estate taxes that are a lien, but are not yet due and payable; and

(e) Other matters, if any, including a survey exception, set forth in a Rider attached.

Governmental Violations and Orders:

10. (a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the date hereof by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.

(b) (Delete if inapplicable) All obligations affecting the Premises pursuant to the Administrative Code of the City of New York incurred prior to Closing and payable in money shall be discharged by Seller at or prior to Closing.

Seller's Representations:

11. (a) Seller represents and warrants to Purchaser that:

(i) The Premises abut or have a right of access to a public road;

(ii) Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;

(iii) Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA");

(iv) The Premises are not affected by any exemptions or abatements of taxes; and

(v) Seller has been known by no other name for the past ten years, except: none

(b) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.

(c) Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

Condition of Property:

12. Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in its present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16(f)), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract. Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

Insurable Title:

13. Seller shall give and Purchaser shall accept such title as any reputable title company shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this contract.

Closing, Deed and Title:

14. (a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a bargain and sale deed with covenants deed in proper statutory sheet form the record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.

(b) If Seller is a corporation, it shall deliver to Purchaser at the time of Closing (i) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (ii) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that Section.

Closing Date and Place:

15. Closing shall take place at the office of JAIME RAMIREZ ESQ at     o'clock on SEPTEMBER 22, 2014 or, upon reasonable notice (by telephone or otherwise) by Purchaser, at the office of LENDER'S COUNSEL.

Conditions to Closing:

16. This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:

(a) The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.

(b) The delivery to Purchaser of a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their use as a TWO family dwelling at the date of Closing.

(c) The delivery by Seller to Purchaser of a duly executed and sworn affidavit (in form prescribed by law) claiming exemption, if any, as contemplated hereby, if such be the case, under Article 31-B of the Tax Law of the State of New York and the Regulations promulgated thereunder, as the same may be amended from time to time (collectively the "Gains Tax Law"), or if such sale shall not be exempt under the Gains Tax Law, Seller and Purchaser agree to comply in a timely manner with the requirements of the Gains Tax Law and, at Closing, Seller shall deliver to Purchaser (i) an official return showing no tax due, or (ii) an official return accompanied by a certified or official bank check drawn on a New York State banking institution payable to the order of the New York State Department of Taxation and Finance in the amount of the tax shown to be due thereon. Seller shall (x) pay promptly any additional tax that may become due under the Gains Tax Law, together with interest and penalties thereon, if any, which may be assessed or become due after Closing, and/or execute any other documents that may be required in respect thereof, and (y) indemnify, defend and save Purchaser harmless from and against any of the foregoing and any damage, liability, cost or expense (including reasonable attorney's fees) which may be suffered or incurred by Purchaser by reason of the nonpayment thereof. The provisions of this subparagraph (c) shall survive Closing.

(d) The delivery by Seller to Purchaser of a certification stating that Seller is not a foreign person, which certification shall be in the form then required by FIRPTA. If Seller fails to deliver the aforesaid certification or if Purchaser is not entitled under FIRPTA to rely on such certification, Purchaser

shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

    (e) The delivery of the Premises and all building(s) and improvements comprising a part thereof in broom clean condition, vacant and free of leases or tenancies, together with keys to the Premises.

    (f) All plumbing (including water supply and septic systems, if any), heating and air conditioning, if any, electrical and mechanical systems, equipment and machinery in the building(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing.

    (g) If the Premises are a one or two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices.

    (h) The delivery by the parties of any other affidavits required as a condition of recording the deed.

*Deed Transfer and Recording Taxes:*   17. At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

*Apportionments and Other Adjustments; Water Meter and Installment Assessments:*   18.   (a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing:
    (i) Taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed; (ii) fuel; (iii) interest on the existing mortgage; (iv) premiums on existing transferable insurance policies and renewals of those expiring prior to Closing; (v) vault charges; (vi) rents as and when collected.
    (b) If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to the latest assessed valuation.
    (c) If there is a water meter on the Premises, Seller shall furnish a reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.
    (d) If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.
    (e) Any errors or omissions in computing apportionments or other adjustments at closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

*Allowance for Unpaid Taxes, etc.:*   19. Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less than five business days after closing, provided that official bills therefor computed to said date are produced at Closing.

*Use of Purchase Price to Remove Encumbrances:*   20. If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title insurance company employed by Purchaser acceptable to and required by it to insure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear of such matters. Upon notice (by telephone or otherwise), given not less than 3 business days before Closing, Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

*Title Examination; Seller's Inability to Convey; Limitations of Liability:*   21.   (a) Purchaser shall order an examination of title in respect of the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract or, if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.
    (b) If at the date of Closing Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called "Defects"), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other that those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects, Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeding in removing, remedying or complying with such Defects at the expiration of such adjournment(s) and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (ii) notwithstanding the foregoing, the existing mortgage (unless this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.
    (c) If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's defaults, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser and, unless cancelled as a result of Purchaser's default or pursuant to paragraph 8, to reimburse Purchaser for the net cost of examination of title, including any appropriate additional charges related thereto, and the net cost, if actually paid or incurred by Purchaser, for updating the existing survey of the Premises or of a new survey, and (ii) the obligations under paragraph 27 shall survive the termination of this contract.

*Affidavit as to Judgments, Bankruptcies, etc.:*   22. If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.

*Defaults and Remedies:*   23.   (a) If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.
    (b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

*Purchaser's Lien:*   24. All money paid on account of this contract, and then reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges, are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

*Notices:*   25. Any notice or other communication ("Notice") shall be in writing and either (s) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or
    (b) delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered.

*No. Assignment:*   26. This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void.

*Broker:*   27. Seller and Purchaser each represents and warrants to other that it has not dealt with any broker in connection with this sale other than NONE ("Broker") and Seller shall pay Broker any commission earned pursuant to a separate agreement between Seller and Broker. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorneys' fees, arising out of the breach on their respective parts of any representations or agreements contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur, the termination of this contract.

*Miscellaneous:*   28.   (a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.
    (b) Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributees, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.
    (c) Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.
    (d) The captions in this contract are for convenience of reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this contract or any provision hereof.
    (e) This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.
    (f) Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This subparagraph shall survive Closing.
    (g) Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and

# 1st RIDER TO CONTRACT OF SALE

RIDER ATTACHED TO AND MADE A PART OF THE CONTRACT OF SALE BETWEEN:

**SELLER:**        MT. OLIVET CHURCH  INC.

**PURCHASER(S):**   MARIA T. NOBLE AND OR ASSIGNEE

**PREMISES:**      2176 GRAND CONCOURSE BRONX NEW YORK

1.  <u>ADDITIONAL EXCEPTIONS.</u> Supplementing Paragraph 9: The premises are to be sold and conveyed subject to the following matters, in addition to those matter listed in Paragraph 9:

a)  Covenants, restrictions, rights of way, easements, reservations and agreements of record, if any, insofar as the same may now be in force or effect, provided same are not violated by the present structure or use of the Premises, and do not render title uninsurable;
b)  Any state of facts an accurate survey of the Premises may show, provided the same does not render title unmarketable;
c)  Building and zoning regulations and ordinances of the city, town or village in which the premises lie which are not violated by the existing structure or its present.
d)  Rights, if any, of the municipality in which the Premises are located or of any public utility, telephone or cable television company, to install, maintain, operate and/or repair pipes, wires cables, poles and related equipment in, under, over and upon the Premises;
e)  Possible encroachments of fences and variations between record lines and fences; encroachments or projections upon street or road of any stoops, areas, gratings, steps, windows, balconies, ornaments, brick, leaves, trim and cornices and the like;
f) Any state of facts a personal inspection of the Premises would show;

2.<u>REPAIRS.</u>It is understood and agreed that seller shall not be under any obligation whatsoever to make and/or pay for any repairs, alterations or improvements, including the cost of any and all inspections required by the lending institution or any other organization as a condition to the issuance of the mortgage commitment referred to previously.

3.<u>-ASSIGNMENTS.</u> This contract may be assigned without the written consent of the seller.

4. <u>DISCLOSURES.</u> In the event the Seller or Purchaser or any of the principals, stockholders, directors, officers or employers of the Seller or Purchaser herein are licensed Real Estate Brokers/Salesman the Seller and/or Purchaser acknowledged that

full disclosure of this fact has been made to them, and that the purchaser is purchasing the property for possible resale at a profit.

5.  <u>MORTGAGE CONTINGENCY:</u> If Purchaser is unable to obtain a commitment for such mortgage Seller's attorney shall, upon request, have the right to see copies of the application filed by the Purchaser (S) with the proposed mortgagee.  If requested, Purchaser (s) will request, in writing, that mortgagee send a copy of the application to Seller's attorney.

If Purchaser is unable to obtain a firm commitment within such time, then either party may cancel this contract, subject to terms of preprinted contract, by written notice to the other party and upon refund of the down payment terminate without further liability on the part of either party to the other.

6.  <u>NOTICES.</u>  All notices under this contract shall be in writing, mailed, or delivered to the office of counsel for the respective parties, that have represented said parties at the signing of this contract, (or to successor counsel whose appearance has been so designated in writing).  However, all notices under this contract which would have the effect of canceling and/or rescinding and/or otherwise terminating this contract, including but not limited to a Purchaser's failure to obtain mortgage commitment notice@ shall be so sent by certified mail.  Notices signed by said counsel shall be sufficient.

7.  <u>PERSONALITY.</u>  All personal property included in this sale will be conveyed in as is condition, less normal wear and tear from the date of this contract to the closing of title.

8.  <u>VIOLATIONS.</u>  All notices of violation of law or municipal ordinance orders or requirement, which in the aggregate do not exceed Five Hundred ($500.00) Dollars to correct, noted in or issued by the Department of Housing and Buildings, Fire, Labor Health or other State or Municipal Authorities having jurisdiction against or affecting the premises at the date hereof shall be complied with by the Seller on or before closing and the premises shall be conveyed free of same or a credit at Seller's option in order to correct the violations.  In the event cost of correcting such violations exceed Five Hundred ($500.00) Dollars in the aggregate, Seller shall have the right to elect, within ten (10) days of receipt of written notice, to cure and consummate the transaction contemplated hereby or to cancel this contract by written notice to Purchaser.  In the event Seller elects to cancel the contact pursuant hereto, Seller's sole liability shall be limited to the return of the Deposit and the parties shall have no further rights or liabilities to each other under the terms and provisions of this contract.  Notwithstanding the foregoing, Purchaser may elect to take the premises subject to such violations without any offset whatsoever and without any claim against or liability on the part of the Seller, except as herein provided.

Jaime Ramirez, P.C.
751 Commonwealth Avenue
Bronx, New York 10473
Tel.: 718-542-6629 Fax.: 718-542-6630
ramirezlaw@optonline.net

9. <u>TRAVEL ALLOWANCE.</u>  In the event the closing of Title should take place outside of the New York City Metropolitan area, or Westchester County the buyer shall pay the sum of Three hundred Fifty ($350.00) as a travel allowance to the sellers attorney.

10. <u>TITLE EXAMINATION.</u>  Purchaser agrees to order, immediately after obtaining a mortgage commitment, an examination of the title to the premises to be made on Purchaser's behalf, and, at least 10 days before the date for the closing of title, to send to the attorneys for Seller a copy of the report of such examination of title and a written statement of any objections to title of the closing of title hereunder.  If Purchaser or Purchaser's attorney fails to Give Seller's attorney such notice of objection (other than bring down to date searches), then any defect or encumbrance of exception appearing on such report of title, or affecting the premises at the time of closing, shall not be deemed to be an objection to title or to the closing of title hereunder, and Purchaser shall take title subject hereto.

11. <u>INABILITY TO CONVEY TITLE.</u>  If the Seller shall be unable to convey title in accordance with the provisions of this Agreement, any payments made by the Purchaser on account of the purchase price, shall be refunded, together with the reasonable expense incurred for examination of title (not exceeding the usual net charges of title issued, and the net cost of a survey), whereupon this Agreement shall be terminated and neither party hereto shall have any further rights again the other, except that, if the premises are affected by any encumbrance, outstanding interest or expression of title not expressly consented to herein by the Purchaser, which render the Seller's title to the premises unmarketable, and, which may, according to reasonable expectations, be removed within fifteen (15) days, the Seller shall have the privilege to remove or satisfy the same, and shall for this purpose be entitled to an adjournment of the closing of title to the premises marketable.  The Purchaser may, nevertheless, accept such title as the Seller may be able to convey, without reduction of the purchase price, or any credit against the same and without liability on the part of the Seller.

12. <u>CONTRACT MODIFICATION AND EXTENSION.</u>  Seller (s) does hereby appoint Seller's attorney herein as his agent and Purchaser(s) does hereby appoint his attorney, herein as his agent to execute any and all instrument in writing, having reference to this contract including but not limited to, modifications thereof and extensions of time for obtaining mortgage, if any, and extension of time for closing or otherwise.

13. <u>DEED ACCEPTANCE.</u>  The acceptance of deed by Purchaser(s) shall be deemed to be full performance and discharge and every agreement and obligation on the part of the Seller(s) to be performed pursuant to the provisions of this agreement, except those, if any,

Jaime Ramirez, P.C.
751 Commonwealth Avenue
Bronx, New York 10473
Tel.: 718-542-6629 Fax.: 718-542-6630
ramirezlaw@optonline.net

which are herein specifically stated to survive the delivery of the deed.

14.   SUBMISSION NOT AN OFFER.   The submission of this agreement by the Seller or their attorneys to Purchaser does not constitute an offer or an acceptance of an offer. This agreement shall not be binding upon the Sellers unless (i) the agreement has been fully executed by the Purchaser and Seller, and a fully executed copy has been delivered to each party by their respective attorneys; and (ii) Purchaser has paid the down payment pursuant to Paragraph 1 of the form printed contract.

15.   CONTRACT CANNOT BE RECORDED.   The parties agrees that neither this agreement nor any memorandum or notice thereof shall be recorded or tendered for recording in the County Clerk's Office of the County in which the land is situated. Purchaser further agrees that if this agreement, or any memorandum or short form thereof shall be recorded in any such office, this agreement, upon notice by the Seller to the Purchaser, may be deemed to void at Seller's option and of no further force and effect and such notice, if reported, shall be deemed sufficient and adequate notice to third parties that this agreement is void and of no further force and effect.

16.   CONFLICT.   If there is any conflict between the provisions contained in this Addendum and the provision of the printed form contract, the provisions in this addendum shall govern and be controlling to the extent necessary to resolve the conflict.

17.   AMBIGUITY.   Both parties shall be deemed to have drafted this Agreement.  In the event any provisions are found to be ambiguous, same shall not be construed against either party.

18.   Purchaser shall have the right to inspect the premises within forty-eight (48) hours prior to closing.

19.   HEATING/COOLING BILLS.   The purchasers herein acknowledged that they have a right to the summary of the heating and/or cooling bills or a complete set of said bills, under Section 17-103, Chapter 555 of the Laws of the State of New York commonly known as the Truth in Heating Law. The purchasers herein waive their right to companies of said bills and acknowledge that they have not requested them in connection with this transaction.

20.   At closing, the premises will have an operable single station smoke detecting alarm device in accordance with the New York State Executive Law, Chapter 971, Section 270.5.

Jaime Ramirez, P.C.
751 Commonwealth Avenue
Bronx, New York 10473
Tel.: 718-542-6629 Fax : 718-542-6630
ramirezlaw@optonline.net

Noble - Plaintiff's Documents
Page 104 of 250
5/31/2019

21. <u>PURCHASER REPRESENTATIONS.</u> Purchasers warrant and represent (i) that they have assets sufficient to complete this transaction; (ii) that they have no personal knowledge of any circumstances that would render them unacceptable to any lending institution by reason of outstanding loans, obligations or liabilities which would adversely affect their credit standing; (iii) that until the closing of title, they will not deliberately or knowingly change their financial status so as to render their mortgage application unacceptable to the lending institution. Purchasers acknowledge and represent that this transaction is not contingent on the Purchasers' ability to sell any other real or personal property.

22. <u>CERTIFICATE OF OCCUPANCY.</u> Supplementing paragraph #16B of the printed contract. This presentation shall not be construed to obligate Seller to incur any cost of expense to obtain a Certificate of Occupancy, Certificate of Completion and/or letter as herein above provided; and in the event that Seller cannot comply with this representation without incurring any cost, Seller shall have the option of canceling this Contract and returning to the Purchaser the down payment paid hereunder and thereupon the rights and obligations of the parities shall cease and terminate unless Purchaser waives this condition.

23. <u>PREPARATION OF CONTRACT.</u> In the event Purchaser is unable to obtain a mortgage commitment in accordance to the terms of the Contract, Purchaser agrees to pay the Seller's attorney the sum of one hundred and fifty ($150.00) dollars for preparation of the Contract. Seller's attorney shall be authorized to deduct said amount form the downpayment

24. <u>TERMITE INSPECTION.</u> Purchasers shall order a termite inspection by a reputable company, and if premises are found to be infested with termites or other wood destroying insects, the Seller shall have the option of either canceling said contract or curing premises of said infestation. Said termite inspection shall be completed within twenty (20) days from the date hereof. The purchaser shall serve written notice upon Seller's attorney within twenty (20) days after Purchaser receives the inspection report.

25. <u>POSSESSION.</u> Vacant and broom clean possession of the ENTIRE within described premises shall be delivered to Purchaser within 7 days after the closing of title. However, the attorney for the Seller shall hold in escrow the sum of $3,500.00 security for the faithful performance of the above agreement. In the event that Seller does not deliver vacant possession as set forth, then in that event, the attorney for the Seller is authorized to pay out of said escrow deposit the sum of $375.00 per day to the Purchaser as liquidated damages for each and every additional day that Seller remains in possession beyond the agreed period. All adjustments to be as of the day of possession.

Jaime Ramirez, P.C.
751 Commonwealth Avenue
Bronx, New York 10473
Tel.: 718-542-6629 Fax.: 718-542-6630
ramirezlaw@optonline.net

In the event Seller unable to deliver premises vacant as of the date of closing, Seller shall be entitled to an adjournment of up to ninety (90) days to bring a disposes proceeding against its current tenant.

If after (90) days, premises cannot be delivered vacant, Seller may at his option cancel this contract and return to Purchaser the down payment paid hereunder and all costs for any title expenses, mortgage application and cancellation fees, and appraisals. Purchaser, at his option, may take title to the premises on the date of Closing, subject to any tenancy remaining in the premises, whereby Seller shall assign any and all rights caused of action, etc., against tenant to Purchaser. Seller shall be relieved of all claims and shall bear no responsibility to continue or bring forth any proceedings against the tenant.

26. **APPLIANCES.** Notwithstanding the above, seller's liability in connection with any appliance shall be limited to the sum of ONE HUNDRED TWENTY FIVE ($125.00) DOLLARS 00/100 per appliance. The Purchaser shall have the right to inspect the premises within forty-eight (48) hours prior to closing and of taking possession in order to ascertain the condition of the premises.

27. **PROPERTY CONDITION DISCLOSURE.** Article 14 of the Real Property Law of the State of New York ("the Property Condition Disclosure Act" or "PCDA") provides that the Seller of a one (1) to four (4) family dwelling ("the Premises") must deliver to the prospective Purchaser of the Premises prior to signing by the Purchaser of a binding Contract of Sale a certified Property Condition Disclosure Statement ("PCDS") regarding certain conditions and information concerning the Premises which are known to the Seller. Such PCDS is not a warranty of any kind by the Seller or by any agency representing the Seller in this transaction. It is not a substitute for any inspections or test which may be conducted by the Purchaser or qualified agents on behalf of the Purchaser, and the Purchaser is encouraged to obtain his or her own independent professional engineer inspections and environmental tests and is also encouraged to check public records pertaining to the premises. Seller represents that Seller does not have actual knowledge, records or personal recollection of facts and/or events suitable to accurately complete the information requested to be set forth in the state formulated PCDS.

Section 465 of the PCDA provides that in the event that a Seller fails to deliver a PCDS before the Purchaser signs a binding Contract of Sale, the Purchaser is to receive upon the transfer of title a credit against the purchase price in the sum of $500.00. Seller hereby offers to give the Purchaser, at closing, a credit against the purchase price in the sum of $500.00. Purchaser hereby accepts the offer, in return for which credit; the Purchaser hereby released the Seller from any obligation otherwise imposed by the PCDA to deliver a PCDS.

Jaime Ramirez, P.C.
751 Commonwealth Avenue
Bronx, New York 10473
Tel.: 718-542-6629 Fax: 718-542-6630
ramirezlaw@optonline.net

28.   **ADJOURNMENT FEE.**  In the event the seller's attorney appears at scheduled closing and the closing has to be adjourned or cancelled through no fault of the Seller, then Purchaser shall apply to the seller's attorney a fee of $250.00.

29. **RETURNED CHECK.**  In the event the purchaser's down payment check is dishonored then in that event seller's shall be entitled to all remedies at law including contract cancellation and the purchaser shall pay seller's attorney the sum of $100.00 as a service fee in addition to replacing said dishonored check with either a certified check or official bank check.

30.   **SHORT SALE.**        ( )   Short sale (check if applicable)
This transaction shall be subject to seller's mortgage (s) accepting a short sale application for the instant premises and shall be subject to any terms requested by mortgagee (s).  If any proposed terms are unacceptable to purchaser, purchaser shall have right to cancel transaction and receive return of down payment.  Seller acknowledges that he or she will not receive any proceeds at closing.

31.   COURT APPROVAL.  THIS TRANSACTION SHALL BE SUBJECT TO COURT APPROVAL AS REQUIRED PURSUANT TO THE APPLICABLE RELIGIOUS CORPORATION LAWS.


_____          _____
Seller                             Purchaser


_____          _____
Seller                             Purchaser


Jaime Ramirez, P.C.
751 Commonwealth Avenue
Bronx, New York 10473
Tel : 718-542-6629 Fax : 718-542-6630
rramirezlaw@optonline.net

**Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards**

**Lead Warning Statement**

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

**Seller's Disclosure**
(a)  Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):
    (i) ☐ Known lead-based paint and/or lead-based paint hazards are present in the housing
        (explain).
    _____
    (ii) ☒ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.
(b)  Records and reports available to the seller (check (i) or (ii) below):
    (i) ☐ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).
    _____
    ☒ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Purchaser's Acknowledgment (initial)**
(c)  _____  Purchaser has received copies of all information listed above.
(d)  _____  Purchaser has received the pamphlet *Protect Your Family from Lead in Your Home.*
(e)  Purchaser has (check (i) or (ii) below):
    (i) ☒ received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or
    (ii) ☐ waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**Agent's Acknowledgment (initial)**
(f)  _____  Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**
The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| | | | |
|---|---|---|---|
| Seller | Date | Seller | Date |
| Purchaser | Date | Purchaser | Date |
| Agent | Date | Agent | Date |

Noble - Plaintiff's Documents
Page 108 of 250
5/31/2019

documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

(b) This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by, any other person or entity.

IN WITNESS WHEREOF, this contract has been duly executed by the parties hereto.

_____          _____
            Seller                                    Purchaser
MT. OLIVET CHURCH INC.                        MARIA T. NOBLE

_____          _____
            Seller                                    Purchaser
BY: ARACELIS STAATZ

Attorney for Seller:JAIME RAMIREZ          Attorney for Purchaser:

Address:3058 CROSS BRONX EXPRESSWAY UNIT 1     Address:
BRONX, NEW YORK 10465

Tel:718 542 6629            Fax:718 542 6630      Tel:            Fax:


Receipt of the Down payment is acknowledged and the undersigned agrees to act in accordance with the provisions of Paragraph 6 above.



                              Escrowee

   Contract of Sale                              PREMISES

TITLE NO.                               DISTRICT

              TO                        SECTION

        DISTRIBUTED BY                  BLOCK

        YOUR TITLE EXPERTS              LOT
   The Judicial Title Insurance Agency LLC
   800-281-TITLE (8485)  FAX: 800-FAX-9396     COUNTY or TOWN

                                        STREET NUMBER ADDRESS

# Exhibit B

Reorder Form No. 8068 (3/00) - Residential contract of sale 2-91

*Jointly prepared by the Real Property Section of the New York State Bar Association, the New York State Land Title Association, the Committee on Real Property Law of the Association of the Bar of the City of New York and the Committee on Real Property Law of the New York County Lawyers' Association.*

Warning: NO REPRESENTATION IS MADE THAT THIS FORM OR CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("PLAIN LANGUAGE").

**CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT**

NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION.
This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of the law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

**Date:**    **CONTRACT OF SALE**, made as of . ~~MAY~~ 7/ , 2015    **Residential Contract of Sale**
BETWEEN MT. OLIVET CHURCH INC.

**Parties:**    Address: 2176 GRAND CONCOURSE BRONX, NEW YORK 10456
Social Security Number/Fed. I.D. No(s):

hereinafter called "SELLER", and MARIA T. NOBLE AND/OR HER ASSIGNEE

Address: 250 GORGE ROAD APT 12 D CLIFFSIDE PARK 07010
Social Security Number/Fed. I.D. No(s):

hereinafter called "PURCHASER".

The parties hereby agree as follows:

**Premises:**    1. Seller shall sell and convey and Purchaser shall purchase the property, together will all buildings and improvements thereon (collectively the "Premises"), more fully described on a separate page marked "Schedule A", annexed hereto and made a part hereof and also known as:

Street Address: 2176 GRAND CONCOUSRE BRONX, NEW YORK

Tax Map Designation: BLOCK 3157 LOT 14

Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

**Personal Property:**    2. This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, bathroom and kitchen cabinets, mantels, door mirrors, switch plates and door hardware, venetian blinds, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine, clothes dryer, garbage disposal unit, range, oven, refrigerator, freezer, air conditioning equipment and installations, wall to wall carpeting and built-ins not excluded below (strike out inapplicable items). ALL AS PRESENTLY EXISTING

Excluded from this sale are furniture and household furnishings and

**Purchase Price:**    3. The purchase price is $    500,000.00

payable as follows:

(a) on the signing of this contract, by Purchaser's check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "Downpayment"):    $15,000.00
(b) by allowance for the principal amount unpaid on the existing mortgage on the date hereof, payment of which Purchaser shall assume by joinder in the deed:    $0
(c) by a purchase money note and mortgage from Purchaser to Seller:    $0
(d) balance at Closing in accordance with paragraph 7:    $485,000.00

**Existing Mortgage:**    4.    *(Delete if inapplicable)* If this sale is subject to an existing mortgage as indicated in paragraph 3(b) above:
(a) The premises shall be conveyed subject to the continuing lien of the existing mortgage, which is presently payable, with interest at the rate of ____ percent per annum, in monthly installments of $ ____ which include principal, interest and escrow amounts, if any, and with any balance of principal being due and payable on
(b) To the extent that any required payments are made on the existing mortgage between the date hereof and Closing which reduce the unpaid principal amount thereof below the amount shown in paragraph 3(b), then the balance of the price payable at Closing under paragraph 3(d) shall be increased by the amount of the payments of principal. Seller represents and warrants that the amount shown in paragraph 3(b) is substantially correct and agrees that only payments required by the existing mortgage will be made between the date hereof and Closing.
(c) If there is a mortgage escrow account, Seller shall assign it to Purchaser, if it can be assigned, and in that case Purchaser shall pay the amount in the escrow account to Seller at Closing.
(d) Seller shall deliver to Purchaser at Closing a certificate dated not more than 30 days before Closing signed by the holder of the existing mortgage, in form for recording, certifying the amount of the unpaid principal, the date to which interest has been paid and the amounts, if any, claimed to be unpaid for principal and interest, itemizing the same. Seller shall pay the fees for recording such certificate. If the holder of the existing mortgage is a bank or other institution as defined in Section 274-a of the Real Property Law ("Institutional Lender"), it may, instead of the certificate, furnish a letter signed by a duly authorized officer, employee or agent, dated not more than 30 days before Closing, containing the same information.
(e) Seller represents and warrants that (i) Seller has delivered to Purchaser true and complete copies of the existing mortgage, the note secured thereby and any extensions and modifications thereof, (ii) the existing mortgage is not now, and at the time of Closing will not be, in default, and (iii) the existing mortgage does not contain any provision that permits the holder of the mortgage to require its immediate payment in full or to change any other term thereof by reason of the sale or conveyance of the Premises.

**Purchase Money Mortgage:**    5.    *(Delete if inapplicable)* If there is to be a purchase money mortgage as indicated in paragraph 3(c) above:
(a) The purchase money note and mortgage shall be drawn by the attorney for Seller in the form attached or, if not, in the standard form adopted by the New York State Land Title Association. Purchaser shall pay at Closing the mortgage recording tax, recording fees and the attorney's fees in the amount of $ ____ for its preparation.
(b) The purchase money note and mortgage shall also provide that it is subject and subordinate to the lien of the existing mortgage and any extensions, modifications, replacements or consolidations of the existing mortgage, provided that (i) the interest rate thereof shall not be greater than ____ percent per annum and the total debt service thereunder shall not be greater than $ ____ per annum, and (ii) if the principal amount thereof shall exceed the amount of principal owing and unpaid on the existing mortgage at the time of placing such new mortgage or consolidated mortgage, the excess be paid to the holder of such purchase money mortgage in reduction of the principal thereof. The purchase money mortgage shall also provide that such payment to the holder thereof shall not alter or affect the regular installments, if any, of principal payable thereunder and that the holder thereof will, on demand and without charge therefor, execute, acknowledge and deliver any agreement or agreements further to effectuate such subordination.

**Downpayment in Escrow:**    6.    (a) Sellers' attorney ("Escrowee") shall hold the Downpayment for Seller's account in escrow in a segregated bank account at ____ until Closing or sooner termination of this contract and shall pay over or apply the Downpayment in accordance with the terms of this paragraph. Escrowee shall (not) *(Delete if inapplicable)* hold the Downpayment in an interest-bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, nonappealable judgment, order or decree of a court. However,

Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) Parties acknowledge that, although Escrowee is holding the Downpayment for Seller's account, for all other purposes Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in wilful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally agree to defend, indemnify, and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorney's fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in wilful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provision of this paragraph by signing in the place indicated on the signature page of this contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

*Acceptable Funds:*

**7.** All money payable under this contract, unless otherwise specified, shall be paid by:

(a) Cash, but not over $1,000.00;

(b) Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon not less than 3 business days notice (by telephone or otherwise) to Purchaser;

(c) As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $1,000.00; and

(d) As otherwise agreed to in writing by Seller or Seller's attorney.

*Mortgage Contingency:*

**8.** *(Delete if inapplicable)* The obligations of Purchaser hereunder are conditional upon issuance on or before sept 9 , 2014, (the "Commitment Date") of a written commitment from any Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, ~~other than a FHA, VHA or other governmentally insured loan,~~ to Purchaser, at Purchaser's sole cost and expense, of $480,000.00 or such lesser sum as Purchaser shall be willing to accept, at the prevailing fixed rate of interest not to exceed prevailing or initial adjustable rate of interest not to exceed prevailing for a term of at least 30 years and on other customary commitment terms, whether or not conditional upon any factors other than an appraisal satisfactory to the Institutional Lender. Purchaser shall (a) make prompt application to an Institutional Lender for such mortgage loan, (b) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (c) pay all fees, points and charges required in connection with such application and loan, (d) pursue such application with diligence, (e) cooperate in good faith with such Institutional Lender to obtain such commitment and (f) ~~promptly give Notice with a copy of the name and address of such Institutional Lender to which Purchaser has made such application~~. Purchaser shall comply with all requirements of such commitment (or of any other commitment accepted by Purchaser) and shall furnish Seller with a copy thereof promptly after receipt thereof. If Purchaser's commitment is not issued on or before the Commitment Date, then, unless Purchaser has accepted a commitment that does not comply with the requirements set forth above, Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, in which case this contract shall be deemed cancelled and thereafter neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 27. ~~If Purchaser fails to give such Notice of cancellation then~~ or if Purchaser shall accept a commitment that does not comply with the terms set forth above, then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph.

*Permitted Exceptions:*

**9.** The Premises are sold and shall be conveyed subject to:

(a) Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use;

(b) Consents for the erection of any structures on, under or above any streets on which the Premises abut;

MINOR (c) Encroachment of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;

(d) Real estate taxes that are a lien, but are not yet due and payable; and

(e) The other matters, if any, including a survey exception, set forth in a Rider annexed.

*Governmental Violations and Orders:*

CLOSING

**10.** (a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the date ~~hereof~~ by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.

(b) *(Delete if inapplicable)* All obligations affecting the Premises pursuant to the Administrative Code of the City of New York incurred prior to Closing and payable in money shall be discharged by Seller at or prior to Closing.

*Seller's Representations:*

**11.** (a) Seller represents and warrants to Purchaser that:

(i) The Premises abut or have a right of access to a public road;

(ii) Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;

(iii) Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA");

(iv) The Premises are not affected by any exemptions or abatements of taxes; and

(v) Seller has been known by no other name for the past ten years, except: none

(b) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.

(c) Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

*Condition of Property:*

**12.** Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16(f)), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract. Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

*Insurable Title:*

**13.** Seller shall give and Purchaser shall accept such title as any reputable title company shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this contract.

*Closing, Deed and Title:*

**14.** (a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a bargain and sale deed with covenants deed in proper statutory short form for record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.

(b) If Seller is a corporation, it shall deliver to Purchaser at the time of Closing (i) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (ii) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that Section.

*Closing Date and Place:*

**15.** Closing shall take place at the office of JAIME RAMIREZ ESQ at          o'clock on SEPTEMBER 22, 2014 or, upon reasonable notice (by telephone or otherwise) by Purchaser, at the office of LENDER'S COUNSEL

*Conditions to Closing:*

**16** This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:

(a) The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.

(b) The delivery by Seller to Purchaser of a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their uses as a TWO family dwelling at the date of Closing.

(c) The delivery by Seller to Purchaser of a duly executed and sworn affidavit (in form prescribed by law) claiming exemption of the sale contemplated hereby, if such be the case, under Article 31-B of the Tax Law of the State of New York and the Regulations promulgated thereunder, as the same may be amended from time to time (collectively the "Gains Tax Law"), or if such sale shall not be exempt under the Gains Tax Law, then Seller agrees to comply in a timely manner with the requirements of the Gains Tax Law and, at Closing, Seller shall deliver to Purchaser (i) an official return showing no tax due, or (ii) an official return accompanied by a certified or official bank check drawn on a New York State banking institution payable to the order of the New York State Department of Taxation and Finance in the amount of the tax shown to be due thereon. Seller shall (x) pay promptly any additional tax that may become due under the Gains Tax Law, together with interest and penalties thereon, if any, which may be assessed or become due after Closing, and/or execute any other documents that may be required in respect thereof, and (y) indemnify, defend and save Purchaser harmless from and against any of the foregoing and any damage, liability, cost or expense (including reasonable attorney's fees) which may be suffered or incurred by Purchaser by reason of the nonpayment thereof. The provisions of this subparagraph (c) shall survive Closing.

(d) The delivery by Seller to Purchaser of a certification stating that Seller is not a foreign person, which certification shall be in the form then required by FIRPTA. If Seller fails to deliver the aforesaid certification or if Purchaser is not entitled under FIRPTA to rely on such certification, Purchaser

shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

(e) The delivery of the Premises and all building(s) and improvements comprising a part thereof in broom clean condition, vacant and free of leases or tenancies, together with keys to the Premises.

(f) All plumbing (including water supply and septic systems, if any), heating and air conditioning, if any, electrical and mechanical systems, equipment and machinery in the building(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing.

(g) If the Premises are a one or two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices.

(h) The delivery by the parties of any other affidavits required as a condition of recording the deed.

<table>
<tr><td><em>Deed Transfer and Recording Taxes:</em></td><td>17. At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.</td></tr>

<tr><td><em>Apportionments and Other Adjustments; Water Meter and Installment Assessments:</em></td><td>18. (a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing.<br>(i) Taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed; (ii) fuel; (iii) interest on the existing mortgage; (iv) premiums on existing transferable insurance policies and renewals of those expiring prior to Closing; (v) vault charges; (vi) rents as and when collected.<br>(b) If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to that latest assessed valuation.<br>(c) If there is a water meter on the Premises, Seller shall furnish a reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.<br>(d) If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.<br>(e) Any errors or omissions in computing apportionments or other adjustments at closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.</td></tr>

<tr><td><em>Allowance for Unpaid Taxes, etc.:</em></td><td>19. Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less than five business days after Closing, provided that official bills therefor computed to said date are produced at Closing.</td></tr>

<tr><td><em>Use of Purchase Price to Remove Encumbrances:</em></td><td>20. If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear of such matters. Upon notice (by telephone or otherwise), given not less than 3 business days before Closing, Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.</td></tr>

<tr><td><em>Title Examination; Seller's Inability to Convey; Limitations of Liability:</em></td><td>21. (a) Purchaser shall order an examination of title in respect of the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract or, if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.<br>(b) If at the date of Closing Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called "Defects"), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other that those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects, Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeding in removing, remedying or complying with such Defects at the expiration of such adjournment(s) and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, the existing mortgage (unless this sale is subject to the same) and any master created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.<br>(c) If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser and, unless cancelled as a result of Purchaser's default or pursuant to paragraph 8, to reimburse Purchaser for the net cost of examination of title, including any appropriate additional charges related thereto, and the net cost, if actually paid or incurred by Purchaser, for updating the existing survey of the Premises or of a new survey, and (ii) the obligations under paragraph 27 shall survive the termination of this contract.</td></tr>

<tr><td><em>Affidavit as to Judgments, Bankruptcies, etc.:</em></td><td>22. If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.</td></tr>

<tr><td><em>Defaults and Remedies:</em></td><td>23. (a) If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.<br>(b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.</td></tr>

<tr><td><em>Purchaser's Lien:</em></td><td>24. All money paid on account of this contract, and then reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges, are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.</td></tr>

<tr><td><em>Notices:</em></td><td>25. Any notice or other communication ("Notice") shall be in writing and either (a) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or<br>(b) delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered.</td></tr>

<tr><td><em>No. Assignment:</em></td><td>26. This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void.</td></tr>

<tr><td><em>Broker:</em></td><td>27. Seller and Purchaser each represents and warrants to other that it has not dealt with any broker in connection with this sale other than NONE ("Broker") and Seller shall pay Broker any commission earned pursuant to a separate agreement between Seller and Broker. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorneys' fees, arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur, the termination of this contract.</td></tr>

<tr><td><em>Miscellaneous:</em></td><td>28. (a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.<br>(b) Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributes, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.<br>(c) Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.<br>(d) The captions in this contract are for convenience of reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this contract or any provision hereof.<br>(e) This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.<br>(f) Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This subparagraph shall survive Closing.<br>(g) Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and</td></tr>
</table>

Noble-Plaintiff Docs
202 of 254
5/23/2019

# 1st RIDER TO CONTRACT OF SALE

RIDER ATTACHED TO AND MADE A PART OF THE CONTRACT OF SALE BETWEEN:

**SELLER:**        MT. OLIVET CHURCH INC.

**PURCHASER(S):**   MARIA T. NOBLE AND OR ASSIGNEE

**PREMISES:**      2176 GRAND CONCOURSE BRONX NEW YORK

1. **ADDITIONAL EXCEPTIONS.** Supplementing Paragraph 9: The premises are to be sold and conveyed subject to the following matters, in addition to those matter listed in Paragraph 9:

a) Covenants, restrictions, rights of way, easements, reservations and agreements of record, if any, insofar as the same may now be in force or effect, provided same are not violated by the present structure or use of the Premises, and do not render title uninsurable;
b) Any state of facts an accurate survey of the Premises may show, provided the same does not render title unmarketable;
c) Building and zoning regulations and ordinances of the city, town or village in which the premises lie which are not violated by the existing structure or its present.
d) Rights, if any, of the municipality in which the Premises are located or of any public utility, telephone or cable television company, to install, maintain, operate and/or repair pipes, wires cables, poles and related equipment in, under, over and upon the Premises;
e) Possible encroachments of fences and variations between record lines and fences; encroachments or projections upon street or road of any stoops, areas, gratings, steps, windows, balconies, ornaments, brick, leaves, trim and cornices and the like;
f) Any state of facts a personal inspection of the Premises would show;

2.**REPAIRS.**It is understood and agreed that seller shall not be under any obligation whatsoever to make and/or pay for any repairs, alterations or improvements, including the cost of any and all inspections required by the lending institution or any other organization as a condition to the issuance of the mortgage commitment referred to previously.

3.**ASSIGNMENTS.** This contract may be assigned without the written consent of the seller.

4. **DISCLOSURES.** In the event the Seller or Purchaser or any of the principals, stockholders, directors, officers or employers of the Seller or Purchaser herein are licensed Real Estate Brokers/Salesman the Seller and/or Purchaser acknowledged that

full disclosure of this fact has been made to them, and that the purchaser is purchasing the property for possible resale at a profit.

5.  **MORTGAGE CONTINGENCY:** If Purchaser is unable to obtain a commitment for such mortgage Seller's attorney shall, upon request, have the right to see copies of the application filed by the Purchaser (S) with the proposed mortgagee. If requested, Purchaser (s) will request, in writing, that mortgagee send a copy of the application to Seller's attorney.

       If Purchaser is unable to obtain a firm commitment within such time, then either party may cancel this contract, subject to terms of preprinted contract, by written notice to the other party and upon refund of the down payment terminate without further liability on the part of either party to the other.

6.  **NOTICES.** All notices under this contract shall be in writing, mailed, or delivered to the office of counsel for the respective parties, that have represented said parties at the signing of this contract, (or to successor counsel whose appearance has been so designated in writing). However, all notices under this contract which would have the effect of canceling and/or rescinding and/or otherwise terminating this contract, including but not limited to a Purchaser's failure to obtain mortgage commitment notice@ shall be so sent by certified mail. Notices signed by said counsel shall be sufficient.

7.  **PERSONALITY.** All personal property included in this sale will be conveyed in as is condition, less normal wear and tear from the date of this contract to the closing of title.

8.  **VIOLATIONS.** All notices of violation of law or municipal ordinance orders or requirement, which in the aggregate do not exceed Five Hundred ($500.00) Dollars to correct, noted in or issued by the Department of Housing and Buildings, Fire, Labor Health or other State or Municipal Authorities having jurisdiction against or affecting the premises at the date hereof shall be complied with by the Seller on or before closing and the premises shall be conveyed free of same or a credit at Seller's option in order to correct the violations. In the event cost of correcting such violations exceed Five Hundred ($500.00) Dollars in the aggregate, Seller shall have the right to elect, within ten (10) days of receipt of written notice, to cure and consummate the transaction contemplated hereby or to cancel this contract by written notice to Purchaser. In the event Seller elects to cancel the contact pursuant hereto, Seller's sole liability shall be limited to the return of the Deposit and the parties shall have no further rights or liabilities to each other under the terms and provisions of this contract. Notwithstanding the foregoing, Purchaser may elect to take the premises subject to such violations without any offset whatsoever and without any claim against or liability on the part of the Seller, except as herein provided.

Jaime Ramirez P.C.
751 Commonwealth Avenue
Bronx, New York, 10473
Tel.: 718-542-6629 Fax.: 718-542-6630
ramirezlaw@optonline.net

Noble-Plaintiff Docs
204 of 254
5/23/2019

9. <u>TRAVEL ALLOWANCE.</u>  In the event the closing of Title should take place outside of the New York City Metropolitan area, or Westchester County the buyer shall pay the sum of Three hundred Fifty ($350.00) as a travel allowance to the sellers attorney.

10. <u>TITLE EXAMINATION.</u> Purchaser agrees to order, immediately after obtaining a mortgage commitment, an examination of the title to the premises to be made on Purchaser's behalf, and, at least 10 days before the date for the closing of title, to send to the attorneys for Seller a copy of the report of such examination of title and a written statement of any objections to title of the closing of title hereunder.  If Purchaser or Purchaser's attorney fails to Give Seller's attorney such notice of objection (other than bring down to date searches), then any defect or encumbrance of exception appearing on such report of title, or affecting the premises at the time of closing, shall not be deemed to be an objection to title or to the closing of title hereunder, and Purchaser shall take title subject hereto.

11. <u>INABILITY TO CONVEY TITLE.</u>  If the Seller shall be unable to convey title in accordance with the provisions of this Agreement, any payments made by the Purchaser on account of the purchase price, shall be refunded, together with the reasonable expense incurred for examination of title (not exceeding the usual net charges of title issued, and the net cost of a survey), whereupon this Agreement shall be terminated and neither party hereto shall have any further rights again the other, except that, if the premises are affected by any encumbrance, outstanding interest or expression of title not expressly consented to herein by the Purchaser, which render the Seller's title to the premises unmarketable, and, which may, according to reasonable expectations, be removed within fifteen (15) days, the Seller shall have the privilege to remove or satisfy the same, and shall for this purpose be entitled to an adjournment of the closing of title to the premises marketable.  The Purchaser may, nevertheless, accept such title as the Seller may be able to convey, without reduction of the purchase price, or any credit against the same and without liability on the part of the Seller.

12. <u>CONTRACT MODIFICATION AND EXTENSION.</u>  Seller (s) does hereby appoint Seller's attorney herein as his agent and Purchaser(s) does hereby appoint his attorney, herein as his agent to execute any and all instrument in writing, having reference to this contract including but not limited to, modifications thereof and extensions of time for obtaining mortgage, if any, and extension of time for closing or otherwise.

13. <u>DEED ACCEPTANCE.</u>  The acceptance of deed by Purchaser(s) shall be deemed to be full performance and discharge and every agreement and obligation on the part of the Seller(s) to be performed pursuant to the provisions of this agreement, except those, if any,

Jaime Ramirez, P.C.
751 Commonwealth Avenue
Bronx, New York, 10473
Tel.: 718-542-6629 Fax.: 718-542-6630
ramirezlaw@optonline.net

Noble-Plaintiff Docs
205 of 254
5/23/2019

which are herein specifically stated to survive the delivery of the deed.

14. **SUBMISSION NOT AN OFFER.** The submission of this agreement by the Seller or their attorneys to Purchaser does not constitute an offer or an acceptance of an offer. This agreement shall not be binding upon the Sellers unless (i) the agreement has been fully executed by the Purchaser and Seller, and a fully executed copy has been delivered to each party by their respective attorneys; and (ii) Purchaser has paid the down payment pursuant to Paragraph 1 of the form printed contract.

15. **CONTRACT CANNOT BE RECORDED.** The parties agrees that neither this agreement nor any memorandum or notice thereof shall be recorded or tendered for recording in the County Clerk's Office of the County in which the land is situated. Purchaser further agrees that if this agreement, or any memorandum or short form thereof shall be recorded in any such office, this agreement, upon notice by the Seller to the Purchaser, may be deemed to void at Seller's option and of no further force and effect and such notice, if reported, shall be deemed sufficient and adequate notice to third parties that this agreement is void and of no further force and effect.

16. **CONFLICT.** If there is any conflict between the provisions contained in this Addendum and the provision of the printed form contract, the provisions in this addendum shall govern and be controlling to the extent necessary to resolve the conflict.

17. **AMBIGUITY.** Both parties shall be deemed to have drafted this Agreement. In the event any provisions are found to be ambiguous, same shall not be construed against either party.

18. Purchaser shall have the right to inspect the premises within forty-eight (48) hours prior to closing.

19. **HEATING/COOLING BILLS.** The purchasers herein acknowledged that they have a right to the summary of the heating and/or cooling bills or a complete set of said bills, under Section 17-103, Chapter 555 of the Laws of the State of New York commonly known as the Truth in Heating Law. The purchasers herein waive their right to companies of said bills and acknowledge that they have not requested them in connection with this transaction.

20. At closing, the premises will have an operable single station smoke detecting alarm device in accordance with the New York State Executive Law, Chapter 971, Section 270.5.

Jaime Ramirez, P.C.
751 Commonwealth Avenue
Bronx, New York 10473
Tel.: 718-542-6629 Fax : 718-542-6630
ramirezlaw@optonline.net

Noble-Plaintiff Docs
206 of 254
5/23/2019

21. PURCHASER REPRESENTATIONS. Purchasers warrant and represent (i) that they have assets sufficient to complete this transaction; (ii) that they have no personal knowledge of any circumstances that would render them unacceptable to any lending institution by reason of outstanding loans, obligations or liabilities which would adversely affect their credit standing; (iii) that until the closing of title, they will not deliberately or knowingly change their financial status so as to render their mortgage application unacceptable to the lending institution. Purchasers acknowledge and represent that this transaction is not contingent on the Purchasers' ability to sell any other real or personal property.

22. CERTIFICATE OF OCCUPANCY. Supplementing paragraph #16B of the printed contract. This presentation shall not be construed to obligate Seller to incur any cost of expense to obtain a Certificate of Occupancy, Certificate of Completion and/or letter as herein above provided; and in the event that Seller cannot comply with this representation without incurring any cost, Seller shall have the option of canceling this Contract and returning to the Purchaser the down payment paid hereunder and thereupon the rights and obligations of the parities shall cease and terminate unless Purchaser waives this condition.

23. PREPARATION OF CONTRACT. In the event Purchaser is unable to obtain a mortgage commitment in accordance to the terms of the Contract, Purchaser agrees to pay the Seller's attorney the sum of one hundred and fifty ($150.00) dollars for preparation of the Contract. Seller's attorney shall be authorized to deduct said amount form the downpayment

24. TERMITE INSPECTION. Purchasers shall order a termite inspection by a reputable company, and if premises are found to be infested with termites or other wood destroying insects, the Seller shall have the option of either canceling said contract or curing premises of said infestation. Said termite inspection shall be completed within twenty (20) days from the date hereof. The purchaser shall serve written notice upon Seller's attorney within twenty (20) days after Purchaser receives the inspection report.

25. POSSESSION. Vacant and broom clean possession of the ENTIRE within described premises shall be delivered to Purchaser within 7 days after the closing of title. However, the attorney for the Seller shall hold in escrow the sum of $3,500.00 security for the faithful performance of the above agreement. In the event that Seller does not deliver vacant possession as set forth, then in that event, the attorney for the Seller is authorized to pay out of said escrow deposit the sum of $375.00 per day to the Purchaser as liquidated damages for each and every additional day that Seller remains in possession beyond the agreed period. All adjustments to be as of the day of possession.

Jaime Ramirez, P.C.
751 Commonwealth Avenue
Bronx, New York 10473
Tel.: 718-842-6629 Fax.: 718-542-6630
ramirezlaw@optonline.net

In the event Seller unable to deliver premises vacant as of the date of closing, Seller shall be entitled to an adjournment of up to ninety (90) days to bring a disposes proceeding against its current tenant.

If after (90) days, premises cannot be delivered vacant, Seller may at his option cancel this contract and return to Purchaser the down payment paid hereunder and all costs for any title expenses, mortgage application and cancellation fees, and appraisals. Purchaser, at his option, may take title to the premises on the date of Closing, subject to any tenancy remaining in the premises, whereby Seller shall assign any and all rights caused of action, etc., against tenant to Purchaser. Seller shall be relieved of all claims and shall bear no responsibility to continue or bring forth any proceedings against the tenant.

26.  **APPLIANCES.**  Notwithstanding the above, seller's liability in connection with any appliance shall be limited to the sum of ONE HUNDRED TWENTY FIVE ($125.00) DOLLARS 00/100 per appliance.  The Purchaser shall have the right to inspect the premises within forty-eight (48) hours prior to closing and of taking possession in order to ascertain the condition of the premises.

27.  **PROPERTY CONDITION DISCLOSURE.** Article 14 of the Real Property Law of the State of New York ("the Property Condition Disclosure Act" or "PCDA") provides that the Seller of a one (1) to four (4) family dwelling ("the Premises") must deliver to the prospective Purchaser of the Premises prior to signing by the Purchaser of a binding Contract of Sale a certified Property Condition Disclosure Statement ("PCDS") regarding certain conditions and information concerning the Premises which are known to the Seller.  Such PCDS is not a warranty of any kind by the Seller or by any agency representing the Seller in this transaction. It is not a substitute for any inspections or test which may be conducted by the Purchaser or qualified agents on behalf of the Purchaser, and the Purchaser is encouraged to obtain his or her own independent professional engineer inspections and environmental tests and is also encouraged to check public records pertaining to the premises.  Seller represents that Seller does not have actual knowledge, records or personal recollection of facts and/or events suitable to accurately complete the information requested to be set forth in the state formulated PCDS.

Section 465 of the PCDA provides that in the event that a Seller fails to deliver a PCDS before the Purchaser signs a binding Contract of Sale, the Purchaser is to receive upon the transfer of title a credit against the purchase price in the sum of $500.00.  Seller hereby offers to give the Purchaser, at closing, a credit against the purchase price in the sum of $500.00.  Purchaser hereby accepts the offer, in return for which credit, the Purchaser hereby released the Seller from any obligation otherwise imposed by the PCDA to deliver a PCDS.

Jaime Ramirez, P.C.
751 Commonwealth Avenue
Bronx, New York 10473
Tel.: 718-542-6629 Fax : 718-542-6650
ramirezlaw@optonline.net

28.   **ADJOURNMENT FEE.**   In the event the seller's attorney appears at scheduled closing and the closing has to be adjourned or cancelled through no fault of the Seller, then Purchaser shall apply to the seller's attorney a fee of $250.00.

29.**RETURNED CHECK.**   In the event the purchaser's down payment check is dishonored then in that event seller's shall be entitled to all remedies at law including contract cancellation and the purchaser shall pay seller's attorney the sum of $100.00 as a service fee in addition to replacing said dishonored check with either a certified check or official bank check.

30.   **SHORT SALE.**            ( )  Short sale (check if applicable)
This transaction shall be subject to seller's mortgagee (s) accepting a short sale application for the instant premises and shall be subject to any terms requested by mortgagee (s).  If any proposed terms are unacceptable to purchaser, purchaser shall have right to cancel transaction and receive return of down payment.  Seller acknowledges that he or she will not receive any proceeds at closing.

31.   COURT APPROVAL.  THIS TRANSACTION SHALL BE SUBJECT TO COURT APPROVAL AS REQUIRED PURSUANT TO THE APPLICABLE RELIGIOUS CORPORATION LAWS.


Seller _____          Purchaser _____

Seller _____          Purchaser _____


Jaime Ramirez, P.C.
751 Commonwealth Avenue
Bronx, New York 10473
Tel : 718-542-6629 Fax : 718-542-0530
ramirezlaw@optonline.net

**Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards**

**Lead Warning Statement**

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

**Seller's Disclosure**
(a)  Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):
    (i)  ☐  Known lead-based paint and/or lead-based paint hazards are present in the housing.
            (explain).

    (ii)  ☒  Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.
(b) Records and reports available to the seller (check (i) or (ii) below):
    (i)  ☐  Seller has provided the purchaser with all available records and reports pertaining to leadbased paint and/or lead-based paint hazards in the housing (list documents below).

        ☒  Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Purchaser's Acknowledgment (initial)**
(c)  _____  Purchaser has received copies of all information listed above.
(d)  _____  Purchaser has received the pamphlet *Protect Your Family from Lead in Your Home.*
(e) Purchaser has (check (i) or (ii) below):
    (i)  ☒  received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or
    (ii)  ☐  waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**Agent's Acknowledgment (initial)**
(f)  _____  Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**
The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| | | | |
|---|---|---|---|
| Seller | Date | Seller | Date |
| Purchaser *Maria B. Noble* | Date | Purchaser | Date |
| Agent | Date | Agent | Date |

documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

      (h) This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by, any other person or entity.

IN WITNESS WHEREOF, this contract has been duly executed by the parties hereto.

_____
Seller
MT. OLIVET CHURCH INC.

_____
Seller
BY: *ARACELIS STAATZ*

_____
Purchaser
MARIA T. NOBLE

_____
Purchaser

Attorney for Seller:JAIME RAMIREZ

Address:3058 CROSS BRONX EXPRESSWAY UNIT 1
BRONX, NEW YORK 10465

Tel:718 542 6629     Fax:718 542 6630

Attorney for Purchaser:

Address:

Tel:       Fax:

Receipt of the Down payment is acknowledged and the undersigned agrees to act in accordance with the provisions of Paragraph 6 above.

Escrowee

Contract of Sale

TITLE NO.

TO

DISTRIBUTED BY

**YOUR TITLE EXPERTS**
The Judicial Title Insurance Agency LLC
800-281-TITLE (8485) FAX: 800-FAX-9396

PREMISES

DISTRICT

SECTION

BLOCK

LOT

COUNTY or TOWN

STREET NUMBER ADDRESS

# Exhibit C

Contract of Sale for New York office, commercial and multi-family residential premises

# Contract of Sale---Office, Commercial and Multi-Family Residential Premises

## Table of Contents

Schedule A. Description of premises (to be attached)
Schedule B. Permitted exceptions
Schedule C. Purchase price
Schedule D. Miscellaneous
Schedule E. Rent schedule (to be attached)
Section 1. Sale of premises and acceptable title
Section 2. Purchase price, acceptable funds, existing
    mortgages, purchase money mortgage and
    escrow of downpayment
Section 3. The closing
Section 4. Representations and warranties of seller
Section 5. Acknowledgments of purchaser
Section 6. Seller's obligations as to leases
Section 7. Responsibility for violations

Section 8. Destruction, damage or condemnation
Section 9. Covenants of seller
Section 10. Seller's closing obligations
Section 11. Purchaser's closing obligations
Section 12. Apportionments
Section 13. Objections to title, failure of seller or
    purchaser to perform and
Section 14. Broker
Section 15. Notices
Section 16. Limitations on survival of representations,
    warranties, covenants and other
    obligations
Section 17. Miscellaneous provisions
Signatures and receipt by escrowee

CONTRACT dated the   , day of  APRIL, 2017,

Between

**MT. OLIVET CHURCH, INC.**

Address:
2176 GRAND CONCOURSE, BRONX, NY 10457
("Seller") and

**MARIA T. NOBLE**

Address:
250 GORGE ROAD, APT. 12D, CLIFFSIDE PARK, NJ 07010
("Purchaser").

Seller and Purchaser hereby covenant and agree as follows:

### Schedule A
### DESCRIPTION OF PREMISES

The Premises are located at or known as:
Street Address:2176 GRAND CONCOURSE
City:BRONX  State:NY   Zip:10457
Tax Map Designation:  Section:   Block:03157  Lot:0014

(☐ metes and bounds description attached hereto)

### Schedule B
### PERMITTED EXCEPTIONS

 1. Zoning regulations and ordinances which are not violated by the existing structures or present use thereof and which do not render title uninsurable.
 2. Consents by the Seller or any former owner of the Premises for the erection of any structure or structures on, under or above any street or streets on which the Premises may abut.
 3. The Existing Mortgage(s) and financing statements, assignments of leases and other collateral assignments ancillary thereto.
 4. Leases and Tenancies specified in the Rent Schedule and any new leases or tenancies not prohibited by this contract.
 5. Unpaid installments of assessments not due and payable on or before the Closing Date.
 6. Financing statements, chattel mortgages and liens on personalty filed more than 5 years prior to the Closing Date and not renewed, or filed against property or equipment no longer located on the Premises or owned by Tenants.
 7.  (a)   Rights of utility companies to lay, maintain install and repair pipes, lines, poles, conduits, cable boxes and related equipment on, over and under the Premises, provided that none of such rights imposes any monetary obligation on the owner of the Premises.
     (b) Encroachments of stoops, areas, cellar steps, trim cornices, lintels, window sills, awnings, canopies, ledges, fences, hedges, coping and retaining walls projecting from the Premises over any street or highway or over any adjoining property and encroachments of similar elements projecting from adjoining property over the Premises.
     (c) Revocability or lack of right to maintain vaults, coal chutes, excavations or sub-surface equipment beyond the line of the Premises.
     (d) Any state of facts that an accurate survey would disclose, provided that such facts do not render title unmarketable. For the purposes of this contract, none of the facts shown on the survey, if any, identified below shall be deemed to render title unmarketable, and Purchaser shall accept title subject thereto:

### Schedule C
### PURCHASE PRICE

The Purchase Price shall be paid as follows:
 (a)  By check subject to collection, the receipt of which is hereby acknowledged by Seller:     **$1,000.00**

(b) By check or checks delivered to Seller at the Closing in accordance with the provisions of §2.02:   $499,000.00
(c) By acceptance of title subject to the following Existing Mortgage(s):   $
(d) By execution and delivery to Seller by Purchaser or its assignee of a note secured by a Purchase
   Money Mortgage on the Premises, in the sum of $       payable as follows:

Interest Rate:       Term:       Monthly payment:       Prep. Fee:       Other provisions:            $
Making for a total Purchase Price of:                                                $500,000.00

## Schedule D
## MISCELLANEOUS

1. Title insurer designated by the parties (§1.02):

2. Last date for consent by Existing Mortgagee(s) (§2.03(b)):

3. Maximum Interest Rate of any Refinanced Mortgage (§2.04(b)):

4. Prepayment Date on or after which Purchase Money Mortgage may be prepaid (§2.04(c)):

5. Seller's tax ID Nos (§2.05) #1:       #2:       #3:       #4:

6. Buyer's tax ID Nos (§2.05) #1:       #2:       #3:       #4:

7. Scheduled time and date of Closing (§3.01): Date:       ,       Time:       o'clock.

8. Place of Closing (§3.01): WITHIN 30 DAYS OF COURT APPROVAL AND ORDER.  THIS TRANSACTION IS
SUBJECT TO ATTORNEY GENERAL AND COURT APPROVAL

9. Assessed valuation of Premises (§4.10):

10. Fiscal year and annual real estate taxes on Premises (§4.10): Fiscal Year:       Annual Taxes:

11. Tax abatements or exemptions affecting Premises (§4.10):

12. Assessments on Premises (§4.13):

13. Maximum Amount which Seller must spend to cure violations, etc. (§7.02):

14. Maximum Expense of Seller to cure title defects, etc. (§13.02):

15. Broker, if any (§14.01): LEDWIN ENTERPRISES

16. Party to pay broker's commission (§14.01): SELLER (5% COMMISSION)
17. Address for notices (§15.01):
       If to Seller:
       LAURA C. BROWNE, ESQ.
       1938 WILLIAMSBRIDGE ROAD, BRONX, NEW YORK 10461

              with a copy to:
       JAIME RAMIREZ, ESQ.
       3058 CROSSBRONX EXPRESSWAY, STE 1, BRONX, NEW YORK 10465

       If to Purchaser:

              with a copy to:

18. Limitation Date for actions based on Seller's surviving representations and other obligations (§16.01):

19. Additional Schedules or Riders (§17.08): NONE

## Schedule E
## RENT SCHEDULE

(☐ if more than four tenants, check, and annex a rent schedule rider hereto; otherwise, enter information below)
   *Name*                        *Apt. No.*       *Rent*       *Due*       *Security*

**PREMISES BEING DELIVERED VACANT AND IN "AS IS" CONDITION**

**Section 1. Sale of Premises and Acceptable Title**

§1.01. Seller shall sell to Purchaser, and Purchaser shall purchase from Seller, at the price and upon the terms and conditions set forth in this contract:

(a) the parcel of land more particularly described in Schedule A attached hereto ("Land"); (b) all buildings and improvement situated on the Land (collectively, "Building");

(c) all right, title and interest of Seller, if any, in and to the land lying in the bed of any street or highway in front of or adjoining the Land to the center line thereof and to any unpaid award for any taking by condemnation or any damage to the Land by reason of a change of grade of any street or highway;

(d) the appurtenances and all the estate and rights of Seller in and to the Land and Building; and

(e) all right, title and interest of Seller, if any, in and to the fixtures, equipment and other personal property attached or appurtenant to the Building (collectively, "Premises"). The Premises are located at or known as
Street Address:2176 GRAND CONCOURSE
City: BRONX  State: NY  Zip:10457
Tax Map Designation: Section:          Block:03157 Lot:0014

§1.02. Seller shall convey and Purchaser shall accept fee simple title to the Premises in accordance with the terms of this contract, subject only to:

(a) the matters set forth in Schedule B attached hereto (collectively, "Permitted Exceptions"); and

(b) such other matters as (i) the title insurer specified in Schedule D attached hereto (or if none is so specified, then any member of the New York Board of Title Underwriters) shall be willing, without special premium, to omit as exceptions to coverage or to except with insurance against collection out of or enforcement against the Premises and (ii) shall be accepted by any lender described in Section 274-a of the Real Property Law ("Institutional Lender") which has committed in writing to provide mortgage financing to Purchaser for the purchase of the Premises ("Purchaser's Institutional Lender"), except that if such acceptance by Purchaser's Institutional Lender is unreasonably withheld or delayed, such acceptance shall be deemed to have been given.

**Section 2. Purchase Price, Acceptable Funds, Existing Mortgages, Purchase Money Mortgage and Escrow of Down payment**

§2.01. The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Premises as provided in Schedule C attached hereto is $500,000.00

§2.02. All monies payable under this contract, unless otherwise specified in this contract, shall be paid by:
(a) certified checks of Purchaser or any person making a purchase money loan to Purchaser drawn on any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York or
(b) official bank checks drawn by any such banking institution, payable to the order of Seller, except that uncertified checks of Purchaser payable to the order of Seller up to the amount of one-half of one percent of the Purchase Price shall be acceptable for sums payable to Seller at the Closing.

§2.03. (a) If Schedule C provides for the acceptance of title by Purchaser subject to one or more existing mortgages (collectively, "Existing Mortgage(s)"), the amounts specified in Schedule C with reference thereto may be approximate. If at the Closing the aggregate principal amount of the Existing Mortgage(s), as reduced by payments required there under prior to the Closing, is less than the aggregate amount of the Existing Mortgage(s) as specified in Schedule C, the difference shall be added to the monies payable at the Closing, unless otherwise expressly provided herein.

(b) If any of the documents constituting the Existing Mortgage(s) or the note(s) secured thereby prohibits or restricts the conveyance of the Premises or any part thereof without the prior consent of the holder or holders thereof

("Mortgagee(s)") or confers upon the Mortgagee(s) the right to accelerate payment of the indebtedness or to change the terms of the Existing Mortgage(s) in the event that a conveyance is made without consent of the Mortgagee(s), Seller shall notify such Mortgagee(s) of the proposed conveyance to Purchaser within 10 days after execution and delivery of this contact, requesting the consent of such Mortgagee(s) thereto. Seller and Purchaser shall furnish the Mortgagee(s) with such information as may reasonably be required in connection with such request and shall otherwise cooperate with such Mortgagee(s) and with each other in an effort expeditiously to procure such consent, but neither shall be obligated to make any payment to obtain such consent. If such Mortgagee(s) shall fail or refuse to grant such consent in writing on or before the date set forth in Schedule D or shall require as a condition of the granting of such consent

(i) that additional consideration be paid to the Mortgagee(s) and neither Seller nor Purchaser is willing to pay such additional consideration or

(ii) that the terms of the Existing Mortgage(s) be changed and Purchaser is unwilling to accept such change, then unless Seller and Purchaser mutually agree to extend such date or otherwise modify the terms of this contract, Purchaser may terminate this contract in the manner provided in §13.02.

If Schedule C provides for a Purchase Money Mortgage (as defined in §2.04), Seller may also terminate this contract in the manner provided in §13.02 if any of the foregoing circumstances occur or if Seller is unwilling to accept any such change in the terms of the Existing Mortgage(s).

§2.04. (a) If Schedule C provides for payment of a portion of the Purchase Price by execution and delivery to Seller of a note secured by a purchase money mortgage ("Purchase Money Mortgage"), such note and Purchase Money Mortgage shall be drawn by the attorney for the Seller on the standard forms of the New York Board of Title Underwriters then in effect for notes and for mortgages of like lien, as modified by this contract. At the Closing, Purchaser shall pay the mortgage recording tax and recording fees therefore and the filing fees for any financing statements delivered in connection therewith.

(b) If Schedule C provides for the acceptance of title by Purchaser subject to Existing Mortgage(s) prior in lien to the Purchase Money Mortgage, the Purchase Money Mortgage shall provide that it is subject and subordinate to the lien(s) of the Existing Mortgage(s) and shall be subject and subordinate to any extensions, modifications, renewals, consolidations, substitutions or replacements thereof (collectively, "Refinancing" or "Refinanced Mortgage"), provided that (i) the rate of interest payable under a Refinanced Mortgage shall not be greater than that specified in Schedule D as the Maximum Interest Rate or, if no Maximum Interest Rate is specified in Schedule D, shall not be greater than the rate of interest that was payable on the refinanced indebtedness immediately prior to such Refinancing, and (ii)     if the principal amount of the Refinanced Mortgage plus the principal amount   of other Existing Mortgage(s), if any, remaining after placement of a Refinanced Mortgage exceeds the amount of principal owing and unpaid on all mortgages on the Premises superior to the Purchase Money Mortgage immediately prior to the Refinancing, an amount equal to the excess shall be paid at the closing of the Refinancing to the holder of the Purchase Money Mortgage in reduction of principal payments due there under in inverse order of maturity. The Purchase Money Mortgage shall further provide that the holder thereof shall, on demand and without charge therefore, execute, acknowledge and deliver any agreement or agreements reasonably required by the mortgagee to confirm such subordination.

(c) The Purchase Money Mortgage shall contain the following additional provisions:

(i) "The mortgagor or any owner of the mortgaged premises shall have the right to prepay the entire unpaid indebtedness together with accrued interest, but without penalty, at any time on or after [insert the day following the last day of the fiscal year of the mortgagee in

which the Closing occurs or, if a Prepayment Date is specified in Schedule D, the specified Prepayment Date], or not less than 10 days' written notice to the holder hereof."

(ii) "Notwithstanding anything to the contrary contained herein, the obligation of the mortgagor for the payment of the indebtedness and for the performance of the terms, covenants and conditions contained herein and in the note secured hereby is limited solely to recourse against the property secured by this mortgage, and in no event shall the mortgagor or any principal of the mortgagor, disclosed or undisclosed, be personally liable for any breach of or default under the note or this mortgage or for any deficiency resulting from or through any proceedings to foreclose this mortgage, nor shall any deficiency judgment, money judgment or other personal judgment be sought or entered against the mortgagor or any principal of the mortgagor, disclosed or undisclosed, but the foregoing shall not adversely affect the lien of this mortgage or the mortgagee's right of foreclosure."

(iii) "In addition to performing its obligations under Section 274-a of the Real Property Law, the mortgagee, if other than one of the institutions listed in Section 274-a agrees that, within 10 days after written request by the mortgagor, but not more than twice during any period of 12 consecutive months, it will execute, acknowledge and deliver without charge a certificate of reduction in recordable form (a) certifying as to (1) the then unpaid principal balance of the indebtedness secured hereby, (2) the maturity date thereof, (3) the rate of interest, (4) the last date to which interest has been paid and (5) the amount of any escrow deposits then held by the mortgagee, and (b) stating, to the knowledge of the mortgagee, whether there are any alleged defaults hereunder and, if so, specifying the nature thereof."

(iv) "All notices required or desired to be given under this mortgage shall be in writing and shall be delivered personally or shall be sent by prepaid registered or certified mail, addressed to the mortgagor and mortgagee at the addresses specified in this mortgage or to such other parties or at such other addresses, not exceeding two, as may be designated in a notice given to the other party or parties in accordance with the provisions hereof."

(v) The additional provisions, if any, specified in a rider hereto.

§2.05. (a) If the sum paid under paragraph (a) of Schedule C or any other sums paid on account of the Purchase Price prior to the Closing (collectively, "Downpayment") are paid by check or checks drawn to the order of and delivered to Seller's attorney or another escrow agent ("Escrowee"), the Escrowee shall hold the proceeds thereof in escrow in a special bank account (or as otherwise agreed in writing by Seller, Purchaser and Escrowee) until the Closing or sooner termination of this contract and shall pay over or apply such proceeds in accordance with the terms of this section. Escrowee need not hold such proceeds in an interest-bearing account, but if any interest is earned thereon, such interest shall be paid to the same party entitled to the escrowed proceeds, and the party receiving such interest shall pay any income taxes thereon. The tax identification numbers of the parties are either set forth in Schedule D or shall be furnished to Escrowee upon request. At the Closing, such proceeds and the interest thereon, if any, shall be paid by Escrowee to Seller. If for any reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, Escrowee is hereby authorized to make such payment. If Escrowee does receive such written objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this contract or a final judgment of a court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest thereon, if any, with the clerk of the Supreme Court of the county in which the Land is located. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this contract or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee has acknowledged agreement to these provisions by signing in the place indicated on the signature page of this contract.

**Section 3. The Closing**

§3.01. Except as otherwise provided in this contract, the closing of title pursuant to this contract ("Closing") shall take place on the scheduled date and time of closing specified in Schedule D (the actual date of the Closing being herein referred to as "Closing Date") at the place specified in Schedule D.

**Section 4. Representations and Warranties of Seller**

Seller represents and warrants to Purchaser as follows:

§4.01. Unless otherwise provided in this contract, Seller is the sole owner of the Premises.

§4.02. If the Premises are encumbered by an Existing Mortgage(s), no written notice has been received from the Mortgagee(s) asserting that a default or breach exists thereunder which remains uncured and no such notice shall have been received and remain uncured on the Closing Date. If copies of documents constituting the Existing Mortgage(s) and note(s) secured thereby have been exhibited to and initialed by Purchaser or its representative, such copies are true copies of the originals and the Existing Mortgage(s) and note(s) secured thereby have not been modified or amended except as shown in such documents.

§4.03. The information concerning written leases (which together with all amendments and modifications thereof are collectively referred to as "Leases") and any tenancies in the Premises not arising out of the Leases (collectively, "Tenancies") set forth in Schedule E attached hereto ("Rent Schedule") is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof, and there are no Leases or Tenancies of any space in the Premises other than those set forth therein and any subleases or subtenancies. Except as otherwise set forth in the Rent Schedule or elsewhere in this contract:

(a) all of the Leases are in full force and effect and none of them has been modified, amended or extended;
(b) no renewal or extension options have been granted to tenants;
(c) no tenant has an option to purchase the Premises;
(d) the rents set forth are being collected on a current basis and there are on arrearages in excess of one month;
(e) no tenant is entitled to rental concessions or abatements for any period subsequent to the scheduled date of closing;
(f) Seller has not sent written notice to any tenant claiming that such tenant is in default, which default remains uncured;

(g) no action or proceeding instituted against Seller by any tenant of the Premises is presently pending in any court, except with respect to claims involving personal injury or property damage which are covered by insurance; and
(h) there are no security deposits other than those set forth in the Rent Schedule.

If any Leases which have been exhibited to and initialed by Purchaser or its representative contain provisions that are inconsistent with the foregoing representations and warranties, such representations and warranties shall be deemed modified to the extent necessary to eliminate such inconsistency and to conform such representations and warranties to the provisions of the Leases.

§4.04. If the Premises or any part thereof are subject to the New York City Rent Stabilization Law, Seller is and on the Closing Date will be a member in good standing of the Real Estate Industry Stabilization Association, and, except as otherwise set forth in the Rent Schedule, there are no proceedings with any tenant presently pending before the Conciliation and Appeals Board in which a tenant has alleged an overcharge of rent or diminution of services or similar grievance, and there are no outstanding orders of the Conciliation and Appeals Board that have not been complied with by Seller.

§4.05. If the Premises or any part thereof are subject to the New York City Emergency Rent and Rehabilitation Law, the rents shown are not in excess of the maximum collectible rents, and, except as otherwise set forth in the Rent Schedule, no tenants are entitled to abatements as senior citizens, there are no proceedings presently pending before the rent commission in which a tenant has alleged an overcharge of rent or diminution of services or similar grievance, and there are no outstanding orders of the rent commission that have not been complied with by Seller.

§4.06. If an insurance schedule is attached hereto, such schedule lists all insurance policies presently affording coverage with respect to the Premises, and the information contained therein is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof.

§4.07. If a payroll schedule is attached hereto, such schedule lists all employees presently employed at the Premises, and the information contained therein is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof, and, except as otherwise set forth in such schedule, none of such employees is covered by a union contract and there are no retroactive increases or other accrued and unpaid sums owed to any employee.

§4.08. If a schedule of service, maintenance, supply and management contracts ("Service Contracts") is attached hereto, such schedule lists all such contracts affecting the Premises, and the information set forth therein is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof.

§4.09. If a copy of a certificate of occupancy for the Premises has been exhibited to and initialed by Purchaser or its representative, such copy is a true copy of the original and such certificate has not been amended, but Seller makes no representation as to compliance with any such certificate.

§4.10. The assessed valuation and real estate taxes set forth in Schedule D, if any, are the assessed valuation of the Premises and the taxes paid or payable with respect thereto for the fiscal year indicated in such schedule. Except as otherwise set forth in Schedule D, there are no tax abatements or exemptions affecting the Premises.

§4.11. Except as otherwise set forth in a schedule attached hereto, if any, if the Premises are used for residential purposes, each apartment contains a range and a refrigerator, and all of the ranges and refrigerators and all of the items of personal property (or replacements thereof) listed in such schedule, if any, are and on the Closing Date will be owned by

Seller free of liens and encumbrances other than the lien(s) of the Existing Mortgage(s), if any.

§4.12. Seller has no actual knowledge that any incinerator, boiler or other burning equipment on the Premises is being operated in violation of applicable law. If copies of a

certificate or certificates of operation therefor have been exhibited to and initialed by Purchaser or its representative, such copies are true copies of the originals.

§4.13. Except as otherwise set forth in Schedule D, Seller has no actual knowledge of any assessment payable in annual installments, or any part thereof, which has become a lien on the Premises.

**Section 5. Acknowledgments of Purchaser**
Purchaser acknowledges that:

§5.01. Purchaser has inspected the Premises, is fully familiar with the physical condition and state of repair thereof, and, subject to the provisions of §7.01, §8.01, and §9.04, shall accept the Premises "as is" and in their present condition, subject to reasonable use, wear, tear and natural deterioration between now and the Closing Date, without any reduction in the Purchase Price for any change in such condition by reason thereof subsequent to the date of this contract.

§5.02. Before entering into this contract, Purchaser has made such examination of the Premises, the operation, income and expenses thereof and all other matters affecting or relating to this transaction as Purchaser deemed necessary. In entering into this contract, Purchaser has not been induced by and has not relied upon any representations, warranties or statements, whether express or implied, made by Seller or any agent, employee or other representative of Seller or by any broker or any other person representing or purporting to represent Seller, which are not expressly set forth in this contract, whether or not any such representations, warranties or statements were made in writing or orally.

**Section 6. Seller's Obligations as to Leases**

§6.01. Unless otherwise provided in a schedule attached to this contract, between the date of this contract and the Closing, Seller shall not, without Purchaser's prior written consent, which consent shall not be unreasonably withheld:
(a) amend, renew or extend any Lease in any respect, unless required by law;
(b) grant a written lease to any tenant occupying space pursuant to a Tenancy; or
(c) terminate any Lease or Tenancy except by reason of a default by the tenant thereunder.

§6.02. Unless otherwise provided in a schedule attached to this contract, between the date of this contract and the Closing, Seller shall not permit occupancy of, or enter into any new lease for, space in the Building which is presently vacant or which may hereafter become vacant without first giving Purchaser written notice of the identity of the proposed tenant, together with
(a) either a copy of the proposed lease or a summary of the terms thereof in reasonable detail and
(b) a statement of the amount of the brokerage commission, if any, payable in connection therewith and the terms of payment thereof. If Purchaser objects to such proposed lease, Purchaser shall so notify Seller within 4 business days after receipt of Seller's notice if such notice was personally delivered to Purchaser, or within 7 business days after the mailing of such notice by Seller to Purchaser, in which case Seller shall not enter into the proposed lease. Unless otherwise provided in a schedule attached to this contract, Purchaser shall pay to Seller at the Closing, in the manner specified in §2.02, the rent and additional rent that would have been payable under the proposed lease from the date on which the tenant's obligation to pay rent would have commenced if Purchaser had not so objected until the Closing Date, less the amount of the brokerage commission specified in Seller's notice and the reasonable cost of decoration or other work required to be performed by the landlord under the terms of the proposed lease to suit the premises to the tenant's occupancy ("Reletting Expenses"), prorated in each case over the term of the proposed lease and apportioned as of the Closing Date. If Purchaser does not so notify Seller of its objection, Seller shall have the right to enter into the proposed lease with the tenant identified in Seller's notice and Purchaser shall pay to Seller, in the manner specified in §2.02, the Reletting Expenses, prorated in each case over the term of the

lease and apportioned as of the later of the Closing Date or the rent commencement date. Such payment shall be made by Purchaser to Seller at the Closing. In no event shall the amount so payable to Seller exceed the sums actually paid by Seller on account thereof.

§6.03. If any space is vacant on the Closing Date, Purchaser shall accept the Premises subject to such vacancy, provided that the vacancy was not permitted or created by Seller in violation of any restrictions contained in this contract. Seller shall not grant any concessions or rent abatements for any period following the Closing without Purchaser's prior written consent. Seller shall not apply all or any part of the security deposit of any tenant unless such tenant has vacated the Premises.

§6.04. Seller does not warrant that any particular Lease of Tenancy will be in force or effect at the Closing or that the tenants will have performed their obligations thereunder. The termination of any Lease or Tenancy prior to the Closing by reason of the tenant's default shall not affect the obligations of Purchaser under this contract in any manner or entitle Purchaser to an abatement of or credit against the Purchaser Price or give rise to any other claim on the part of Purchaser.

## Section 7. Responsibility for Violations

§7.01. Except as provided in §7.02 and §7.03, all notes or notices of violations of law or governmental ordinances, orders or requirements which were noted or issued prior to the date of this contract by any governmental department, agency or bureau having jurisdiction as to conditions affecting the Premises and all liens which have attached to the Premises prior to the Closing pursuant to the Administrative Code of the City of New York, if applicable, shall be removed or complied with by Seller. If such removal or compliance has not been completed prior to the Closing, Seller shall pay to Purchaser at the Closing the reasonably estimated unpaid cost to effect or complete such removal or compliance, and Purchaser shall be required to accept title to the Premises subject thereto, except that Purchaser shall not be required to accept such title and may terminate this contract as provided in §13.02 if
(a) Purchaser's Institutional Lender reasonably refuses to provide financing by reason thereof or
(b) the Building is a multiple dwelling and either
(i) such violation is rent impairing and causes rent to be unrecoverable under Section 302-a of the Multiple Dwelling Law or
(ii) a proceeding has been validly commenced by tenants and is pending with respect to such violation for a judgment directing deposit and use of rents under Article 7-A of the Real Property Actions and Proceedings Law. All such notes or notices of violations noted or issued on or after the date of this contract shall be the sole responsibility of Purchaser.

§7.02. If the reasonably estimated aggregate cost to remove or comply with any violations or liens which Seller is required to remove or comply with pursuant to the provisions of §7.01 shall exceed the Maximum Amount specified in Schedule D (or if none is so specified, the Maximum Amount shall be one-half of one percent of the Purchase Price), Seller shall have the right to cancel this contract, in which event the sole liability of Seller shall be as set forth in §13.02, unless Purchaser elects to accept title to the Premises subject to all such violations or liens, in which event Purchaser shall be entitled to a credit of an amount equal to the Maximum Amount against the monies payable at the Closing.

§7.03. Regardless of whether a violation has been noted or issued prior to the date of this contract, Seller's failure to remove or fully comply with the following violations shall not be an objection to title:
(a) any violations of New York City Local Law 5 of 1973, as amended (relating to fire safety in office buildings), if applicable, or
(b) any violations which a tenant is required to remove or comply with pursuant to the terms of its lease by reason of such tenant's use or occupancy. Purchaser shall

accept the Premises subject to all such violations without any liability of Seller with respect thereto or any abatement of or credit against the Purchase Price, except that if Purchaser's Institutional Lender reasonably refuses to provide financing by reason of the violations described in (b) above, Purchaser shall not be required to accept the Premises subject thereto and Purchaser shall have the right to terminate this contract in the manner provided in §13.02.

§7.04. If required, Seller, upon written request by Purchaser, shall promptly furnish to Purchaser written authorizations to make any necessary searches for the purposes of determining whether notes or notices of violations have been noted or issued with respect to the Premises or liens have attached thereto.

## Section 8. Destruction, Damage or Condemnation

§8.01. The provisions of Section 5-1311 of the General Obligations Law shall apply to the sale and purchase provided for in this contract.

## Section 9. Covenants of Seller

Seller covenants that between the date of this contract and the Closing:

§9.01. The Existing Mortgage(s) shall not be amended or supplemented or prepaid in whole or in part. Seller shall pay or make, as and when due and payable, all payments of principal and interest and all deposits required to be paid or made under the Existing Mortgage(s).

§9.02. Seller shall not modify or amend any Service Contract or enter into any new service contract unless same is terminable without penalty by the then owner of the Premises upon not more than 30 days notice.

§9.03. If an insurance schedule is attached hereto, Seller shall maintain in full force and effect until the Closing the insurance policies described in such schedule or renewals thereof for no more than one year of those expiring before the Closing.

§9.04. No fixtures, equipment or personal property included in this sale shall be removed from the Premises unless the same are replaced with similar items of at least equal quality prior to the Closing.

§9.05. Seller shall not withdraw, settle or otherwise compromise any protest or reduction proceeding affecting real estate taxes assessed against the Premises for any fiscal period in which the Closing is to occur or any subsequent fiscal period without the prior written consent of Purchaser, which consent shall not be unreasonably withheld. Real estate tax refunds and credits received after the Closing Date which are attributable to the fiscal tax year during which the Closing Date occurs shall be apportioned between Seller and Purchaser, after deducting the expenses of collection thereof, which obligation shall survive the Closing.

§9.06. Seller shall allow Purchaser or Purchaser's representatives access to the Premises, the Leases and other documents required to be delivered under this contract upon reasonable prior notice at reasonable times.

## Section 10. Seller's Closing Obligations
At the Closing, Seller shall deliver the following to Purchaser:

§10.01. A statutory form of bargain and sale deed without covenant against grantor's acts, containing the covenant required by Section 13 of the Lien Law, and properly executed in proper form for recording so as to convey the title required by this contract.

§10.02. All Leases initialed by Purchaser and all others in Seller's possession.

§10.03. A schedule of all cash security deposits and a check or credit to Purchaser in the amount of such security deposits, including any interest thereon, held by Seller on the

Closing Date under the Leases or, if held by an Institutional Lender, an assignment to Purchaser and written instructions to the holder of such deposits to transfer the same to Purchaser, and appropriate instruments of transfer or assignment with respect to any lease securities which are other than cash.

§10.04. A schedule updating the Rent Schedule and setting forth all arrears in rents and all prepayments of rents.

§10.05. All Service Contracts initialed by Purchaser and all others in Seller's possession which are in effect on the Closing Date and which are assignable by Seller.

§10.06. An assignment to Purchaser, without recourse or warranty, of all of the interest of Seller in those Service Contracts, insurance policies, certificates, permits and other documents to be delivered to Purchaser at the Closing which are then in effect and are assignable by Seller.

§10.07. (a) Written consent(s) of the Mortgagee(s), if required under §2.03(b), and(b) certificate(s) executed by the Mortgagee(s) in proper form for recording and certifying (i) the amount of the unpaid principal balance thereof, (ii) the maturity date thereof, (iii) the interest rate, (iv) the last date to which interest has been paid thereon and (v) the amount of any escrow deposits held by the Mortgagee(s).
Seller shall pay the fees for recording such certificate(s). Any Mortgagee which is an Institutional Lender may furnish a letter complying with Section 274-a of the Real Property Law in lieu of such certificate.

§10.08. An assignment of all Seller's right, title and interest in escrow deposits for real estate taxes, insurance premiums and other amounts, if any, then held by the Mortgagee(s).

§10.09. All original insurance policies with respect to which premiums are to be apportioned or, if unobtainable, true copies or certificates thereof.

§10.10. To the extent they are then in Seller's possession and not posted at the Premises, certificates, licenses, permits, authorizations and approvals issued for or with respect to the Premises by governmental and quasigovernmental authorities having jurisdiction.

§10.11. Such affidavits as Purchaser's title company shall reasonably require in order to omit from its title insurance policy all exceptions for judgments, bankruptcies or other returns against persons or entities whose names are the same as or similar to Seller's name.

§10.12. Checks to the order of the appropriate officers in payment of all applicable real property transfer taxes and copies of any required tax returns therefor executed by Seller, which checks shall be certified or official bank checks if required by the taxing authority, unless Seller elects to have Purchaser pay any of such taxes and credit Purchaser with the amount thereof.

§10.13. To the extent they are then in Seller's possession, copies of current painting and payroll records. Seller shall make all other Building and tenant files and records available to Purchaser for copying, which obligation shall survive the Closing.

§10.14. An original letter, executed by Seller or by its agent, advising the tenants of the sale of the Premises to Purchaser and directing that rents and other payments thereafter be sent to Purchaser or as Purchaser may direct.

§10.15. Notice(s) to the Mortgagee(s), executed by Seller or by its agent, advising of the sale of the Premises to Purchaser and directing that future bills and other correspondence should thereafter be sent to Purchaser or as Purchaser may direct.

§10.16. If Seller is a corporation and if required by Section 909 of the Business Corporation Law, a resolution of Seller's board of directors authorizing the sale and delivery of the deed and a certificate executed by the secretary or assistant secretary of Seller certifying as to the adoption of such resolution and setting forth facts showing that the transfer complies with the requirements of such law. The deed referred to in §10.01 shall also contain a recital sufficient to establish compliance with such law.

§10.17. Possession of the Premises in the condition required by this contract, subject to the Leases and Tenancies, and keys therefor.

§10.18. Any other documents required by this contract to be delivered by Seller.

## Section 11. Purchaser's Closing Obligations
At the Closing, Purchaser shall:

§11.01. Deliver to Seller checks in payment of the portion of the Purchase Price payable at the Closing, as adjusted for apportionments under Section 12, plus the amount of escrow deposits, if any, assigned pursuant to §10.08.

§11.02. Deliver to Seller the Purchase Money Mortgage, if any, in proper form for recording, the note secured thereby, financing statements covering personal property, fixtures and equipment included in this sale and replacements thereof, all properly executed, and Purchaser shall pay the mortgage recording tax and recording fees for any Purchase Money Mortgage.

§11.03. Deliver to Seller an agreement indemnifying and agreeing to defend Seller against any claims made by tenants with respect to tenants' security deposits to the extent paid, credited or assigned to Purchaser under §10.03.

§11.04. Cause the deed to be recorded, duly complete all required real property transfer tax returns and cause all such returns and checks in payment of such taxes to be delivered to the appropriate officers promptly after the Closing.

§11.05. Deliver any other documents required by this contract to be delivered by Purchaser.

## Section 12. Apportionments

§12.01. The following apportionments shall be made between the parties at the Closing as of the close of business on the day prior to the Closing Date:
(a) prepaid rents and Additional Rents (as defined in §12.03);
(b) interest on the Existing Mortgage(s);
(c) real estate taxes, water charges, sewer rents and vault charges, if any, on the basis of the fiscal period for which assessed, except that if there is a water meter on the Premises, apportionment at the Closing shall be based on the last available reading, subject to adjustment after the Closing when the next reading is available;
(d) wages, vacation pay, pension and welfare benefits and other fringe benefits of all persons employed at the Premises whose employment was not terminated at or prior to the Closing;
(e) value of fuel stored on the Premises, at the price then charged by Seller's supplier, including any taxes;
(f) charges under transferable Service Contracts or permitted renewals or replacements thereof;
(g) permitted administrative charges, if any, on tenants' security deposits;
(h) dues to rent stabilization associations, if any;
(i) insurance premiums on transferable insurance policies listed on a schedule hereto or permitted renewals thereof;
(j) Reletting Expenses under §6.02, if any; and
(k) any other items listed in Schedule D.

If the Closing shall occur before a new tax rate is fixed, the apportionment of taxes at the Closing shall be upon the basis of the old tax rate for the preceding period applied to latest assessed valuation. Promptly after the new tax rate is fixed, the apportionment of taxes shall be recomputed. Any discrepancy resulting from such recomputation and any errors or omissions in computing apportionments at Closing shall be

promptly corrected, which obligations shall survive the Closing.

§12.02. If any tenant is in arrears in the payment of rent on the Closing Date, rents received from such tenant after the Closing shall be applied in the following order of priority:
(a) first to the month preceding the month in which the Closing occurred;
(b) then to the month in which the Closing occurred;
(c) then to any month or months following the month in which the Closing occurred; and
(d) then to the period prior to the month preceding the month in which the Closing occurred.

If rents or any portion thereof received by Seller or Purchaser after the Closing are payable to the other party by reason of this allocation, the appropriate sum, less a proportionate share of any reasonable attorneys' fees, costs and expenses of collection thereof, shall be promptly paid to the other party, which obligation shall survive the Closing.

§12.03. If any tenants are required to pay percentage rent, escalation charges for real estate taxes, operating expenses, cost-of-living adjustments or other charges of a similar nature ("Additional Rents") and any Additional Rents are collected by Purchaser after the Closing which are attributable in whole or in part to any period prior to the Closing, then Purchaser shall promptly pay to Seller Seller's proportionate share thereof, less a proportionate share of any reasonable attorneys' fees, costs and expenses of collection thereof, if and when the tenant paying the same has made all payments of rent and Additional Rent then due to Purchaser pursuant to the tenant's Lease, which obligation shall survive the Closing.

**Section 13. Objections to Title, Failure of Seller or Purchaser to Perform and Vendee's Lien**

§13.01. Purchaser shall promptly order an examination of title and shall cause a copy of the title report to be forwarded to Seller's attorney upon receipt. Seller shall be entitled to a reasonable adjournment or adjournments of the Closing for up to 60 days or until the expiration date of any written commitment of Purchaser's Institutional Lender delivered to Purchaser prior to the scheduled date of Closing, whichever occurs first, to remove any defects in or objections to title noted in such title report and any other defects or objections which may be disclosed on or prior to the Closing Date.

§13.02. If Seller shall be unable to convey title to the Premises at the Closing in accordance with the provisions of this contract or if Purchaser shall have any other grounds under this contract for refusing to consummate the purchase provided for herein, Purchaser, nevertheless, may elect to accept such title as Seller may be able to convey with a credit against the monies payable at the Closing equal to the reasonably estimated cost to cure the same (up to the Maximum Expense described below), but without any other credit or liability on the part of Seller. If Purchaser shall not so elect, Purchaser may terminate this contract and the sole liability of Seller shall be to refund the Down payment to Purchaser and to reimburse Purchaser for the net cost of title examination, but not to exceed the net amount charged by Purchaser's title company therefor without issuance of a policy, and the net cost of updating the existing survey of the Premises or the net cost of a new survey of the Premises if there was no existing survey or the existing survey was not capable of being updated and a new survey was required by Purchaser's Institutional Lender. Upon such refund and reimbursement, this contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability other than any arising under Section 14. Seller shall not be required to bring any action or proceeding or to incur any expense in excess of the Maximum Expense specified in Schedule D (or if none is so specified, the Maximum Expense shall be one-half of one percent of the Purchase Price) to cure any title defect or to enable Seller otherwise to comply with the provisions of this contract, but the foregoing shall not permit Seller to refuse to pay off at the Closing, to the extent of the monies payable at the Closing, mortgages on the Premises, other than Existing Mortgages, of which Seller has actual knowledge.

§13.03 Any unpaid taxes, assessments, water charges and sewer rents, together with the interest and penalties thereon to a date not less than two days following the Closing Date, and any other liens and encumbrances which Seller is obligated to pay and discharge or which are against corporations, estates or other persons in the chain of title, together with the cost of recording or filing any instruments necessary to discharge such liens and encumbrances of record, may be paid out of the proceeds of the monies payable at the Closing if Seller delivers to Purchaser on the Closing Date official bills for such taxes, assessments, water charges, sewer rents, interest and penalties and instruments in recordable form sufficient to discharge any other liens and encumbrances of record. Upon request made a reasonable time before the Closing, Purchaser shall provide at the Closing separate checks for the foregoing payable to the order of the holder of any such lien, charge or encumbrance and otherwise complying with §2.02. If Purchaser's title insurance company is willing to insure both Purchaser and Purchaser's Institutional Lender, if any, that such charges, liens and encumbrances will not be collected out of or enforced against the Premises, then, unless Purchaser's Institutional Lender reasonably refuses to accept such insurance in lieu of actual payment and discharge, Seller shall have the right in lieu of payment and discharge to deposit with the title insurance company such funds or assurances or to pay such special or additional premiums as the title insurance company may require in order to so insure. In such case the charges, liens and encumbrances with respect to which the title insurance company has agreed so to insure shall not be considered objections to title.

§13.04. If Purchaser shall default in the performance of its obligation under this contract to purchase the Premises, the sole remedy of Seller shall be to retain the Downpayment as liquidated damages for all loss, damage and expense suffered by Seller, including without limitation the loss of its bargain.

§13.05. Purchaser shall have a vendee's lien against the Premises for the amount of the Downpayment, but such lien shall not continue after default by Purchaser under this contract.

**Section 14. Broker**

§14.01. If a broker is specified in Schedule D, Seller and Purchaser mutually represent and warrant that such broker is the only broker with whom they have dealt in connection with this contract and that neither Seller nor Purchaser knows of any other broker who has claimed or may have the right to claim a commission in connection with this transaction, unless otherwise indicated in Schedule D. The commission of such broker shall be paid pursuant to separate agreement by the party specified in Schedule D. If no broker is specified in Schedule D, the parties acknowledge that this contract was brought about by direct negotiation between Seller and Purchaser and that neither Seller nor Purchaser knows of any broker entitled to a commission in connection with this transaction. Unless otherwise provided in Schedule D, Seller and Purchaser shall indemnify and defend each other against any costs, claims or expenses, including attorneys' fees, arising out of the breach on their respective parts of any representations, warranties or agreements contained in this paragraph. The representations and obligations under this paragraph shall survive the Closing or, if the Closing does not occur, the termination of this contract.

**Section 15. Notices**

§15.01. All notices under this contract shall be in writing and shall be delivered personally or shall be sent by prepaid registered or certified mail, addressed as set forth in Schedule D, or as Seller or Purchaser shall otherwise have given notice as herein provided.

§16.01. Except as otherwise provided in this contract, no representations, warranties, covenants or other obligations of Seller set forth in this contract shall survive the Closing, and no action base thereon shall be commenced after the Closing. The representations, warranties, covenants and other obligations of Seller set forth in §4.03, §6.01 and §6.02 shall survive until the Limitation Date specified in Scheduled D (or if none is so specified, the Limitation Date shall be the date which is six months after the Closing Date), and no action based thereon shall be commenced after the Limitation Date.

§16.02 The delivery of the deed by Seller, and the acceptance thereof by Purchaser, shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations of Seller which are expressly stated in this contract to survive the Closing.

**Section 17. Miscellaneous Provisions**

§17.01. If consent of the Existing Mortgagee(s) is required under §2.03(b), Purchaser shall not assign this contract or its rights hereunder without the prior written consent of Seller. No permitted assignment of Purchaser's rights under this contract shall be effective against Seller unless and until an executed counterpart of the instrument of assignment shall have been delivered to Seller and Seller shall have been furnished with the name and address of the assignee. The term "Purchaser" shall be deemed to include the assignee under any such effective assignment.

§17.02. This contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated herein and all prior agreements, understandings, representations and statements, oral or written, are merged into this contract. Neither this contract nor any provision hereof may be waived, modified, amended, discharged or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.

§17.03. This contract shall be governed by, and construed in accordance with, the law of the State of New York.

§17.04. The captions in this contract are inserted for convenience of reference only and in no way define, describe or limit the scope or intent of this contract or any of the provisions hereof.

§17.05. This contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

§17.06. This contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser.

§17.07. As used in this contract, the masculine shall include the feminine and neuter, the singular shall include the plural and the plural shall include the singular, as the context may require.

§17.08. If the provisions of any schedule or rider to this contract are inconsistent with the provisions of this contract, the provisions of such schedule or rider shall prevail. Set forth in Schedule D is a list of any and all schedules and riders which are attached hereto but which are not listed in the Table of Contents.

**IN WITNESS WHEREOF**, the Parties hereto have duly executed this Contract as of the date first above written.

SELLER(S):                              BUYER(S):

ARACELIS STAATZ, PRESIDENT              MARIA E. NOBLE
MT. OLIVET CHURCH INC.

Receipt by Escrowee:
The undersigned Escrowee hereby acknowledges receipt of, by check subject to collection, to be held in escrow pursuant to §2.05.

**URBANY INVESTMENT GROUP LLC**    11-16
250 GORGE RD.
CLIFFSIDE PARK, NJ 07010

TD BANK
AMERICA'S MOST CONVENIENT BANK

1034

55-136/312
833

5/16/2017

PAY TO THE
ORDER OF    Laura C. Browne, esq.       $   **1,000.00

One Thousand and 00/100***********************************************************************    DOLLARS

Laura C. Browne, esq.

MEMO
Down Payment: 2176 Grand Concourse Bronx, NY

*Maria C. Noble*
AUTHORIZED SIGNATURE

⑆001034⑆ ⑈031201360⑈ 4336172963⑊

---

**URBANY INVESTMENT GROUP LLC**      1034

Laura C. Browne, esq.      5/16/2017

1,000.00

URBANY INVESTME    Down Payment: 2176 Grand Concourse Bronx,      1,000.00

**URBANY INVESTMENT GROUP LLC**      1034

Laura C. Browne, esq.      5/16/2017

1,000.00

URBANY INVESTME    Down Payment: 2176 Grand Concourse Bronx,      1,000.00