DAVID J. BRODERICK, LLC
70-20 Austin Street
Suite 111
Forest Hills, New York 11375
Phone:718 830 0700
Fax: 718 732 2102
brodericklegal@gmail.com
Attorney for the Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIA THERESA NOBLE,
Plaintiff

-against-

MOUNT OLIVET CHURCH, INC., aka, MOUNT
OLIVERT CHURCH, INC., aka MOUNT OLIVER
CHURCH INC., aka MOUNT OLIVE CHURCH INC.,
an ARACELIS STAATZ, as Trustee of Mount Olivet
Church,

MOUNT OLIVET CHURCH INC. and ARACELIS          18-CV-07871-NRB
STAATZ, as Trustee of Mount Olivet Church,

Third-Party Plaintiff,                         THIRD PARTY COMPLAINT

-against-

LEDWIN OVIEDO, LEDWIN ENTERPISES, INC.,
JAMIE RAMIREZ, ESQ and LAURA C. BROWNE,
ESQ.,

Third Party Defendants.

Defendants-Third-Party Plaintiffs, MOUNT OLIVET CHURCH, INC., aka, MOUNT

OLIVERT CHURCH, INC., aka MOUNT OLIVER CHURCH INC., aka MOUNT OLIVE

CHURCH INC., and ARACELIS STAATZ, as Trustee of Mount Olivet Church,, by and through

their  attorney DAVID J. BRODERICK, LLC. as and for an ANSWER TO THE AMENDED

COMPLAINT states the following below paragraphs upon information and belief:

**NATURE OF THIRD PARTY ACTION**

1.      Third Party Plaintiff's brings the within Breach of Contract(s), Breach of Fiduciary

Duties(s), Violation of RPAPL 443(4)(a), Fraud and Conspiracy to commit fraud actions for both

damages and indemnification for the delay and loss of value of the property since June of 2014.

## THE PARTIES & PLAYERS

2.      MOUNT OLIVET CHURCH, INC., aka, MOUNT OLIVERT CHURCH, INC., aka

MOUNT OLIVER CHURCH INC., aka MOUNT OLIVE CHURCH INC., (collectively referred

to as "CHURCH") and ARACELIS STAATZ, as Trustee of Mount Olivet Church ("STAATZ")

are the Defendants and Third Party Plaintiffs in the above referenced action.  Mount Olivet

Church, Inc. is a religious organization duly organized under the laws of the State of New York.

Third-Party Plaintiff MOUNT OLIVET CHURCH, INC.  and the owner of 2176 Grand

Concourse, Bronx, New York.  STAATZ is the Trustee of the Church.

3.      MARIA TERESA NOBLE ("Noble") is the plaintiff and a New Jersey Resident and Real

Estate Agent operating in the State of New York and out of the offices of LEDWIN

ENTERPRISES, INC. and/or LEDWIN OVIEDO.  That as a real estate agent Noble was

obligated to disclose the self dealing nature of any transaction she would purchase while working

for, under and/or with LEDWIN ENTERPISES, INC. and/or LEDWIN OVIEDO.  NOBLE is

the alleged purchaser of the subject property and self dealing real estate agent of LEDWIN

OVIEDO.  NOBLE and OVIEDO not only have a business relationship but are lovers, deomestic

partners, significant others prior to July of 2014.

4.      Urbany Investment Group LLC ("Urbany") is an LLC owned by Noble.  Urbany would

retain Browne to represent her company on May 9, 2017, seven days prior to the 2017 contract

of sale.  Neither Noble nor Urbany nor Browne would disclose this dual representation as set

forth more fully below.

5.      LEDWIN ENTERPISES, INC. is a New York Corporation which Brokers real estate

transactions.  LEDWIN ENTERPRISES, INC. is the alleged Seller's Broker on the above

transaction by "Oral Agreement."  Unbeknownst to the Church and Staatz, Ledwin Enterprises

Inc. was also serving the buyer's broker.  As the Seller's broker Ledwin Enterprises Inc. owed

certain fiduciary duties to the defendants and was required to disclose not only his dual

representation[1] but the self dealing nature of the transaction to the Church and Staatz.  Ledwin Enterprises, Inc. not only violated his fiduciary duties to the Church and Staatz but conspired with Noble to deceive the defendants-third party plaintiffs and drive the price down for the benefit of his lover Noble.

6.    LEDWIN OVIEDO ("Oviedo") is the principal of LEDWIN ENTERPRISES, INC. Oviedo either acting on his own behalf or that of his company took upon the brokering of the subject property.  As the Seller's broker Oviedo owed certain fiduciary duties to the defendants and was required to disclose not only his dual representation but the self dealing nature of the transaction to the Church and Staatz.  Oviedo not only violated his fiduciary duties to the Church and Staatz but conspired with Noble to deceive the defendants-third party plaintiffs and drive the price down for the benefit of his lover Noble.

7.    JAMIE RAMIREZ, ESQ. ("RAMIREZ") operated as both the Sellers' attorney and buyers attorney.  RAMIREZ is believed to have represented both Noble and Oviedo in prior real estate transactions.  RAMIREZ did not disclose to the Church and Staatz his conflict of interest. In addition, RAMIREZ conspired with NOBLE and/or OVIEDO to deceive the Church and Staatz into believing there was a $15,000.00 escrow check on deposit in his escrow account as of July 9, 2014.  However, Ramirez has since admitted that he never deposited any such check. Rameriz has further admitted that he represented Noble in the above referenced transaction even though listed as sellers' attorney.  Moreover, Ramirez has admitted that neither the Church nor Staatz signed a retaining agreement with him nor did they pay him a retaining fee.  Noble and/or Oviedo hired Ramirez to represent the sellers which included the OAG paper work.  As the agent and lawyer of Noble, Ramirez was either negligent, grossly negligent, reckless and/or gross

---

[1] Oviedo's dual representation became apparent in plaintiff's first complaint when Noble pled "16. Noble and her real estate broker Ledwin Oviedo (("the Broker") have invested countless hours over the last four years. . ." (Exhibit "G")

reckless in failing to prepare and file the OAG paper work in July of 2014. It is further alleged that Ramirez received instruction from Noble and/or Oviedo not to do the paper work so as gain an economic advantage over the Church and Staatz. Ramirez is defined as the seller's attorney in the 2014 and 2015 contracts of sale and listed as a person to be noticed for the sellers in the 2017 contract of sale.

8.      Urbany Investment Group LLC ("Urbany") is a single member LLC owned and operated by Noble. On May 9, 2017 Urbany Investment LLC would issue a retaining check to Laura C. Browne, Esq. to perform work on the contract of sale.

9.      LAURA C. BROWNE, ESQ., like Ramirez operated as both the Sellers' attorney and buyers attorney. BROWNE is believed to have represented both Noble and Oviedo in prior real estate transactions. BROWNE did not disclose to the Church and Staatz her conflict of interest nor did she obtain the necessary waivers. In addition, it is believed that BROWNE conspired with NOBLE and/or OVIEDO to deceive the Church and Staatz into believing that she had received the $15,000.00 escrow check on deposit in RAMIREZ's escrow account as of July 9, 2014. Neither the Church nor Staatz signed a retaining agreement with BROWNE nor did they pay her a retaining fee. Noble and/or Oviedo hired Browne to represent the sellers which included the completion of the OAG paper work. As the agent and lawyer of Noble and/or the Church, BROWNE was either negligent, grossly negligent, reckless and/or grossly reckless in failing to prepare and file the OAG paper work in2017. It is further alleged that Browne received instruction from Noble and/or Oviedo not to do the paper work so as gain an economic advantage over the Church and Staatz. In addition, as the alleged lawyer of the Church – Browne was well aware it would take a board resolution to fire her. No such resolution exists. The 2017 contract of sale denotes Browne as the seller's attorney.

## JURISDICTION

10.     That on or about April 17, 2020 plaintiff filed an Amended Complaint.  Pursuant to Rule

14(a) of the Federal Rules of Civil Procedure.  This Court has jurisdiction over non-diverse

parties.  That defendant is filing this Third-Party complaint within the 14 days of plaintiff's filing

the Amended Complaint.


## EXHIBITS TO THE THIRD PARTY COMPLAINT


| | |
|---|---|
| Exhibit A - | November 2017 - Ramirez letter he represents Maria T. Noble |
| Exhibit B - | July 8, 2014 - $15,000.00 Non-negotiated Check to Ramirez |
| Exhibit C - | Eviction proceedings |
| Exhibit D - | Browne to Ramirez - 2014 email Sample Petition for OAG procedures |
| Exhibit E - | Tereso Construction giving estimate at Oviedo's request |
| Exhibit F - | 2015 Contract; |
| Exhibit G - | Plaintiff's 2018  Complaint - First; |
| Exhibit H - | Oviedo's Deposition; |
| Exhibit I - | Noble's Deposition; |
| Exhibit J - | June 26, 2014 Purchase memorandum; |
| Exhibit K - | July 9, 2014 Contract; |
| Exhibit L - | July 9, 2015 Contract; |
| Exhibit M - | June 2014 - Bronx county clerk receipt for Corporate Documents; |
| Exhibit N - | May 16, 2019 – Letter Ramirez to Broderick; |
| Exhibit O - | Ortiz letter to defendants; |
| Exhibit P - | May 9, 2017 – Noble retaining check of Browne; |
| Exhibit Q - | May 16, 2017 – alleged down payment check: |
| Exhibit R - | 2017 – Contract of Sale |


## PRELIMINARY STATEMENT

11.     That in or about May 2014 defendant-third party plaintiff's decided to make inquiry

about selling the property known as 2176 Grand Concourse, Bronx, New York.  Staatz went to

Oviedo, a Real Estate Broker, to inquire about selling the property.  Staatz went to Oviedo with

expectation that Oviedo would use his business acumen to find a purchaser willing to pay the

best price possible for the sale of the property.  The Church and Staatz came to an Oral

agreement that Oviedo would act as the defendants – third party plaintiff's broker in the sale of

the subject property.  Upon accepting the brokerage agreement Oviedo owed certain fiduciary duties to the Church and Staatz which included to conduct himself professionally, owed a duty of loyalty, and disclose any dual representation and/or any conflict of interest.  Oviedo violated all the tenets of operating as a broker in the above referenced transaction.  In fact, as alleged below, Oviedo actually acted against the interest of the Church to the benefit of Noble.

12.    On or about June 26, 2014 Oviedo and Staatz entered into an oral agreement whereby he would receive 5% of the sale's price for the subject premises (Exhibit "H" – Oviedo Transcript, pg. 5 – 6).  Upon entering into this oral broker's agreement, Oviedo, his agents, and employees all owed the defendants certain fiduciary duties to the Church and Staatz.  Plaintiff Noble was one Oviedo's agents working inside of his office [Id. pg 8].  Thus, Noble also owed certain fiduciary duties to the defendant – the least of which was the full disclosure of her relationship with Oviedo as well as the self dealing nature of the complained of transaction.

13.    On or about June 26, 2014 Oviedo and Noble convinced the Church and Staatz to sell the property to Noble for $600,000.00 (Exhibit "J" – Purchase Memorandum).  Oviedo never listed the property so as to give his lover and agent Noble the subject property at a discounted price. Oviedo and Noble never disclosed the self dealing nature as well as Oviedo's dual representation as required by RPAPL 443(4)(a).

14.    Noble and Oviedo induced the Church and Staatz into signing the contract by asserting that they could get all the work legal work done by Jamie Ramirez, Esq.  Noble and Oviedo never disclosed that Ramirez had represented Oviedo on 5 to 10 legal matters prior to July 9, 2014 (Exhibit "H") and had also worked with and/or represented the plaintiff prior.  In fact, neither Noble nor Ramirez informed the Church and Staatz that Ramirez actually represented Noble in this matter until November of 2017 [Exhibit "A" – Ramirez letter].

15.    As further inducement and consideration for the July 9, 2014 contract of sale ("First Contract" – Exhibit K), Noble would issue a check on July 8, 2014 in the amount of $15,000.00 which was the defined contract deposit (Exhibit "B") and reproduced below:



16.    Unbeknownst to the Church and Staatz was that check was not valid as Noble did not have the required funds in her bank account on that date and/or that Noble and/or Oviedo told Ramirez not to negotiate the check.

17.    Noble and/or Oviedo transmitted the $15,000.00 check to Ramirez who was obligated to deposit that check in his escrow account as the alleged attorney for the sellers. Ramirez did not negotiate the $15,000.00 check. Ramirez did not inform the Church and Staatz that he was not going to deposit the $15,000.00 check into his account. The facts surrounding the $15,000.00 contract deposit are confusing as Ramirez, while under subpoena, produced the $15,000.00; however, Noble alleged in her first complaint an entirely different set of facts.

18.    Plaintiff alleged in her first complaint [Exhibit "G"] that she issued two checks to Ramirez in the amounts of $1,000.00 and $14,000.00 for the July 9, 2014 contract deposit of $15,000.00 [Exhibit "G"]. These alleged checks were never negotiated by Ramirez contrary to plaintiff's assertions in her first complaint and Ramirez never produced same under the subpoena issued.

19.     In paragraph 15 of her first complaint Noble details how Ramirez violated his fiduciary

duties to the Church and Staatz by making a side agreement with Noble not to deposit the

contract monies.  In paragraph 15 of her first complaint (Exhibit "G") Noble stated:

> 15.    Mr. Ramirez informed the Plaintiff that he would hold in escrow, but not
>
> negotiate, the $14,000 deposit check until the Church obtained the AG's approval of the sale.

It is clear that Ramirez was acting against the interest of his clients, the Church and Staatz,

either by himself or in concert with Noble.  Ramirez representation of Noble remained

undisclosed until November 2, 2017 when he wrote,

> This shall serve to confirm that his office represents Maria T. Noble whom
> entered into contract with the Mt. Olivet Church for the above referenced
> premises. . . (Exhibit "A" – Ramirez Letter).

20.     Ramirez's actions on behalf of Noble prejudiced the Church and Staatz at put them at

significant disadvantage.   First, contract formation never took place as Noble never gave the

required consideration.  Second, Ramirez defrauded the Church and Staatz into believing

contractual formation had taken place.  Third, Ramirez would evict the tenants of the Church not

for the benefit of the Church but for Noble.

21.     On April 8, 2015, Oviedo, unknown to the Church and Staatz, would start taking

affirmative measures to drive down the price for Noble by hiring George Cobblac to conduct an

appraial. Oviedo ordered this evaluation NOT for the benefit of the Church and Staatz but for

that of his lover Noble as there was allegedly a signed contract of sale between the Noble and the

Church for $600,000.00.  But, Oviedo's intent the drive the price down for Noble did not stop

Cobblac for on April 10, 2015, Oviedo ordered the premises to be evaluated by Tereso

Construction (Exhibit "E").   Again, this was not done for the benefit of the Church but for

Noble.  By ordering these appraisals Oviedo violated his fiduciary duties owed to the Church and

Staatz.  Oviedo's duty was to see that the Church and Staatz were paid the $600,000.00.

22.     Noble and Oviedo acted in concert to cause the devaluation of the contract price for on

or about May 4, 2015, defendants' alleged broker Ledwin Oviedo had an appraisal done of the property wherein the appraised value came back at $500,000.00.   To conceal his dishonest practice and violation of his fiduciary duty, on May 11, 2015, Oviedo would write Ramirez stating that the appraisal report was for Ruby Staatz; however, Staatz did not order the report nor was the report necessary as they were the sellers and the purchaser Noble was required to conduct their own inspection at their own cost and the time period to so do had long since expired.  Interestingly, Ramirez never communicated this information to the Church and Staatz his alleged clients.

23.      On July 9, 2015, Noble would use the information garnered by Oviedo and force the Church and Staatz to accept a new contract of $500,000.00 (Exhibit "F") even though they had been in contract for 1 year and Ramirez evicted the paying tenants to the detriment of the Church and to the benefit of his client Noble; thereby, giving Noble superior bargaining power.  As continued inducement for the transaction, plaintiff asserted that there was a $15,000.00 down payment.  However, Noble made a false statement to the Church and Staatz as there was never a $15,000.00 down payment.  In fact, Ramirez did not disclose to the Church and Staatz that he never deposited the $15,000.00 check dated July 8, 2014 – which was now stale.  In addition, Ramirez did not inform the Church and Staatz that he holding $1,000.00 in his escrow and $14,000.00 outside of escrow until the OAG paper work was complete as alleged in plaintiff's first complaint.  Thus, Noble, Oviedo, and Ramirez conspired to defraud the defendants into believing that a contract had been formed in 2014 and now 2015 when none was formed. Clearly, Oviedo as the broker and lover of Noble was privy to all the facts.

24.      Needless to say, Ramirez did nothing to move the sale forward.

25.      In 2017 a third contract, the subject of the amended complaint, would be entered into by Noble and the Church.  However, Noble's, Oviedo's and Ramirez's games of dishonesty against the Church would not stop.   On or about May 9, 2017, prior to the execution of third contract of

sale, Noble through her company Urbany would retain the legal services of Laura C. Browne [Exhibit "P" – Check number 1032]:



26.    Even though a self declared sophisticated real estate investor in her amended complaint, when Noble was asked under oath about this retaining check she stated she had no idea why and/or on whose behalf the check was written (Exhibit "I"):

```
21              Q.    Did you pay the retainer for Ms.
22        Staatz?
23              A.    I don't have that answer to give
24        you right now because I don't remember it.
25        That was back in 2017.
```

27.    Neither Noble, Oviedo, Ramirez, nor Browne ever disclosed the May 9, 2017 retention of Browne to the Church and Staatz.

28.    On May 16, 2017, plaintiff and defendants allegedly entered into a third contract of sale for the same exact price of $500,000.00.  No reason has been given by the plaintiff for this alleged 3rd contract.  However, this 2017 contract now defined the defined the contract deposit amount as $1,000.00 which remains mysterious as there was allegedly already a $15,000.00 contract deposit given in 2014 which induced defendants to stay with this purchaser.

29.    On May 16, 2017 – plaintiff Noble through her company Urbany would write check number 1034 to Ms. Browne, the attorney she retained, claiming the down payment of $1,000.00 had been paid on contract.  The May 16, 2017 contract defined the sellers attorney as being

Laura C. Browne, Esq. with notice to Jamie Ramirez, Esq on the seller's side.  There was no notice provision on buyer's side.    In fact, if the defendants signed this third contract it was because they believed there was actually $16,000.00 on deposit, i.e. $15,000.00 given to Ramirez and an additional $1,000.00 to Browne.  Browne, whom served as plaintiff's lawyer, also failed to disclose her dual representation.

30.     Noble now seeks to enforce this third contract; however, Noble hired all of the agents, Noble paid all of the agents.  Noble choose all of the agents and now seeks to punish the Church and Staatz for her choices and dishonesty.  As will become apparent in the facts below, Noble, Oviedo, Ramirez and/or Browne all conspired against the Church and Staatz.


# F A C T S

31.     That in or about May 2014 Oviedo and Staatz had a meeting wherein Oviedo would act as the Seller's broker for the sale of the subject premises.  Oviedo agreed to take upon the listing and find a purchaser for the Church and Staatz.

32.     That in 2014 Staatz and Oviedo allegedly entered into a verbal broker's agreement whereby he would be the seller's broker [Oveido, page 5].

33.     That Oviedo's commission was to be paid by the seller.

34.     That Oviedo's commission would be 5% of the sales price [Oviedo, Pg. 6].

35.     That upon reaching this alleged oral broker's agreement with the Church and Staatz, Oviedo owed the Church and Staatz certain fiduciary duties including loyalty.

36.     That upon reaching this alleged oral broker's agreement with the with the Church and Staatz, Oviedo's  employees owed a fiduciary duty to the Church and Staatz.

37.     That upon reaching this alleged oral broker's agreement with the Church and Staatz, Oviedo's agents owed a fiduciary duty to the Church and Staatz.

38.    That upon reaching this alleged oral broker's agreement with the Church and Staatz Oviedo's real estate agents operating out of his offices owed the Church and Staatz a fiduciary duty.

39.    That Noble is "an agent for the brokerage" [Oviedo, Pg. 8].

40.    That in 2014 Noble was operating as a real estate broker under Oviedo.

41.    That in 2014 Noble was a 1099 contractor for Oviedo.

42.    That in 2014 Noble and Oviedo were significant others, lovers, and/or domestic partners.

43.    That Oviedo as the seller's broker was obligated to get the Church and Staatz the highest purchase price for the property that the market would bare.

44.    That Oviedo's office and those working therein were obligated to get the Church and Staatz the highest price the market would bare.

45.    That Oviedo never listed the Church's property for sale.

46.    That Oviedo never listed the Church's property for sale because he wanted his lover to acquire the property.

47.    That Oviedo never listed the Church's property for sale because he wanted his lover to acquire the property as a straw purchaser for himself.

48.    That Noble was a straw purchaser.

49.    Oviedo for his part found the Church a purchaser and presented Staatz with a purchase memorandum which reflected the purchaser's offer.

50.    On or about June 26, 2014, Oviedo would present the Church and Staatz with a purchase memorandum (Exhibit "J").

51.    The purchase memorandum defined the purchase price as $600,000.00.

52.    The purchase memorandum defined the down payment as $15,000.00.

53.    The purchase memorandum defined the seller as the Church.

54.    The purchase memorandum defined the purchaser as Noble.

55.     The purchase memorandum defined the sellers' attorney as Jamie Ramirez, Esq.

56.     That Oviedo worked with Jamie Ramirez prior July 9, 2014.

57.     That Noble worked with Jamie Ramirez prior to July 9, 2014.

58.     That Jamie Ramirez represented Oviedo prior to July 9, 2014.

59.     That Jamie Ramirez represented Noble prior to July 9, 2014.

60.     That Jamie Ramirez represented Oviedo on 5 to 10 legal matters prior to July 9, 2014.

61.     That Jamie Ramirez represented Noble regarding in this matter.

62.     That Oviedo worked with Laura C. Browne prior July 9, 2014.

63.     That plaintiff worked with Laura C. Browne prior to July 9, 2014.

64.     That Laura C. Browne  represented Oviedo prior to July 9, 2014.

65.     That Laura C. Browne represented plaintiff prior to July 9, 2014.

66.     That Laura C. Browne represented Noble regarding this matter.

67.     That prior to July 9, 2014 Oviedo and Noble had at least one child together.

68.     That prior to July 9, 2014 Ovideo was a licensed Real Estate Broker in the State of New York.

69.     That prior to July 9, 2014 Noble was a licensed Real Estate agent in the State of New York.

70.     That as a Real Estate Broker licensed in the State of New York Oviedo had to comply with RPAPL 443 in those transactions wherein he was conflicted,  had a dual representation and/or self dealing.

71.     That as a Real Estate Agent Noble had to comply with RPAPL 443 in those transactions wherein he was conflicted,  had a dual representation and/or self dealing.

72.     RPAPL 443(4)(a) states:

    4.    a.    For buyer-seller transactions, the following shall be the disclosure form:
                    NEW YORK STATE DISCLOSURE FORM
                        FOR BUYER AND SELLER
                        THIS IS NOT A CONTRACT

New York state law requires real estate licensees who are acting as agents of buyers or sellers of property to advise the potential buyers or sellers with whom they work of the nature of their agency relationship and the rights and obligations it creates.   This disclosure will help you to make informed choices about your relationship with the real estate broker and its sales agents.

Throughout the transaction you may receive more than one disclosure form.   The law may require each agent assisting in the transaction to present you with this disclosure form.   A real estate agent is a person qualified to advise about real estate.

If you need legal, tax or other advice, consult with a professional in that field.

DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIPS

SELLER'S AGENT

A seller's agent is an agent who is engaged by a seller to represent the seller's interests. The seller's agent does this by securing a buyer for the seller's home at a price and on terms acceptable to the seller.   A seller's agent has, without limitation, the following fiduciary duties to the seller:  reasonable care, undivided loyalty, confidentiality, full disclosure, obedience and duty to account.   A seller's agent does not represent the interests of the buyer.   The obligations of a seller's agent are also subject to any specific provisions set forth in an agreement between the agent and the seller.   In dealings with the buyer, a seller's agent should (a) exercise reasonable skill and care in performance of the agent's duties;  (b) deal honestly, fairly and in good faith;  and (c) disclose all facts known to the agent materially affecting the value or desirability of property, except as otherwise provided by law.

BUYER'S AGENT

A buyer's agent is an agent who is engaged by a buyer to represent the buyer's interests. The buyer's agent does this by negotiating the purchase of a home at a price and on terms acceptable to the buyer.   A buyer's agent has, without limitation, the following fiduciary duties to the buyer:  reasonable care, undivided loyalty, confidentiality, full disclosure, obedience and duty to account.   A buyer's agent does not represent the interests of the seller.   The obligations of a buyer's agent are also subject to any specific provisions set forth in an agreement between the agent and the buyer.   In dealings with the seller, a buyer's agent should (a) exercise reasonable skill and care in performance of the agent's duties;  (b) deal honestly, fairly and in good faith;  and (c) disclose all facts known to the agent materially affecting the buyer's ability and/or willingness to perform a contract to acquire seller's property that are not inconsistent with the agent's fiduciary duties to the buyer.

BROKER'S AGENTS

A broker's agent is an agent that cooperates or is engaged by a listing agent or a buyer's agent (but does not work for the same firm as the listing agent or buyer's agent) to assist the listing agent or buyer's agent in locating a property to sell or buy, respectively, for the listing agent's seller or the buyer agent's buyer.   The broker's agent does not have a direct

relationship with the buyer or seller and the buyer or seller can not provide instructions or direction directly to the broker's agent.   The buyer and the seller therefore do not have vicarious liability for the acts of the broker's agent.   The listing agent or buyer's agent do provide direction and instruction to the broker's agent and therefore the listing agent or buyer's agent will have liability for the acts of the broker's agent.

DUAL AGENT

A real estate broker may represent both the buyer and the seller if both the buyer and seller give their informed consent in writing.   In such a dual agency situation, the agent will not be able to provide the full range of fiduciary duties to the buyer and seller.   The obligations of an agent are also subject to any specific provisions set forth in an agreement between the agent, and the buyer and seller.   An agent acting as a dual agent must explain carefully to both the buyer and seller that the agent is acting for the other party as well.   The agent should also explain the possible effects of dual representation, including that by consenting to the dual agency relationship the buyer and seller are giving up their right to undivided loyalty.   A buyer or seller should carefully consider the possible consequences of a dual agency relationship before agreeing to such representation.   A seller or buyer may provide advance informed consent to dual agency by indicating the same on this form.

DUAL AGENT

WITH

DESIGNATED SALES AGENTS

If the buyer and the seller provide their informed consent in writing, the principals and the real estate broker who represents both parties as a dual agent may designate a sales agent to represent the buyer and another sales agent to represent the seller to negotiate the purchase and sale of real estate.   A sales agent works under the supervision of the real estate broker.   With the informed consent of the buyer and the seller in writing, the designated sales agent for the buyer will function as the buyer's agent representing the interests of and advocating on behalf of the buyer and the designated sales agent for the seller will function as the seller's agent representing the interests of and advocating on behalf of the seller in the negotiations between the buyer and seller.   A designated sales agent cannot provide the full range of fiduciary duties to the buyer or seller.   The designated sales agent must explain that like the dual agent under whose supervision they function, they cannot provide undivided loyalty.   A buyer or seller should carefully consider the possible consequences of a dual agency relationship with designated sales agents before agreeing to such representation.   A seller or buyer may provide advance informed consent to dual agency with designated sales agents by indicating the same on this form.

This form was provided to me by ……………… (print name of licensee) of ……………… (print name of company, firm or brokerage), a licensed real estate broker acting in the interest of the:

( ) Seller as a

( ) Buyer as a

(check relationship below)

(check relationship below)

( ) Seller's agent

( ) Buyer's agent

( ) Broker's agent

( ) Broker's agent

( ) Dual agent

( ) Dual agent with designated sales agents

For advance informed consent to either dual agency or dual agency with designated sales agents complete section below:

( ) Advance informed consent dual agency.

( ) Advance informed consent to dual agency with designated sales agents.

If dual agent with designated sales agents is indicated above:

……………………is appointed to represent the buyer;  and

……………………is appointed to represent the seller in this transaction.

(I)  (We) acknowledge receipt of a copy of this disclosure form:

Signature of { } Buyer(s) and/or { } Seller(s):

_____

_____

_____

_____

Date:_____

Date:_____

73.    That Oviedo never made the requisite RPAPL 443(4)(a) disclosure to the Church and Staatz.

74.    That Noble never made the requisite RPAPL 443(4)(a) disclosure to the disclosure to the Church and Staatz.

75.    That Oviedo violated his fiduciary duty to Staatz when he failed to have the required RPAPL 443(4)(a) signed.

76.    That Noble violated her fiduciary duty to Staatz when he failed to have the required RPAPL 443(4)(a) signed.

77.    That Noble recommended the Church and Staatz to Jamie Ramirez to serve as their lawyer in the complained about transaction.

78.    That Oviedo recommended the Church and Staatz to Jamie Ramirez to serve as defendants' lawyer in the complained about transaction.

79.    That prior to the July 9, 2014 signing of the alleged contract of sale, on or about June 27, 2014, Oviedo went with Staatz to the Bronx County Clerk's office to get the required corporate formation documents for the Church to sell the property.

80.    That the purchase memorandum defined the buyer's attorney as Ivonne Santos.

81.    On or about July 1, 2014, Oviedo emailed the corporate documents he obtained from the Bronx County Clerk to Ramirez.

82.    That when Oviedo transferred the documents to Ramirez he had the documents necessary to apply for and get OAG approval.

83.    On May 16, 2019 plaintiff's attorney Ramirez would write to defendant's counsel Broderick indicating that Ms. Staatz did not give him the requested documents even though Oviedo, Seller's agent, had sent the documetns prior to the July 9, 2014 signing.

84.    Ramirez never wrote a letter to the Church and Staatz informing them that he needed any additional documents to complete the OAG process.

85.     From July 9, 2014 throughout 2015 Oviedo never wrote a letter to the Church and Staatz informing them that he needed any additional documents to complete the OAG process.

86.     From July 9, 2014 throughout 2015 Noble never wrote a letter to the Church and Staatz informing them that he needed any additional documents to complete the OAG process.

87.     From July 9, 2014 throughout 2015 Noble's attorney never wrote a letter to the Church and Staatz informing them that he needed any additional documents to complete the OAG process.

88.     That the Church and Staatz never retained Jamie Ramirez to represent them in the above referenced matter.

89.     That there was no retainer agreement between the Church and Ramirez.

90.     That there was no retainer agreement between Staatz and Ramirez.

91.     That there was NO retaining fee paid by Staatz to Ramirez.

92.     That there was NO retaining fee paid by the Church to Ramirez.

93.     That Noble paid a retaining fee to Ramirez.

94.     That there is no letter of engagement between Ramirez and the Church

95.     That there is no letter of engagement between Ramirez and Staatz.

96.     That lawyers in the State of New York are at a minimum required to issue a letter of engagement to the Client prior to taking any actions on their alleged behalf.

97.     That Oviedo never disclosed his conflict of interest to the Church.

98.     That Oviedo never disclosed his conflict of interest to the Staatz.

99.     That Noble never disclosed her conflict of interest to the Church.

100.    That Noble never disclosed her conflict of interest to Staatz.

101.    That Noble never disclosed to the Church that Ramirez was her attorney.

102.    That Noble never disclosed to the Staatz that Ramirez was her attorney.

103.     That Ramirez never disclosed to the Church that Noble was a client of his throughout 2014.

104.     That Ramirez never disclosed to the Church that Noble was a client of his throughout 2015.

105.     That Ramirez never disclosed to the Church that Noble was a client of his throughout 2016.

106.     That Ramirez never disclosed to the Church that Noble was a client of his until November of 2017.

107.     That Ramirez never disclosed to the Church that Noble was his client regarding this matter throughout 2014.

108.     That Ramirez never disclosed to the Church that Noble was his client regarding this matter throughout 2015.

109.     That Ramirez never disclosed to the Church that Noble was his client regarding this matter throughout 2016.

110.     That Ramirez never disclosed to the Church that Noble was his client regarding this matter throughout until November of 2017.

111.     That Ramirez never disclosed to Staatz that Noble was a client of his throughout 2014.

112.     That Ramirez never disclosed to Staatz that Noble was a client of his throughout 2015.

113.     That Ramirez never disclosed to Staatz that Noble was a client of his throughout 2016.

114.     That Ramirez never disclosed to Staatz that Noble was a client of his until November of 2017.

115.     That Ramirez never disclosed to Staatz that Noble was his client regarding this matter throughout 2014.

116.     That Ramirez never disclosed to Staatz that Noble was his client regarding this matter throughout 2015.

117.    That Ramirez never disclosed to Staatz that Noble was his client regarding this matter throughout 2016.

118.    That Ramirez never disclosed to Staatz that Noble was his client regarding this matter throughout until November of 2017.

119.    That the laws, rules and code of ethics required Ramirez to inform the Church and Staatz of his potential conflict of interest.

120.    That Oviedo never disclosed to the Church that Ramirez was his attorney.

121.    That Oviedo never disclosed to Staatz that Ramirez was his attorney.

122.    That on or about July 9, 2014 plaintiff alleges that she and the defendants entered into a contract of sale for the property known as 2176 Grand Concourse, Bronx, New York.

123.    That the July 9, 2014 contract defined the purchase price as $600,000.00.

124.    That the July 9, 2014 contract defined the down payment as $15,000.00.

125.    That the July 9, 2014 contract defined the closing balance due as $585,000.00.

126.    That the July 9, 2014 contract required the down payment to be deposited in the seller's attorney escrow account.

127.    That there was a rider to the July 9, 2014.

128.    That the July 9, 2014 contract defined the attorney for seller as being Jaime Ramirez.

129.    That the July 9, 2014 contract did not defined the attorney for the purchaser.

130.    That the July 9, 2014 contract required all notices under the agreement be sent to the defendants' attorney Jamie Ramirez.

131.    That Noble never informed Ms. Staatz that she was in default of the July 9, 2014 contract.

132.    That Noble never informed Mr. Ramirez that Ms. Staatz of was in default of the July 9, 2014 contract.

133.    That Noble's attorney never informed Mr. Ramirez that Ms. Staatz was in default of the July 9, 2014 contract.

134.    That Noble never informed the Church that they were in default of the July 9, 2014 contract.

135.    That Noble never informed Mr. Ramirez that the Church was in default of the July 9, 2014 contract.

136.    That Noble's attorney never informed Mr. Ramirez that the Church was in default of the July 9, 2014 contract.

137.    That Oviedo never wrote any letter to Staatz informing her that the Church was in default of the July 9, 2014 contract.

138.    That Oviedo never wrote any letter to the Church informing it that it was in default of the July 9, 2014 contract.

139.    That there is no letter from plaintiff's attorney to Oviedo informing him that the Church was in violation of the July 9, 2014 contract.

140.    No one plaintiff's behalf ever sent the required default notice under the July 9, 2014 contract to the defendants.

141.    The first notice of default under the July 9, 2014 contract was this action.

142.    On May 16, 2019 – Ramirez wrote:

Dear Mr. Broderick:

Please find materials which were requested by your subpoena. Please note that the down payment was never deposited as I recall I had requested material from Ms. Staatz. Additionally, I did not enter into any written retainer agreements with Ms. Staaz.

Also please note that at some point Ms. Staaz substituted my office with the office of Mirna Socorro, Esq.

If you require anything additional please advise me.

Very truly yours,



Jaime Ramirez, Esq.

143.    That on or about July 8, 2014 plaintiff issued  a check drawn on TD Bank in the amount of $15,000.00 which was to serve as the down payment for the purchase of the subject property.

144.    That the check below is the contract deposit allegedly given by Noble for the purchase of the property.



145.    That by issuing Check 0098 Noble was representing that she had at least $15,000.00 in her bank account on the date it was issued.

146.    That Noble did not have $15,000.00 in the TD Bank account upon which this check was drafted on July 8, 2014.

147.    That Noble did not have $15,000.00 in the TD Bank account upon which this check was drafted on July 9, 2014.

148.    That Noble told Ramirez she did not have sufficient funds in her account.

149.    That Noble told and/or instructed Ramirez not to deposit the $15,000.00 check into his escrow account.

150.     That Noble issued the $15,000.00, referenced above, to induce the Church to sell the property to Ms. Noble.

151.    That Noble issued the $15,000.00 check, referenced above, to induce the Staatz to sell the property to Ms. Noble.

152.    That Noble issued the $15,000 check, referenced above, as consideration for the July 9, 2014 contract.

153.    That Noble issued the $15,000.00 check referenced above so as to convince the defendants that plaintiff had the resources to purchase the property.

154.     To date, plaintiff has never produced a single document demonstrating that she had the $15,000.00 in her bank account at or near the time the check was written.

155.    Ramirez never negotiated the $15,000.00 check.

156.    Ramirez never negotiated the $15,000.00 check because either Oviedo and/or Noble told him not to negotiate the check.

157.    That Ramirez never informed the Church that he was not going to negotiate the check.

158.    That Ramirez never informed Staatz that he was not going to negotiate the check.

159.    That Ramirez violated his fiduciary duty to the Church when he failed to negotiate the check.

160.    That Ramirez violated his fiduciary duty to Staatz when he failed to negotiate the check.

161.    That Ramirez violated his fiduciary duty to the Church when he failed to inform the Church that he was not negotiating the $15,000.00 contract deposit.

162.    That Ramirez violated his fiduciary duty to Staatz when he failed to inform the Church that he was not negotiating the $15,000.00 contract deposit.

163.    In her first complaint, Noble, alleged that she provided Mr. Ramirez with the required $15,000.00 contract deposit.

164.    In her first complaint plaintiff Noble alleged that that she issued two checks to Ramirez which was to serve as the contract deposit for the July 9, 2014 contract.

165.    Plaintiff Noble alleged in her first complaint that she issued two checks to Ramirez in the amounts of $1,000.00 and $14,000.00 to satisfy the July 9, 2014 contract deposit of $15,000.00.

166.    Plaintiff Noble alleged in her first complaint that Ramirez negotiated the $1,000.00 check.

167.    Ramirez never negotiated the $1,000.00 check.

168.    Ramirez never negotiated the $1,000.00 check because either Oviedo and/or Noble told him not to negotiate the check.

169.    That Ramirez never informed the Church that Noble was modifying contract with the issuance of two checks in the amounts of $1,000.00 and $14,000.00.

170.    That Ramirez never informed Staatz that Noble was modifying the contract with the issuance to two checks in the amounts of $1,000.00 and $14,000.00.

171.    That Ramirez never informed the Church he was not going to negotiate the $1,000.00 check.

172.    That Ramirez never informed the Church he was not going to negotiate the $14,000.00 check.

173.    That Ramirez never informed Staatz that he was not going to negotiate the $1,000.00 check.

174.    Ramirez never informed Staatz that he was not going to negotiate the $14,000.00.

175.    Ramirez violated his fiduciary duty to the Church when he failed to inform the Church that Noble was modifying the contract by issuing two checks in the amounts of $1,000.00 and $14,000.00.

176.    Ramirez violated his fiduciary duty to Staatz when he failed to inform her that Noble was modifying the contract by issuing two checks in the amounts of $1,000.00 and $14,000.00.

177.    Ramirez violated his fiduciary duty to the Church when he failed to negotiate the $1,000.00.

178.    Ramirez violated his fiduciary duty to Staatz when he failed to negotiate the $1,000.00.

179.    Ramirez violated his fiduciary duty to the Church when he failed to negotiate the $14,000.00.

180.    Ramirez violated his fiduciary duty to Staatz when he failed to negotiate the $14,000.00.

181.    Noble told Oviedo that she was changing the contract deposit to two checks.

182.    Noble told Oviedo that she was issuing two checks to replace the $15,000.00 check referenced above.

183.    Noble told Oviedo that she was issuing a $1,000.00 and a $14,000.00 check to Ramirez to serve as the July 9, 2014 contract deposit.

184.    Noble told Oviedo that Ramirez was only to negotiate the $1,000.00 check.

185.    Noble told Oviedo that Ramirez was not going to negotiate the $14,000.00 check.

186.    That Oviedo never informed the Church that Noble was modifying the Contract deposit.

187.    That Oviedo never informed Staatz that Noble was modifying the Contract deposit.

188.    That Oviedo violated his fiduciary duty to the Church when he failed to disclose and/or notify it that Noble had modified the contract deposit.

189.    That Oviedo violated his fiduciary duty to Staatz when he failed to disclose and/or notify her that Noble had modified the contract deposit.

190.    That Oviedo violated his fiduciary duty when he failed to disclose and/or notify the church that Noble's check of $14,000.00 was not going to be deposited.

191.    That Oviedo violated his fiduciary duty when he failed to disclose and/or notify Staatz that Noble's check of $1,000.00 was not going to be deposited.

192.    To this date, Ramirez  has never provided a copy of the $1,000.00 check given by Noble to the Church and/or its representative.

193.    To this date, Ramirez  has never provided a copy of the $14,000.00 check given by Noble to the Church and/or its representative.

194.    That Ramirez violated his fiduciary duty to the Church by failing to turn over copies of the $1,000.00 check.

195.    That Ramirez violated his fiduciary duty to Staatz by failing to turn over copies of the $14,000.00 Check.

196.    That Ramirez violated his fiduciary duty to Staatz by failing to turn over copies of the $1,000.00 check.

197.    That Ramirez violated his fiduciary duty to the Church by failing to account for the $1,000.00 check that Noble claims he negotiated.

198.    That Ramirez violated his fiduciary duty to Staatz by failing to account for the $1,000.00 check that Noble claims he negotiated.

199.    That Oviedo was Noble's broker.

200.    That Oviedo never informed the Church that he was Noble's broker on this transaction.

201.    That Oviedo never informed Staatz that he was Noble's broker on this transaction.

202.    That Noble asserted in her first complaint that Oviedo was the real estate broker on her side of the transaction.

203.    In paragraph 16 of her first complaint, Noble asserted:

16.    Noble and her real estate broker Ledwin Oviedo (the "Broker") have invested countless hours over the last four years assisting the Defendants in its attempts to prosecute the sale.

204.    That Oviedo was both parties broker.

205.    That Oviedo was both parties broker and failed to disclose his dual representation to the Church.

206.    That Oviedo was both parties broker and failed to disclose his dual representation to Staatz.

207.    That Oviedo's failure to disclose his dual representation to the Church was a violation of RPAPL 443(4)(a).

208.    That Oviedo's failure to disclose his dual representation to Staatz was a violation of RPAPL 443(4)(a).

209.    That Oviedo's failure to disclose his dual representation to the Church was a violation of the fiduciary duty he owed to the Church.

210.    That Oviedo's failure to disclose his dual representation to Staatz was a violation of the fiduciary duty he owed to Staatz.

211.    That Noble was aware of Oviedo's dual representation.

212.    That Noble and Oviedo conspired to hide his dual representation.

213.    That Ramirez was aware of Oviedo's dual representation.

214.    That Ramirez, Oviedo and/or Noble conspired to conceal Oviedo's dual representation from the Church.

215.    That Ramirez, Oviedo and/or Noble conspired to conceal Oviedo's dual representation from Staatz.

216.    That plaintiff and Oviedo conspired to hide his dual representation from the Church so that Noble would acquire the property at a 5% discount, ie. the $30,000.00 which would her lover Oviedo would receive.

217.    That Oviedo and Noble live together.

218.    Plaintiff's attorney Ramirez did not disclose his own dual representation to the Church.

219.    Plaintiff's attorney Ramirez did not disclose his own dual representation to Staatz.

220.    On November 2, 2017, Ramirez finally revealed and disclosed his dual representation

writing:

> This shall serve to confirm that this office represents Maria T. Noble whom entered into contract with the Mt. Olivet Church for the purchase of the above referenced premises. It is my understanding that your office has taken over the file. The contract was only subject to appropriate court approval. Please note that the purchaser stands ready, willing and able to close pursuant to the terms of the contract of sale.
>
> Request is hereby made for your office to provide evidence that an application has been filed and the status of said application. Looking forward to closing this transaction promptly.
>
> Thank you for your attention to this matter, I remain
>
> Very truly yours,
>
> Jaime Ramirez, Esq.
>
> Cc: Maria T. Noble

221.    That Noble, Oviedo and Ramirez conspired to keep Ramirez's dual representation hidden

from the Church and Staatz.

222.    That Ramirez's concealment of his dual representation from the Church and Staatz was

an act of deceit .

223.    That Ramirez's concealment of his dual representation from the Church and Staatz was

an act of fraud.

224.    That Noble's, Oviedo's and Ramirez's failure to disclose Ramirez's dual representation

from the Church and Staatz the Church was an act of deceit.

225.    That Noble's, Oviedo's and Ramirez's failure to disclose Ramirez's dual representation

from the Church and Staatz the Church was an act of fraud.

226.    That Noble's, Oviedo's and Ramirez's failure to disclose Ramirez's dual representation

from the Church and Staatz the Church was an act of deceit.

227.    That Oviedo's and Ramirez's failure to disclose Ramirez's dual representation from the Church and Staatz was a violation of their fiduciary duties to the Church and Staatz.

228.    That Noble's, Oviedo's and/or Ramirez's scheme to hide the conflicts of interest in this matter clearly violated the principles of fair dealing with the regard to the contracts of sale.

229.    The July 9, 2014 contract required defendants to deliver the premises vacant.

230.    In good faith and in compliance with the vacancy provision,  the Church's purported lawyer Jamie Ramirez instituted commercial eviction proceedings against the paying tenants under L&T Index Number 901344/2014 on August 1, 2014 [Exhibit "C"].

231.    That after Ramirez had the tenants evicted Oviedo and Ramirez conspired to drive down the price of the property for Noble.

232.    That after the tenants were evicted Oviedo and/or Ramirez ordered several property appraisals even though there was no legitimate purpose to do so on behalf of the seller.

233.    That after the signing of the July 9, 2014 contract Oviedo and Ramirez agents had no legitimate purpose to order an inspection of the property.

234.    That even if there was a legitimate purpose for them to conduct an inspection on behalf of the Church and Staatz, Oviedo and Ramirez were under an obligation not to disclose same to Noble.

235.    That after the July 9, 2014 contract had been fully executed  Ramirez ordered an appraisal of the subject property.

236.    That after the July 9, 2014 contract had been fully executed Oviedo ordered an appraisal of the subject property.

237.    That there was no legitimate purpose for Oviedo and/or Ramirez to order an appraisal of the property as the seller had already achieved a purchase price of $600,000.00.

238.    That Ramirez ordered the appraisal for the benefit of Noble.

239.    That Oviedo ordered the appraisal for the benefit of Noble.

240.    That Oviedo and Ramirez were obligated to keep the appraisal report from Noble.

241.    That Oviedo violated his fiduciary duty to the Church when he disclosed the appraisal report to Noble.

242.    That Oviedo violated his fiduciary duty to the Church when he disclosed the appraisal report to Noble's attorney.

243.    That Ramirez violated his fiduciary duty to the Church when he disclosed the appraisal report to Noble.

244.    That Ramirez violated his fiduciary duty to the Church when he disclosed the appraisal report to Noble's attorney.

245.    That Ramirez disclosed the inspection report to Noble.

246.    That Ramirez disclosed the inspection report to Noble's attorney.

247.    That as a result of the inspection report ordered by and/or disclosed by Ramirez to Noble, Noble demanded a $100,000.00 reduction in the purchase of price of the subject property.

248.    That as a result of the inspection report ordered by and/or disclosed by Oviedo to Noble, Noble demanded a $100,000.00 reduction in the purchase of price of the subject property.

249.    That the conduct of Ramirez and/or Oviedo caused the Church to be damaged in the amount of $100,000.00.

250.    That on July 9, 2015 the Church and Noble would enter into a second contract at the reduced rate of $500,000.00 directly caused by the actions of Ramirez and/or Oviedo.

251.    On August 19, 2014, Laura Browne, Esq. emailed Ramirez a copy of a sample petition to complete a sale of property belonging to a not for profit (Exhibit "D").

252.    On April 10, 2015, Oviedo ordered the premises to be evaluated by Tereso Construction (Exhibit "E").

253.    Oviedo instructed Ramirez not to file the OAG documents.

254.   Oviedo instructed Ramirez not the file the OAG documents so as to get a more advantageous price for his lover and significant other Noble.

255.   Noble instructed Ramirez not to file the OAG documents.

256.   Noble instructed Ramirez not to file the OAG documents so as to get a more advantageous price.

257.   Noble, Oviedo and/or Ramirez acted in concert to cause the devaluation of the contract price.

258.   On or about May 4, 2015, defendants' alleged broker Ledwin Oviedo had an appraisal done of the property wherein the appraised value came back at $500,000.00.

259.   There was absolutely no reason for the "Seller's" broker to run an appraisal on the property when there was already a contract between the plaintiff and defendant for $600,000.00.

260.   On May 11, 2015, Oviedo wrote Ramirez stating that the appraisal report was for Ruby Staatz; however, Staatz did not order the report.

261.   On July 9, 2015, plaintiff took advantage of her superior bargaining position and forced the defendants to accept a contract of $500,000.00 (Exhibit "F").

262.   On July 9, 2015, plaintiff and defendant allegedly entered into a second contract of sale.

263.   That the July 9, 2015 contract defined the purchase price as $500,000.00

264.   That the July 9, 2015 contract defined the down payment as $15,000.00.

265.   That the July 9, 2015 contract defined the contract balance due as $485,000.00.

266.   That the July 9, 2015 contract did not define the purchaser's attorneys.

267.   That Noble never gave the $15,000.00 deposit for the July 9, 2015 contract.

268.   That Noble knew her alleged $15,000.00 deposit check on the July 9, 2014 contract was no longer able to be negotiated.

269.   That Noble knew her alleged $14,000.00 deposit check on the July 9, 2014 contract was no longer able to be negotiated.

270.    That Noble knew the $1,000.00 check deposit on the July 9, 2014 contract was never negotiated.

271.    That Ramirez has no contract deposits in his escrow account for the July 9, 2014 contract.

272.    That Ramirez has no contract deposit in his escrow account for the July 9, 2015 contract.

273.    That at the time of the execution of the July 9, 2015 contract, Ramirez failed to inform the Church that Noble had not satisfied the contract down payment provision.

274.    That at the time of the execution of the July 9, 2015 contract, Ramirez failed to inform Staatz that Noble had not satisfied the contract down payment provision.

275.    That at the time of the execution of the July 9, 2015 contract, Oviedo failed to inform the Church that Noble had not satisfied the contract down payment provision.

276.    That at the time of the execution of the July 9, 2015 contract, Oviedo failed to inform Staatz that Noble had not satisfied the contract down payment provision.

277.    That Ramirez never informed the Church that Noble failed to comply with the down payment provision of the July 9, 2014 contract.

278.    That Ramirez never informed the Church that Noble failed to comply with the down payment provision of the July 9, 2014 contract.

279.    That Ramirez's failure to inform the Church that Noble failed to comply with the down payment provision of the July 9, 2014 contract was intentional.

280.    That Ramirez's failure to inform Staatz that Noble failed to comply with the down payment provision of the July 9, 2014 contract was intentional.

281.    That Ramirez's failure to inform Staatz and/or the Church that Noble had failed to comply with the down payment provision of the July 9, 2014 contract was a violation of his fiduciary duty to the Church and/or Staatz.

282.    That Ramirez's failure to inform Staatz and/or the Church that Noble had failed to comply with the down payment provision of the July 9, 2014 contract was an act of deceit and/or fraud against the Church and/or Staatz.

283.    That Oviedo never informed the Church that Noble failed to comply with the down payment provision of the July 9, 2014 contract.

284.    That Oviedo never informed the Church that Noble failed to comply with the down payment provision of the July 9, 2014 contract.

285.    That Oviedo's failure to inform the Church that Noble failed to comply with the down payment provision of the July 9, 2014 contract was intentional.

286.    That Oviedo's failure to inform Staatz that Noble failed to comply with the down payment provision of the July 9, 2014 contract was intentional.

287.    That Oviedo's failure to inform Staatz and/or the Church that Noble had failed to comply with the down payment provision of the July 9, 2014 contract was a violation of his fiduciary duty to the Church and/or Staatz.

288.    That Oviedo's failure to inform Staatz and/or the Church that Noble had failed to comply with the down payment provision of the July 9, 2014 contract was an act of deceit and/or fraud against the Church and/or Staatz.

289.    That the July 9, 2015 contract defined the attorney for seller as Jaime Ramirez.

290.    That the July 9, 2015 contract did not defined the attorney for the purchaser.

291.    That the July 9, 2015 contract required all notices under the agreement be sent to the defendants' attorney Jamie Ramirez.

292.    That Ramirez never informed the Church that Noble failed to comply with the down payment provision of the July 9, 2015 contract.

293.    That Ramirez never informed the Church that Noble failed to comply with the down payment provision of the July 9, 2015 contract.

294.    That Ramirez's failure to inform the Church that Noble failed to comply with the down payment provision of the July 9, 2015 contract was intentional.

295.    That Ramirez's failure to inform Staatz that Noble failed to comply with the down payment provision of the July 9, 2015 contract was intentional.

296.    That Ramirez's failure to inform Staatz and/or the Church that Noble had failed to comply with the down payment provision of the July 9, 2015 contract was a violation of his fiduciary duty to the Church and/or Staatz.

297.    That Ramirez's failure to inform Staatz and/or the Church that Noble had failed to comply with the down payment provision of the July 9, 2015 contract was an act of deceit and/or fraud against the Church and/or Staatz.

298.    That Oviedo never informed the Church that Noble failed to comply with the down payment provision of the July 9, 2015 contract.

299.    That Oviedo never informed the Church that Noble failed to comply with the down payment provision of the July 9, 2015 contract.

300.    That Oviedo's failure to inform the Church that Noble failed to comply with the down payment provision of the July 9, 2015 contract was intentional.

301.    That Oviedo's failure to inform Staatz that Noble failed to comply with the down payment provision of the July 9, 2015 contract was intentional.

302.    That Oviedo's failure to inform Staatz and/or the Church that Noble had failed to comply with the down payment provision of the July 9, 2015 contract was a violation of his fiduciary duty to the Church and/or Staatz.

303.    That Oviedo's failure to inform Staatz and/or the Church that Noble had failed to comply with the down payment provision of the July 9, 2015 contract was an act of deceit and/or fraud against the Church and/or Staatz.

304.    That Oviedo and Ramirez conspired against the Church to conceal the fact that Noble had not given the required down payment for the July 9, 2014 contract.

305.    That Oviedo and Ramirez conspired against Staatz to conceal the fact that Noble had not given the required down payment for the July 9, 2014 contract.

306.    That Noble, Oviedo and Ramirez conspired against the Church to conceal the fact that Noble had not given the required down payment for the July 9, 2014 contract.

307.    That Noble, Oviedo and Ramirez conspired against Staatz to conceal the fact that Noble had not given the required down payment for the July 9, 2014 contract.

308.    That Noble never informed Ms. Staatz that she was in default of the July 9, 2015 contract.

309.    That Noble never informed Mr. Ramirez that Ms. Staatz of was in default of the July 9, 2015 contract.

310.    That Noble's attorney never informed Mr. Ramirez that Ms. Staatz was in default of the July 9, 2015 contract.

311.    That Noble never informed the Church that they were in default of the July 9, 2015 contract.

312.    That Noble never informed Mr. Ramirez that the Church was in default of the July 9, 2015 contract.

313.    That Noble's attorney never informed Mr. Ramirez that the Church was in default of the July 9, 2015 contract.

314.    No one on Noble's behalf ever sent the required default notice to the defined notice party under the July 9, 2015 contract.

315.    No one on Noble's behalf ever sent the required default notice to the defined notice party under the July 9, 2014 contract.

316.    That at the time of the purported execution of the July 9, 2015 contract Ramirez had already received all the required corporate documents from Oviedo.

317.    Oviedo instructed Ramirez not to file the OAG documents after the execution of July 9, 2015 contract.

318.    Noble instructed Ramirez not to file the OAG documents after the execution of July 9, 2015 contract.

319.    Oviedo instructed Ramirez not to file the OAG documents after the execution of July 9, 2015 contract because he knew that Noble did not have sufficient funds to close.

320.    Oviedo instructed Ramirez not to file the OAG paperwork after the execution of the July 9, 2015 contract because he knew Noble had not given the required down payment.

321.    Noble instructed Ramirez not to file the OAG paperwork after the execution of the July 9, 2015 contract because she knew that she had not given the required down payment.

322.    Ramirez never filed the required OAG paperwork.

323.    Noble is the sole member of Urbany Investment Group LLC.

324.    On May 9, 2017, seven days prior to the May 16, 2017 contract, Urbany retained the legal services of Laura C. Browne, Esq.

325.    On May 9, 2017, seven days prior to the May 16, 2017 contract, Noble retained the legal services of Laura C. Browne, Esq.

326.    On May 9, 2017, Noble through her company Urbany Investment Group LLC issued a check numbered 1032 in the amount of $1,000.00 to Laura C. Browne, Esq.

327.    On May 9, 2017, Noble through her company Urbany Investment Group LLC issued check number 1032 in the amount of $1,000.00 as a "Legal Fee Retainer" for the acquisition of "2176 Grand Concourse, Bronx".

328.    That Noble is the signatory on check number 1032 from Urbany Investment Group LLC.

329.    That the following is a copy of the Browne retainer check issued by Noble and/or Urbany (Exhibit "P"):



330.    On May 16, 2017, Noble and the Church through Staatz allegedly entered into a third contract of sale.

331.     The May 16, 2017 contract of sale defined the purchase price as $500,000.00.

332.    The May 16, 2017 contract of sale defined the deposit amount as $1,000.00.

333.    The May 16, 2017 contract of sale defined the contract balance due as $499,000.00.

334.    The May 16, 2017 contract of sale defined the sellers attorney as being Laura C. Browne, Esq.

335.    The May 16, 2017 contract of sale equired all contract notices be sent to sellers' attorneys Laura C. Browne, Esq with a copy to seller's other attorney Jamie Ramirez, Esq.

336.    The May 16, 2017 contract of sale had no addresses for notices to be sent to the purchaser.

337.    That the May 16, 2017 contract of sale defined the Broker as Ledwin Enterprises.

338.    That the May 16, 2017 Contract of sale defined Ledwin Enterprise's commission as a "Seller" commission.

339.    That the May 16, 2017 Contract of sale defined Ledwin Enterprises commission as being 5%.

340.    Noble has yet to explain what happened to the $15,000.00 deposit given on the July 9, 2014 contract.

341.    Noble has yet to explain what happened to the $15,000.00 deposit given on the July 9, 2015 contract.

342.    Ramirez has yet to explain what happened to the $15,000.00 deposit given on the July 9, 2014 contract.

343.    Ramirez has yet to explain what happened to the $15,000.00 deposit given on the July 9, 2015 contract.

344.    Oviedo has yet to explain what happened to the $15,000.00 deposit given on the July 9, 2014 contract.

345.    Oviedo has yet to explain what happened to the $15,000.00 deposit given on the July 9, 2015 contract.

346.    Plaintiff Noble never gave the required $1,000.00 contract deposit as it was given to her attorney Browne.

347.    The Church  NEVER agreed to a single $1,000.00 contract deposit.

348.    The Church was under the impression that Noble had previously given $15,000.00 and was giving an additional $1,000.00 on deposit.

349.    That the 2017 contract defines the purchaser as Maria T. Noble.

350.    That the 2017 contract defines Mt. Olivet Church, Inc. as the seller.

351.    That Maria T. Noble was required to give the contract deposit.

352.    That a company Urbany Investments allegedly gave a contract deposit on the above referenced property.

353.    Laura Browne was not retained by the Church.

354.    Laura Browne was not retained by  Staatz.

355.    There is no retainer check from Staatz to Browne.

356.    There is no retainer check from the Church to Browne.

357.     There are no letters from Ms. Browne to Staatz.

358.    There are no letters from Ms. Browne to the Church.

359.    There is no letter of engagement from Browne to Staatz.

360.    There is no letter of engagement from Browne to the Church.

361.    That Noble never informed Ms. Staatz that she was in default of the 2017 contract prior to Ortiz & Ortiz's letter of June 2018.

362.    That Noble never informed the Church that it was in default of the 2017 contract prior to Ortiz & Ortiz's letter of June 2018.

363.    That Noble never informed Mr. Ramirez that Ms. Staatz  was in default of the 2017 contract as required by the 2017 contract.

364.    That Noble never informed Ms. Browne that Ms. Staatz was in default of the 2017 contract as required by the 2017 contract.

365.    That to this date Noble has not complied with notice provision of the 2017 contract.

366.    That Noble never informed the Church that it was in default of the 2017 contract.

367.    That Noble's attorney never informed Mr. Ramirez that Ms. Staatz was in default of the 2017  contract.

368.    That Noble's attorney never informed Ramirez that the Church was in default of the 2017 contract.

369.    That Noble's attorney never informed Browne that Ms. Staatz was in default of the 2017 contract.

370.    That Noble's attorney never informed Browne that the Church was in violation of the 2017 contract.

371.    There is no letter from Staatz to Browne firing her as alleged by plaintiff.

372.    There is no letter from Browne to Staatz documenting that Staatz had fired her.

373.   There is no letter from Browne to the Church documenting that Staatz had fired her.

374.   That Browne is claiming she was fired by the Church so as to assist her client Noble in obtaining the property at a discounted price.

375.   That Noble never informed the Church that they were in default of the July 9, 2015 contract.

376.   Browne is Noble's attorney.

377.   Browne misled Staatz into believing she was acting on her behalf.

378.   Browne misled the Church into believing she was on its behalf.

379.   Browne never disclosed her conflict of interest to the Church.

380.   Browne never disclosed her conflict of interest to Staatz.

381.   Browne's failure to disclose her conflict of interest as being Noble's attorney was a violation of her fiduciary duty to the Church and/or Staatz.

382.   That Oviedo testified under oath that Ramirez was Noble's attorney for the 2017 contract.

383.   That Noble paid Browne a retaining fee for the 2017 contract.

384.   That Noble testified she paid Browne a retaining fee.

385.   That Oviedo testified that Browne was plaintiff's attorney regarding the subject property.

386.   That Oviedo testified that excluding Ms. Staatz no member of the board ever stated that they would not go through the contract.

387.   That Browne never disclosed her conflict with Staatz.

388.   That Brown never disclosed her conflict with the Church.

## AS AND FOR A FIRST CAUSE OF ACTION

## AGAINST LEDWIN OVIEDO FOR VIOLATING RPAPL 443(4)(a).

389.   Defendants – Third party plaintiffs repeat and reiterate each and every paragraph set forth above as being more fully set forth below.

390.    That there was a real estate broker contract between Oviedo and the Church for the sale of the Subject Property.

391.    That there was real estate broker contract between Oviedo and Staatz for the sale of the subject property.

392.    That there was a contract between Oviedo and the Church to sell the Church's property known as 2176 Grand Concourse, Bronx, New York.

393.    That there was a contract between Oviedo and Staatz to sell the Church's property known as 2176 Grand Concourse, Bronx, New York.

394.    That Oviedo agreed to find a purchaser for the Church in exchange for a 5% commission on the contract sale's price.

395.    That Oviedo agreed to find a purchaser for Staatz in exchange for a 5% commission on the contract sales price's.

396.    That Oviedo presented the Church with a $600,000.00 offer from Noble on or about June 26, 2014 (Exhibit "J").

397.    That on July 9, 2014, the execution date of the first contract of sale, Oviedo earned a commission of $30,000.00.

398.    That it was Oviedo's intent to pass on his $30,000.00 commission to his lover Noble.\

399.    That RPAPL 443(4)(a) required Oviedo to disclose to a client seller that he was also representing a client buyer.

400.    That in all transactions where Oviedo was a dual representative he was required to have both his clients sign a specific disclosure form.

401.    RPAPL 443(4)(a) states:

    4.    a.    For buyer-seller transactions, the following shall be the disclosure form:
                    NEW YORK STATE DISCLOSURE FORM
                        FOR BUYER AND SELLER
                        THIS IS NOT A CONTRACT

New York state law requires real estate licensees who are acting as agents of buyers or sellers of property to advise the potential buyers or sellers with whom they work of the nature of their agency relationship and the rights and obligations it creates.   This disclosure will help you to make informed choices about your relationship with the real estate broker and its sales agents.

Throughout the transaction you may receive more than one disclosure form.   The law may require each agent assisting in the transaction to present you with this disclosure form.   A real estate agent is a person qualified to advise about real estate.

If you need legal, tax or other advice, consult with a professional in that field.

DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIPS

SELLER'S AGENT

A seller's agent is an agent who is engaged by a seller to represent the seller's interests. The seller's agent does this by securing a buyer for the seller's home at a price and on terms acceptable to the seller.   A seller's agent has, without limitation, the following fiduciary duties to the seller:  reasonable care, undivided loyalty, confidentiality, full disclosure, obedience and duty to account.   A seller's agent does not represent the interests of the buyer.   The obligations of a seller's agent are also subject to any specific provisions set forth in an agreement between the agent and the seller.   In dealings with the buyer, a seller's agent should (a) exercise reasonable skill and care in performance of the agent's duties;  (b) deal honestly, fairly and in good faith;  and (c) disclose all facts known to the agent materially affecting the value or desirability of property, except as otherwise provided by law.

BUYER'S AGENT

A buyer's agent is an agent who is engaged by a buyer to represent the buyer's interests. The buyer's agent does this by negotiating the purchase of a home at a price and on terms acceptable to the buyer.   A buyer's agent has, without limitation, the following fiduciary duties to the buyer:  reasonable care, undivided loyalty, confidentiality, full disclosure, obedience and duty to account.   A buyer's agent does not represent the interests of the seller.   The obligations of a buyer's agent are also subject to any specific provisions set forth in an agreement between the agent and the buyer.   In dealings with the seller, a buyer's agent should (a) exercise reasonable skill and care in performance of the agent's duties;  (b) deal honestly, fairly and in good faith;  and (c) disclose all facts known to the agent materially affecting the buyer's ability and/or willingness to perform a contract to acquire seller's property that are not inconsistent with the agent's fiduciary duties to the buyer.

BROKER'S AGENTS

A broker's agent is an agent that cooperates or is engaged by a listing agent or a buyer's agent (but does not work for the same firm as the listing agent or buyer's agent) to assist the listing agent or buyer's agent in locating a property to sell or buy, respectively, for the listing agent's seller or the buyer agent's buyer.   The broker's agent does not have a direct relationship with the buyer or seller and the buyer or seller can not provide instructions or

direction directly to the broker's agent.   The buyer and the seller therefore do not have vicarious liability for the acts of the broker's agent.   The listing agent or buyer's agent do provide direction and instruction to the broker's agent and therefore the listing agent or buyer's agent will have liability for the acts of the broker's agent.

DUAL AGENT

A real estate broker may represent both the buyer and the seller if both the buyer and seller give their informed consent in writing.   In such a dual agency situation, the agent will not be able to provide the full range of fiduciary duties to the buyer and seller.   The obligations of an agent are also subject to any specific provisions set forth in an agreement between the agent, and the buyer and seller.   An agent acting as a dual agent must explain carefully to both the buyer and seller that the agent is acting for the other party as well.   The agent should also explain the possible effects of dual representation, including that by consenting to the dual agency relationship the buyer and seller are giving up their right to undivided loyalty.   A buyer or seller should carefully consider the possible consequences of a dual agency relationship before agreeing to such representation.   A seller or buyer may provide advance informed consent to dual agency by indicating the same on this form.

DUAL AGENT

WITH

DESIGNATED SALES AGENTS

If the buyer and the seller provide their informed consent in writing, the principals and the real estate broker who represents both parties as a dual agent may designate a sales agent to represent the buyer and another sales agent to represent the seller to negotiate the purchase and sale of real estate.   A sales agent works under the supervision of the real estate broker.   With the informed consent of the buyer and the seller in writing, the designated sales agent for the buyer will function as the buyer's agent representing the interests of and advocating on behalf of the buyer and the designated sales agent for the seller will function as the seller's agent representing the interests of and advocating on behalf of the seller in the negotiations between the buyer and seller.   A designated sales agent cannot provide the full range of fiduciary duties to the buyer or seller.   The designated sales agent must explain that like the dual agent under whose supervision they function, they cannot provide undivided loyalty.   A buyer or seller should carefully consider the possible consequences of a dual agency relationship with designated sales agents before agreeing to such representation.   A seller or buyer may provide advance informed consent to dual agency with designated sales agents by indicating the same on this form.

This form was provided to me by ……………… (print name of licensee) of ……………… (print name of company, firm or brokerage), a licensed real estate broker acting in the interest of the:

( ) Seller as a

( ) Buyer as a

(check relationship below)

(check relationship below)

( ) Seller's agent

( ) Buyer's agent

( ) Broker's agent

( ) Broker's agent

( ) Dual agent

( ) Dual agent with designated sales agents

For advance informed consent to either dual agency or dual agency with designated sales agents complete section below:

( ) Advance informed consent dual agency.

( ) Advance informed consent to dual agency with designated sales agents.

If dual agent with designated sales agents is indicated above:

………………is appointed to represent the buyer;  and

………………is appointed to represent the seller in this transaction.

(I)  (We) acknowledge receipt of a copy of this disclosure form:

Signature of { } Buyer(s) and/or { } Seller(s):

_____

_____

_____

_____

Date:_____

Date:_____

402.    Oviedo never disclosed to the Church that he was Noble's broker.

403.    Oviedo never disclosed to Staatz that he was Noble's broker.

404.    Oviedo never disclosed to the Church that Noble was his agent.

405.    Oviedo never disclosed to Staatz that Noble was his agent.

406.    Oviedo never disclosed his romantic relationship with Noble to the Church.

407.    Oviedo never disclosed his romantic relationship with Noble to Staatz.

408.    Oviedo never disclosed his conflict of interest to the Church.

409.    Oviedo never disclosed his conflict of interest to Staatz.

410.    Oviedo never gave Staatz the RPAPL 443(4)(a) notice that she was entitled.

411.    Oviedo never gave the Church the required RPAPL 443(4)(a) notice that it was entitled.

412.    Oviedo failed to give the Church the required RPAPL 443(4)(a) notice because he wanted to conceal his involvement with Noble.

413.    Oviedo failed to give the Staatz the required RPAPL 443(4)(a) notice because he wanted to conceal his involvement with Noble.

414.    Oviedo failed to give the Church the required RPAPL 443(4)(a) notice because he wanted to conceal his involvement with Noble so that he could later drive the price down for the benefit of Noble.

415.    Oviedo failed to give the Staatz the required RPAPL 443(4)(a) notice because he wanted to conceal his involvement with Noble so that he could later drive the price down for the benefit of Noble.

416.    Oviedo failed to give the required RPAPL 443(4)(a) notice so as to get his lover Noble the property at a discount.

417.    That Oviedo's failure to disclose his dual representation rendered the July 9, 2014 contract void.

418.    That Oviedo's failure to disclose his dual representation rendered the July 9, 2015 contract void.

419.    That Oviedo's failure to disclose his dual representation rendered the 2017 contract of sale void.

420.    That Noble has admitted that Oviedo was her broker in paragraph 16 of her complaint when she stated:

> 16.    Noble and her real estate broker Ledwin Oviedo (the "Broker") have invested countless hours over the last four years assisting the Defendants in its attempts to prosecute the sale.

421.    Oviedo's failure to provide an RPAPL 443(4)(a) notice was an act of fraud.

422.    Oviedo's failure to provide an RPAPL 443(4)(a) notice was an act of deception.

423.    Oviedo's failure to disclose his romantic relationship with Noble was an act of fraud.

424.    Oviedo's failure to disclose his romantic relationship with Noble was an act of deception.

425.    Oviedo's failure to disclose his business relationship with Noble  was an act of fraud.

426.    Oviedo's failure to disclose his business relationship with Noble was an act of deceit.

427.    That Oviedo hid his dual representation from the Church and Staatz so that Noble would actually get the property for $570,000.00 on the July 9, 2014 contract of sale.  [$600,000.00 - $30,000.00 (commission) = $570,000.00].

428.    That Oviedo concealed his dual representation so as to drive the price down to $500,000.00 on the July 9, 2015 contract for the benefit of his lover Noble.

429.    That Ovided concealed his dual representation from the Church and Staatz so that Noble would actually get the property for $475,000.00 on the July 9, 2015 contract of sale. [$500,000.00 - $25,000.00 (commission) = $475,000.00].

430.    That Oviedo failed to disclose his dual representation prior to the July 9, 2014 contract.

431.    That Oviedo failed to disclose his dual representation prior to the July 9, 2015 contract.

432.    That Oviedo failed to disclose his dual representation prior to the 2017 contract.

433.    That Oviedo never disclosed his dual representation to the Church.

434.    That Oviedo never disclosed his dual representation to Staatz.

435.    But for Noble's 2018 complaint, the Church would have remained unaware of Oviedo's dual representation.

436.    But for the Noble's 2018 complaint, Staatz would have remained unaware of Oviedo's dual representation.

437.    That the Church and/or Staatz have been damaged by Oviedo's failure to disclose his dual representation.

438.    That the Church and/or Staatz were deprived from receiving the fair market value for the property due to Oviedo's failure to disclose his dual representation.

439.    That Oviedo is obligated to the Church and/or Staatz for the fair market value of the property.

440.    That should the Court order defendants to go through with the sale Oviedo is obligated to the Church for the difference between the fair market value and the contract price of $500,000.00.

441.    That upon information and belief, in its current state the property is worth $1,100,000.00.

442.    That upon information and belief, the property has a fixed and/or improved value of $3,000,000.00.

443.    That Oviedo is personally liable to the Church for his violation of RPAPL 443(4)(a).

444.    In light of the above, the Church and/or Staatz have been damaged in an amount that is between $600,000.00 and $2,500,000.00.

## AS AND FOR A SECOND CAUSE OF ACTION
## AGAINST OVIEDO FOR BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTIES AND BREACH OF THE WARRANTY OF GOOD FAITH & FAIR DEALING

445.    Defendants – Third party plaintiffs repeat and reiterate each and every paragraph set forth above as being more fully set forth below.

446.    That upon agreeing to act as the Church's broker Oviedo owed the Church a duty of loyalty.

447.    That upon agreeing to act as the Church's broker Oviedo owed the Church a duty of fidelity.

448.    That upon agreeing to act as the Church's broker Oviedo owed the Church a duty to act in its best interest.

449.    That upon agreeing to act as the Church's broker Oviedo owed the Church a duty to obtain a fair market price for the property.

450.    That upon agreeing to act as the Church's broker Oviedo owed the Church a duty to act in its best interest.

451.    That upon agreeing to act as the Church's broker Oviedo owed the Church a duty not to act in the best interest of the purchaser.

452.    That as the Church's real estate broker Oviedo was under a duty to disclose all relevant information about the purchaser to the Church and Staatz.

453.    That as the Church's real estate broker Oviedo was under a duty to disclose all relevant information about Noble to the Church and Staatz so that hey could make an informed business decision as to whether to execute a contract of sale.

454.    That Oviedo breached his fiduciary duty to the Church when failed to disclose that he was also Noble's broker.

455.    That Oviedo breached his fiduciary duty to the Church when he failed to disclose his romantic relationship with Noble.

456.    That Oviedo breached his fiduciary duty to the Church when he failed to disclose his business relationship with Noble.

457.    That Oviedo breached his fiduciary duty to the Church when he failed to disclose that Noble was one of his agents.

458.    That Oviedo breached his fiduciary duty to the Church when ordered an appraisal of the property after Noble had entered into the July 9, 2014 contract for $600,000.00.

459.    That Oviedo breached his fiduciary duty to the Church when he ordered an appraisal of the property in 2015 after Noble had already executed the July 9, 2014 contract of sale for $600,000.00.

460.    That Oviedo breached his fiduciary duty to the Church when he had the property evaluated by construction companies in 2015.

461.    That Oviedo ordered the property to be evaluated by Construction companies in 2015 for the benefit of Noble.

462.    That Oviedo had no legitimate purpose to order an appraisal of the property in 2015.

463.    That Oviedo ordered the 2015 appraisal for the benefit of Noble.

464.    That Oviedo never informed the Church that he was ordering an appraisal in 2015.

465.    That Oviedo never informed the Church that he was having construction companies evaluate the property for the benefit of Noble.

466.    That Oviedo breached his fiduciary duty to the Church when he disclosed the appraisal to Noble.

467.    That Oviedo breached his fiduciary duty to the Church when he disclosed the construction reports to Noble.

468.    That Oviedo breached his fiduciary duty to the Church when he failed to disclose that Ramirez was Noble's attorney.

469.    That Oviedo breached his fiduciary duty to the Church when he failed to disclose Ramirez had served as Oviedo's attorney in the past.

470.    That Oviedo breached his fiduciary duty to the Church when he failed to disclose Ramirez had represented Noble on other matters.

471.    That Oviedo was aware that Noble had issued the following check as the July 9, 2014

contract deposit:



472.    That on July 9, 2014 or shortly thereafter Oviedo learned that Noble did not give Ramirez

the $15,000.00 check bearing number 0098.

473.    Oviedo was under a duty to inform the Church that Noble did not transmit the $15,000.00

check to Ramirez when he discovered same.

474.    Oviedo breached his fiduciary duty to the Church when he failed to disclose that Noble

had "pulled back" the $15,000.00 check bearing number 0098.

475.    That on July 9, 2014 or shortly thereafter Oviedo learned that Noble allegedly replaced

the $15,000.00 check bearing number 0098 with two checks in the amount of $1,000.00 and

$14,000.

476.    That on July 9, 2014 or shortly thereafter Oviedo learned that Ramirez was only going to

negotiate the $1,000.00 check and withhold the deposit of Noble's alleged $14,000.00 check.

477.    That upon learning that Noble replaced the $15,000.00 check with the alleged $1,000.00

and $14,000.00 check, Oviedo was under a duty to disclose that fact to the Church.

478.    Oviedo was under a duty to the Church to disclose that Ramirez was only going to

negotiate the $1,000.00 check upon learning same.

479.    Oviedo was under a duty to the Church to disclose that Ramirez was going to withhold

depositing the $14,000.00 check upon learning same.

480.    Oviedo breached his fiduciary duty to the Church when he failed to disclose the facts surrounding Noble's contract deposit on the July 9, 2014 contract.

481.    Oviedo was under a duty to inform Staatz that Noble did not transmit the $15,000.00 check to Ramirez when he discovered same.

482.    Oviedo breached his fiduciary duty to Staatz when he failed to disclose that Noble had "pulled back" the $15,000.00 check bearing number 0098.

483.    That on July 9, 2014 or shortly thereafter Oviedo learned that Noble allegedly replaced the $15,000.00 check bearing number 0098 with two checks in the amount of $1,000.00 and $14,000.

484.    That on July 9, 2014 or shortly thereafter Oviedo learned that Ramirez was only going to negotiate the $1,000.00 check and withhold the deposit of Noble's alleged $14,000.00 check.

485.    That upon learning that Noble replaced the $15,000.00 check with the alleged $1,000.00 and $14,000.00 check, Oviedo was under a duty to disclose that fact to Staatz.

486.    Oviedo was under a duty to Staatz to disclose that Ramirez was only going to negotiate the $1,000.00 check upon learning same.

487.    Oviedo was under a duty to Staatz to disclose that Ramirez was going to withhold depositing the $14,000.00 check upon learning same.

488.    Oviedo breached his fiduciary duty to Staatz when he failed to disclose the facts surrounding Noble's contract deposit on the July 9, 2014 contract.

489.    That Oviedo's breach of this fiduciary duty in failing to disclose the goings on with the July 9, 2014 contract kept the Church and/or Staatz from exercising their best business judgment.

490.    That had Oviedo disclosed the goings on with the July 9, 2014 contract deposit the Church and/or Staatz would have looked for a more suitable purchaser.

491.    That Oviedo further breached his fiduciary duty to the Church when he disclosed the appraisal report to Noble to drive the contract price down to $500,000.00.

492.    That Oviedo breached his fiduciary duty to the Church when he disclosed the appraisal report to Noble's attorney to drive the contract price down to $500,000.00.

493.    That Oviedo further breached his fiduciary duty to Staatz when he disclosed the appraisal report to Noble to drive the contract price down to $500,000.00.

494.    That Oviedo breached his fiduciary duty to Staatz when he disclosed the appraisal report to Noble's attorney to drive the contract price down to $500,000.00.

495.    Oviedo breached his fiduciary duty to the Church when he instructed Ramirez not to file the OAG paper work.

496.    Oviedo breached his fiduciary duty to Staatz when he instructed Ramirez not to file the OAG paper work.

497.    Shortly after Oviedo's disclosure and/or transmittal of the appraisal and/or construction estimate to Noble and/or her representatives Noble demanded a new contract price.

498.    At the time of the second contract on July 9, 2015 Oviedo again had an opportunity to disclose his dual representation of Noble.

499.    Oviedo again failed to disclose to the Church and/or Staatz that he was also Noble's broker.

500.    Oviedo's failure to disclose this dual representation was yet another breach of his fiduciary duty to the Church.

501.    Oviedo's failure to disclose this dual representation was yet another breach of his fiduciary duty to Staatz.

502.    That on July 9, 2015 a second contract of sale entered into between Noble and the Church.

503.    The July 9, 2015 contract defined the down payment as $15,000.00.

504.    That Oviedo was under a duty to ensure the $15,000.00 contract down payment was made.

505.    That Oviedo told the Church and/or Staatz that Noble had made the $15,000.00 contract deposit in 2014.

506.    That Oviedo's statement to the Church and/or Staatz regarding the $15,000.00 contract deposit was false.

507.    That Oviedo had an opportunity to discuss with the Church and Staatz the prior goings on with the prior $15,000.00 contract deposit.

508.    Oviedo failed to the disclose to the Church on July 9, 2015 the goings on with the prior $15,000.00 contract deposit.

509.    Oviedo concealed the facts regarding the July 9, 2014 contract so that the Church would not seek out another purchaser and broker.

510.    Oviedo's failure to disclose the goings on with the $15,000.00 contract deposit on July 9, 2015 or thereafter was another breach of his fiduciary duty to the Church and/or Staatz.

511.    Implied in every contract is the State of New York is a warranty of good faith and fair dealing.

512.    Oviedo violated that warranty of good faith and fair dealing as detailed above.

513.    That the Church and/or Staatz have been damaged by Oviedo's conduct from 2014 through today.

514.    That the Church and/or Staatz were deprived from receiving the fair market value for the property due to Oviedo's conduct as detailed above.

515.    That Oviedo is obligated to the Church and/or Staatz for the fair market value of the property should the Court order the sale to go through.

516.    That should the Court order defendants to go through with the sale Oviedo is obligated to the Church for the difference between the fair market value and the contract price of $500,000.00.

517.    That upon information and belief, in its current state the property is worth $1,100,000.00.

518.    That upon information and belief, the property has a fixed and/or improved value of $3,000,000.00.

519.    That Oviedo is personally liable to the Church for his violation of RPAPL 443(4)(a).

520.    In light of the above, the Church and/or Staatz have been damaged in an amount that is between $600,000.00 and $2,500,000.00.

## AS AND FOR A THIRD CAUE OF ACTION

## AGAINST OVIEDO FOR FRAUD

521.    Defendants – Third party plaintiffs repeat and reiterate each and every paragraph set forth above as being more fully set forth below.

522.    Oviedo committed and act of fraud when he failed to disclose to the Church that he was Noble's real estate broker on July 9, 2014.

523.    Oviedo committed and act of deceit when he failed to disclose to the Church that he was Noble's real estate broker on July 9, 2014.

524.    Oviedo committed and act of fraud when he failed to disclose to Staatz that he was Noble's real estate broker on July 9, 2014.

525.    Oviedo committed and act of deceit when he failed to disclose to Staatz that he was Noble's real estate broker on July 9, 2014.

526.    Oviedo committed and act of fraud when he failed to disclose to the Church that he was Noble's real estate broker on July 9, 2015.

527.    Oviedo committed and act of deceit when he failed to disclose to the Church that he was Noble's real estate broker on July 9, 2015.

528.    Oviedo committed and act of fraud when he failed to disclose to Staatz that he was Noble's real estate broker on July 9, 2015.

529.    Oviedo committed and act of deceit when he failed to disclose to Staatz that he was Noble's real estate broker on July 9, 2015.

530.    Oviedo committed and act of fraud when he failed to disclose to the Church that he was Noble's real estate broker on the 2017 contract.

531.    Oviedo committed and act of deceit when he failed to disclose to the Church that he was Noble's real estate broker on the 2017 contract.

532.    Oviedo committed and act of fraud when he failed to disclose to Staatz that he was Noble's real estate broker on the 2017 contract.

533.    Oviedo committed and act of deceit when he failed to disclose to Staatz that he was Noble's real estate broker on the 2017 contract.

534.    Oviedo made an untrue statement when he told Staatz on July 9, 2014 that Noble had given the $15,000.00 contract deposit.

535.    Oviedo made an untrue statement when he told Staatz on July 9, 2015 that Noble's contract deposit was in Ramirez's escrow account.

536.    Oviedo's statements to Staatz regarding the $15,000.00 contract deposit were false.

537.    Oviedo knew his statements regarding the $15,000.00 contract deposit were false.

538.    That Oviedo's concealment from the Church regarding the facts surrounding the July 9, 2014 contract deposit was an act of fraud.

539.    That Oviedo's concealment from Staatz regarding the July 9, 2014 contract deposit was an act of deceit.

540.    That Oviedo's concealment from the Church regarding the facts surrounding the July 9, 2015 contract deposit was an act of fraud.

541.    That Oviedo's concealment from Staatz regarding the July 9, 2015 contract deposit was an act of deceit.

542.    That the Church and/or Staatz have been damaged by Oviedo's fraudulent statements and conduct from 2014 through today.

543.    That the Church and/or Staatz were deprived from receiving the fair market value for the property due to Oviedo's fraudulent conduct as detailed above.

544.    That Oviedo is obligated to the Church and/or Staatz for the fair market value of the property should the Court order the sale to go through.

545.    That should the Court order defendants to go through with the sale Oviedo is obligated to the Church for the difference between the fair market value and the contract price of $500,000.00.

546.    That upon information and belief, in its current state the property is worth $1,100,000.00.

547.    That upon information and belief, the property has a fixed and/or improved value of $3,000,000.00.

548.    That Oviedo is personally liable to the Church for his violation of RPAPL 443(4)(a).

549.    In light of the above, the Church and/or Staatz have been damaged in an amount that is between $600,000.00 and $2,500,000.00.

### AS AND FOR A FOURTH CAUSE OF ACTION AGAINST

### LEDWIN ENTERPRISES, INC. FOR VIOLATING RPAPL 443(4)(a).

550.    Defendants – Third party plaintiffs repeat and reiterate each and every paragraph set forth above as being more fully set forth below.

551.    The within actions against Ledwin Enterprises, Inc. are being brought in the alternative in the eventuality that Oviedo claims he was acting in his corporate capacity.

552.    That Ledwin Enterprises, Inc. is owned by Oviedo.

553.    That Oviedo is an officer of Ledwin Enterprises, Inc.

554.    That Oviedo is an employee of Ledwin Enterprises, Inc.

555.    That Ledwin Enterprises, Inc. is responsible for the conduct of Oviedo.

556.    Oviedo never informed the Church that he was conducting business under Ledwin Enterprises, Inc.

557.    Oviedo never informed Staatz that he was conducting business under Ledwin Enterprises, Inc.

558.    Due to the fact Oviedo claims an "oral contract" claims are being brought against his company in the eventuality that he tries to limit his financial exposure.

559.    That there was a real estate broker contract between Ledwin Enterprises, Inc.  and the Church for the sale of the Subject Property.

560.    That there was real estate broker contract between Ledwin Enterprises, Inc.  and Staatz for the sale of the subject property.

561.    That there was a contract between Ledwin Enterprises, Inc.  and the Church to sell the Church's property known as 2176 Grand Concourse, Bronx, New York.

562.    That there was a contract between Ledwin Enterprises, Inc.  and Staatz to sell the Church's property known as 2176 Grand Concourse, Bronx, New York.

563.    That Ledwin Enterprises, Inc.  agreed to find a purchaser for the Church in exchange for a 5% commission on the contract sale's price.

564.    That Ledwin Enterprises, Inc.  agreed to find a purchaser for Staatz in exchange for a 5% commission on the contract sales price's.

565.    That Ledwin Enterprises, Inc.  presented the Church with a $600,000.00 offer from Noble on or about June 26, 2014 (Exhibit "J").

566.    That on July 9, 2014, the execution date of the first contract of sale, Ledwin Enterprises, Inc.  earned a commission of $30,000.00.

567.    That it was Oviedo's intent to pass on its $30,000.00 commission to Oviedo's lover Noble.

568.    That RPAPL 443(4)(a) required Ledwin Enterprises, Inc.  to disclose to a client seller that he was also representing a client buyer.

569.    That in all transactions where Ledwin Enterprises, Inc.  was a dual representative it was required to have both of its clients sign a specific disclosure form.

570.    RPAPL 443(4)(a) states:

4.    a.    For buyer-seller transactions, the following shall be the disclosure form:

NEW YORK STATE DISCLOSURE FORM
FOR BUYER AND SELLER
THIS IS NOT A CONTRACT

New York state law requires real estate licensees who are acting as agents of buyers or sellers of property to advise the potential buyers or sellers with whom they work of the nature of their agency relationship and the rights and obligations it creates.   This disclosure will help you to make informed choices about your relationship with the real estate broker and its sales agents.

Throughout the transaction you may receive more than one disclosure form.   The law may require each agent assisting in the transaction to present you with this disclosure form.   A real estate agent is a person qualified to advise about real estate.

If you need legal, tax or other advice, consult with a professional in that field.

DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIPS

SELLER'S AGENT

A seller's agent is an agent who is engaged by a seller to represent the seller's interests. The seller's agent does this by securing a buyer for the seller's home at a price and on terms acceptable to the seller.   A seller's agent has, without limitation, the following fiduciary duties to the seller:  reasonable care, undivided loyalty, confidentiality, full disclosure, obedience and duty to account.   A seller's agent does not represent the interests of the buyer.   The obligations of a seller's agent are also subject to any specific provisions set forth in an agreement between the agent and the seller.   In dealings with the buyer, a seller's agent should (a) exercise reasonable skill and care in performance of the agent's duties;  (b) deal honestly, fairly and in good faith;  and (c) disclose all facts known to the agent materially affecting the value or desirability of property, except as otherwise provided by law.

BUYER'S AGENT

A buyer's agent is an agent who is engaged by a buyer to represent the buyer's interests. The buyer's agent does this by negotiating the purchase of a home at a price and on terms acceptable to the buyer.   A buyer's agent has, without limitation, the following fiduciary duties to the buyer:  reasonable care, undivided loyalty, confidentiality, full disclosure, obedience and duty to account.   A buyer's agent does not represent the interests of the seller.   The obligations of a buyer's agent are also subject to any specific provisions set forth in an agreement between the agent and the buyer.   In dealings with the seller, a buyer's agent should (a) exercise reasonable skill and care in performance of the agent's duties;  (b) deal honestly, fairly and in good faith;  and (c) disclose all facts known to the

agent materially affecting the buyer's ability and/or willingness to perform a contract to acquire seller's property that are not inconsistent with the agent's fiduciary duties to the buyer.

## BROKER'S AGENTS

A broker's agent is an agent that cooperates or is engaged by a listing agent or a buyer's agent (but does not work for the same firm as the listing agent or buyer's agent) to assist the listing agent or buyer's agent in locating a property to sell or buy, respectively, for the listing agent's seller or the buyer agent's buyer.   The broker's agent does not have a direct relationship with the buyer or seller and the buyer or seller can not provide instructions or direction directly to the broker's agent.   The buyer and the seller therefore do not have vicarious liability for the acts of the broker's agent.   The listing agent or buyer's agent do provide direction and instruction to the broker's agent and therefore the listing agent or buyer's agent will have liability for the acts of the broker's agent.

## DUAL AGENT

A real estate broker may represent both the buyer and the seller if both the buyer and seller give their informed consent in writing.   In such a dual agency situation, the agent will not be able to provide the full range of fiduciary duties to the buyer and seller.   The obligations of an agent are also subject to any specific provisions set forth in an agreement between the agent, and the buyer and seller.   An agent acting as a dual agent must explain carefully to both the buyer and seller that the agent is acting for the other party as well.   The agent should also explain the possible effects of dual representation, including that by consenting to the dual agency relationship the buyer and seller are giving up their right to undivided loyalty.   A buyer or seller should carefully consider the possible consequences of a dual agency relationship before agreeing to such representation.   A seller or buyer may provide advance informed consent to dual agency by indicating the same on this form.

## DUAL AGENT

## WITH

## DESIGNATED SALES AGENTS

If the buyer and the seller provide their informed consent in writing, the principals and the real estate broker who represents both parties as a dual agent may designate a sales agent to represent the buyer and another sales agent to represent the seller to negotiate the purchase and sale of real estate.   A sales agent works under the supervision of the real estate broker.   With the informed consent of the buyer and the seller in writing, the designated sales agent for the buyer will function as the buyer's agent representing the interests of and advocating on behalf of the buyer and the designated sales agent for the seller will function as the seller's agent representing the interests of and advocating on behalf of the seller in the negotiations between the buyer and seller.   A designated sales agent cannot provide the full range of fiduciary duties to the buyer or seller.   The designated sales agent must explain that like the dual agent under whose supervision they function, they cannot provide undivided loyalty.   A buyer or seller should carefully consider the possible consequences of a dual agency relationship with designated sales

agents before agreeing to such representation.   A seller or buyer may provide advance informed consent to dual agency with designated sales agents by indicating the same on this form.

This form was provided to me by ……………… (print name of licensee) of ……………… (print name of company, firm or brokerage), a licensed real estate broker acting in the interest of the:


( ) Seller as a

( ) Buyer as a

(check relationship below)

(check relationship below)

( ) Seller's agent

( ) Buyer's agent

( ) Broker's agent

( ) Broker's agent

( ) Dual agent

( ) Dual agent with designated sales agents

For advance informed consent to either dual agency or dual agency with designated sales agents complete section below:

( ) Advance informed consent dual agency.

( ) Advance informed consent to dual agency with designated sales agents.

If dual agent with designated sales agents is indicated above:

………………is appointed to represent the buyer;  and

………………is appointed to represent the seller in this transaction.

(I)  (We) acknowledge receipt of a copy of this disclosure form:

Signature of { } Buyer(s) and/or { } Seller(s):

_____

_____

_____

_____

Date:_____

Date:_____

571.    Ledwin Enterprises, Inc.  never disclosed to the Church that he was Noble's broker.

572.    Ledwin Enterprises, Inc.  never disclosed to Staatz that he was Noble's broker.

573.    Ledwin Enterprises, Inc. never disclosed to the Church that Noble was its agent.

574.    Ledwin Enterprises, Inc.  never disclosed to Staatz that Noble was its agent.

575.    Ledwin Enterprises, Inc.  never disclosed Oviedo's romantic relationship with Noble to the Church.

576.    Ledwin Enterprises, Inc.  never disclosed Oviedo's romantic relationship with Noble to Staatz.

577.    Ledwin Enterprises, Inc.  never disclosed its conflict of interest to the Church.

578.    Ledwin Enterprises, Inc. never disclosed its conflict of interest to Staatz.

579.    Ledwin Enterprises, Inc.  never gave Staatz the RPAPL 443(4)(a) notice that she was entitled.

580.    Ledwin Enterprises, Inc. never gave the Church the required RPAPL 443(4)(a) notice that it was entitled.

581.    Ledwin Enterprises, Inc.  failed to give the Church the required RPAPL 443(4)(a) notice because it wanted to conceal Oviedo's involvement with Noble.

582.    Ledwin Enterprises, Inc. failed to give the Staatz the required RPAPL 443(4)(a) notice because it wanted to conceal Oviedo's  involvement with Noble.

583.   Ledwin Enterprises, Inc.  failed to give the Church the required RPAPL 443(4)(a) notice because it wanted to conceal Oviedo's  involvement with Noble so that he could later drive the price down for the benefit of Noble.

584.   Ledwin Enterprises, Inc.  failed to give the Staatz the required RPAPL 443(4)(a) notice because it wanted to conceal Oviedo's involvement with Noble so that he could later drive the price down for the benefit of Noble.

585.   Ledwin Enterprises, Inc.  failed to give the required RPAPL 443(4)(a) notice so as to get Oviedo's lover Noble the property at a discount.

586.   That Ledwin Enterprises, Inc.'s failure to disclose its dual representation rendered the July 9, 2014 contract void.

587.   That Ledwin Enterprises, Inc.'s failure to disclose its dual representation rendered the July 9, 2015 contract void.

588.   That Ledwin Enterprises, Inc.'s failure to disclose its dual representation rendered the 2017 contract of sale void.

589.   That Noble has admitted that Oviedo (Ledwin Enterprises, Inc. ) was her broker in paragraph 16 of her complaint when she stated:

> 16.   Noble and her real estate broker Ledwin Oviedo (the "Broker") have invested countless hours over the last four years assisting the Defendants in its attempts to prosecute the sale.

590.   Ledwin Enterprises, Inc.'s failure to provide an RPAPL 443(4)(a) notice was an act of fraud.

591.   Ledwin Enterprises, Inc.'s failure to provide an RPAPL 443(4)(a) notice was an act of deception.

592.   Ledwin Enterprises, Inc.'s  failure to disclose Oviedo's romantic relationship with Noble was an act of fraud.

593.    Ledwin Enterprises, Inc.'s failure to disclose Oviedo's romantic relationship with Noble was an act of deception.

594.    Ledwin Enterprises, Inc.'s failure to disclose its business relationship with Noble was an act of fraud.

595.    Ledwin Enterprises, Inc.'s failure to disclose its business relationship with Noble was an act of deceit.

596.    That Ledwin Enterprises, Inc. hid its dual representation from the Church and Staatz so that Noble would actually get the property for $570,000.00 on the July 9, 2014 contract of sale. [$600,000.00 - $30,000.00 (commission) = $570,000.00].

597.    That Ledwin Enterprises, Inc. concealed its dual representation so as to drive the price down to $500,000.00 on the July 9, 2015 contract for the benefit of Oviedo's lover Noble.

598.    That Ledwin Enterprises, Inc. concealed its dual representation from the Church and Staatz so that Noble would actually get the property for $475,000.00 on the July 9, 2015 contract of sale.  [$500,000.00 - $25,000.00 (commission) = $475,000.00].

599.    That Ledwin Enterprises, Inc. failed to disclose its dual representation prior to the July 9, 2014 contract.

600.    That Ledwin Enterprises, Inc.  failed to disclose its dual representation prior to the July 9, 2015 contract.

601.    That Ledwin Enterprises, Inc. failed to disclose its dual representation prior to the 2017 contract.

602.    That Ledwin Enterprises, Inc. never disclosed its dual representation to the Church.

603.    That Ledwin Enterprises, Inc. never disclosed its dual representation to Staatz.

604.    But for Noble's 2018 complaint, the Church would have remained unaware of Ledwin Enterprises, Inc.'s dual representation.

605.    But for the Noble's 2018 complaint, Staatz would have remained unaware of Ledwin Enterprises, Inc.'s dual representation.

606.    That the Church and/or Staatz have been damaged by Ledwin Enterprises, Inc.'s failure to disclose its dual representation.

607.    That the Church and/or Staatz were deprived from receiving the fair market value for the property due to Ledwin Enterprises, Inc.'s failure to disclose its dual representation.

608.    That Ledwin Enterprises, Inc.  is obligated to the Church and/or Staatz for the fair market value of the property.

609.    That should the Court order defendants to go through with the sale Ledwin Enterprises, Inc.  is obligated to the Church for the difference between the fair market value and the contract price of $500,000.00.

610.    That upon information and belief, in its current state the property is worth $1,100,000.00.

611.    That upon information and belief, the property has a fixed and/or improved value of $3,000,000.00.

612.    That Ledwin Enterprises, Inc. is liable to the Church for its violation of RPAPL 443(4)(a).

613.    In light of the above, the Church and/or Staatz have been damaged in an amount that is between $600,000.00 and $2,500,000.00.

### AS AND FOR A FIFTH CAUSE OF ACTION
### AGAINST Ledwin Enterprises, Inc. FOR BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTIES AND BREACH OF THE WARRANTY OF GOOD FAITH & FAIR DEALING

614.    Defendants – Third party plaintiffs repeat and reiterate each and every paragraph set forth above as being more fully set forth below.

615.    That upon agreeing to act as the Church's broker Ledwin Enterprises, Inc.  owed the Church a duty of loyalty.

616.    That upon agreeing to act as the Church's broker Ledwin Enterprises, Inc.  owed the Church a duty of fidelity.

617.    That upon agreeing to act as the Church's broker Ledwin Enterprises, Inc.  owed the Church a duty to act in its best interest.

618.    That upon agreeing to act as the Church's broker Ledwin Enterprises, Inc. owed the Church a duty to obtain a fair market price for the property.

619.    That upon agreeing to act as the Church's broker Ledwin Enterprises, Inc.  owed the Church a duty to act in its best interest.

620.    That upon agreeing to act as the Church's broker Ledwin Enterprises, Inc.  owed the Church a duty not to act in the best interest of the purchaser.

621.    That as the Church's real estate broker Ledwin Enterprises, Inc. was under a duty to disclose all relevant information about the purchaser to the Church and Staatz.

622.    That as the Church's real estate broker Ledwin Enterprises, Inc. was under a duty to disclose all relevant information about Noble to the Church and Staatz so that hey could make an informed business decision as to whether to execute a contract of sale.

623.    That Ledwin Enterprises, Inc. breached its fiduciary duty to the Church when failed to disclose that he was also Noble's broker.

624.    That Ledwin Enterprises, Inc.  breached its fiduciary duty to the Church when it failed to disclose Oviedo's romantic relationship with Noble.

625.    That Ledwin Enterprises, Inc.  breached  fiduciary duty to the Church when it failed to disclose its business relationship with Noble.

626.    That Ledwin Enterprises, Inc.  breached his fiduciary duty to the Church when it failed to disclose that Noble was one of its agents.

627.    That Ledwin Enterprises, Inc.  breached its fiduciary duty to the Church when ordered an appraisal of the property after Noble had entered into the July 9, 2014 contract for $600,000.00.

628.     That Ledwin Enterprises, Inc.  breached its fiduciary duty to the Church when Oviedo ordered an appraisal of the property in 2015 after Noble had already executed the July 9, 2014 contract of sale for $600,000.00.

629.     That Ledwin Enterprises, Inc.  breached its fiduciary duty to the Church when Oviedo had the property evaluated by construction companies in 2015.

630.     That Ledwin Enterprises, Inc.  ordered the property to be evaluated by Construction companies in 2015 for the benefit of Noble.

631.     That Ledwin Enterprises, Inc.  had no legitimate purpose to order an appraisal of the property in 2015.

632.     That Ledwin Enterprises, Inc.  ordered the 2015 appraisal for the benefit of Noble.

633.     That Ledwin Enterprises, Inc.  never informed the Church that he was ordering an appraisal in 2015.

634.     That Ledwin Enterprises, Inc.  never informed the Church that he was having construction companies evaluate the property for the benefit of Noble.

635.     That Ledwin Enterprises, Inc.  breached its fiduciary duty to the Church when it disclosed the appraisal to Noble.

636.     That Ledwin Enterprises, Inc.  breached its fiduciary duty to the Church when it disclosed the construction reports to Noble.

637.     That Ledwin Enterprises, Inc.  breached its fiduciary duty to the Church when it failed to disclose that Ramirez was Noble's attorney.

638.     That Ledwin Enterprises, Inc.  breached its fiduciary duty to the Church when Oviedo failed to disclose Ramirez had served as Ledwin Enterprises, Inc. 's attorney in the past.

639.     That Ledwin Enterprises, Inc.  breached its fiduciary duty to the Church when Oviedo failed to disclose Ramirez had represented Noble on other matters.

640.    That Ledwin Enterprises, Inc. was aware that Noble had issued the following check as the July 9, 2014 contract deposit:



641.    That on July 9, 2014 or shortly thereafter Ledwin Enterprises, Inc. learned that Noble did not give Ramirez the $15,000.00 check bearing number 0098.

642.    Ledwin Enterprises, Inc. was under a duty to inform the Church that Noble did not transmit the $15,000.00 check to Ramirez when he discovered same.

643.    Ledwin Enterprises, Inc. breached its fiduciary duty to the Church when Oviedo failed to disclose that Noble had "pulled back" the $15,000.00 check bearing number 0098.

644.    That on July 9, 2014 or shortly thereafter Ledwin Enterprises, Inc. learned that Noble allegedly replaced the $15,000.00 check bearing number 0098 with two checks in the amount of $1,000.00 and $14,000.

645.    That on July 9, 2014 or shortly thereafter Ledwin Enterprises, Inc. learned that Ramirez was only going to negotiate the $1,000.00 check and withhold the deposit of Noble's alleged $14,000.00 check.

646.    That upon learning that Noble replaced the $15,000.00 check with the alleged $1,000.00 and $14,000.00 check, Ledwin Enterprises, Inc. was under a duty to disclose that fact to the Church.

647.    Ledwin Enterprises, Inc. was under a duty to the Church to disclose that Ramirez was only going to negotiate the $1,000.00 check upon learning same.

648.    Ledwin Enterprises, Inc. was under a duty to the Church to disclose that Ramirez was going to withhold depositing the $14,000.00 check upon learning same.

649.    Ledwin Enterprises, Inc. breached its fiduciary duty to the Church when Oviedofailed to disclose the facts surrounding Noble's contract deposit on the July 9, 2014 contract.

650.    Ledwin Enterprises, Inc. was under a duty to inform Staatz that Noble did not transmit the $15,000.00 check to Ramirez when he discovered same.

651.    Ledwin Enterprises, Inc. breached its fiduciary duty to Staatz when Oviedo failed to disclose that Noble had "pulled back" the $15,000.00 check bearing number 0098.

652.    That on July 9, 2014 or shortly thereafter Ledwin Enterprises, Inc. learned that Noble allegedly replaced the $15,000.00 check bearing number 0098 with two checks in the amount of $1,000.00 and $14,000.

653.    That on July 9, 2014 or shortly thereafter Ledwin Enterprises, Inc. learned that Ramirez was only going to negotiate the $1,000.00 check and withhold the deposit of Noble's alleged $14,000.00 check.

654.    That upon learning that Noble replaced the $15,000.00 check with the alleged $1,000.00 and $14,000.00 check, Ledwin Enterprises, Inc. was under a duty to disclose that fact to Staatz.

655.    Ledwin Enterprises, Inc. was under a duty to Staatz to disclose that Ramirez was only going to negotiate the $1,000.00 check upon learning same.

656.    Ledwin Enterprises, Inc. was under a duty to Staatz to disclose that Ramirez was going to withhold depositing the $14,000.00 check upon learning same.

657.    Ledwin Enterprises, Inc. breached its fiduciary duty to Staatz when Oviedo failed to disclose the facts surrounding Noble's contract deposit on the July 9, 2014 contract.

658.    That Ledwin Enterprises, Inc. 's breach of this fiduciary duty in failing to disclose the goings on with the July 9, 2014 contract kept the Church and/or Staatz from exercising their best business judgment.

659.    That had Ledwin Enterprises, Inc.  disclosed the goings on with the July 9, 2014 contract deposit the Church and/or Staatz would have looked for a more suitable purchaser.

660.    That Ledwin Enterprises, Inc.  further breached its fiduciary duty to the Church when Oviedo disclosed the appraisal report to Noble to drive the contract price down to $500,000.00.

661.    That Ledwin Enterprises, Inc.  breached his fiduciary duty to the Church when Oviedo disclosed the appraisal report to Noble's attorney to drive the contract price down to $500,000.00.

662.    That Ledwin Enterprises, Inc.  further breached his fiduciary duty to Staatz when Oviedo disclosed the appraisal report to Noble to drive the contract price down to $500,000.00.

663.    That Ledwin Enterprises, Inc.  breached its fiduciary duty to Staatz when Oviedo disclosed the appraisal report to Noble's attorney to drive the contract price down to $500,000.00.

664.    Ledwin Enterprises, Inc.  breached itws fiduciary duty to the Church when Oviedo instructed Ramirez not to file the OAG paper work.

665.    Ledwin Enterprises, Inc.  breached its fiduciary duty to Staatz when Oviedo instructed Ramirez not to file the OAG paper work.

666.    Shortly after Ledwin Enterprises, Inc. 's disclosure and/or transmittal of the appraisal and/or construction estimate to Noble and/or her representatives Noble demanded a new contract price.

667.    At the time of the second contract on July 9, 2015 Ledwin Enterprises, Inc.  again had an opportunity to disclose its dual representation of Noble.

668.    Ledwin Enterprises, Inc.  again failed to disclose to the Church and/or Staatz that it was also Noble's broker.

669.    Ledwin Enterprises, Inc. 's failure to disclose this dual representation was yet another breach of its fiduciary duty to the Church.

670.    Ledwin Enterprises, Inc.'s failure to disclose this dual representation was yet another breach of its fiduciary duty to Staatz.

671.    That on July 9, 2015 a second contract of sale entered into between Noble and the Church.

672.    The July 9, 2015 contract defined the down payment as $15,000.00.

673.    That Ledwin Enterprises, Inc. was under a duty to ensure the $15,000.00 contract down payment was made.

674.    That Ledwin Enterprises, Inc. told the Church and/or Staatz that Noble had made the $15,000.00 contract deposit in 2014.

675.    That Ledwin Enterprises, Inc.'s statement made through Oviedo to the Church and/or Staatz regarding the $15,000.00 contract deposit was false.

676.    That Ledwin Enterprises, Inc. had an opportunity to discuss with the Church and Staatz the prior goings on with the prior $15,000.00 contract deposit.

677.    Ledwin Enterprises, Inc. failed to the disclose to the Church on July 9, 2015 the goings on with the prior $15,000.00 contract deposit.

678.    Ledwin Enterprises, Inc. concealed the facts regarding the July 9, 2014 contract so that the Church would not seek out another purchaser and broker.

679.    Ledwin Enterprises, Inc.'s failure to disclose the goings on with the $15,000.00 contract deposit on July 9, 2015 or thereafter was another breach of its fiduciary duty to the Church and/or Staatz.

680.    Implied in every contract is the State of New York is a warranty of good faith and fair dealing.

681.    Ledwin Enterprises, Inc. violated that warranty of good faith and fair dealing as detailed above.

682.    That the Church and/or Staatz have been damaged by Ledwin Enterprises, Inc. 's conduct from 2014 through today.

683.    That the Church and/or Staatz were deprived from receiving the fair market value for the property due to Ledwin Enterprises, Inc. 's conduct as detailed above.

684.    That Ledwin Enterprises, Inc. is obligated to the Church and/or Staatz for the fair market value of the property should the Court order the sale to go through.

685.    That should the Court order defendants to go through with the sale Ledwin Enterprises, Inc. is obligated to the Church for the difference between the fair market value and the contract price of $500,000.00.

686.    That upon information and belief, in its current state the property is worth $1,100,000.00.

687.    That upon information and belief, the property has a fixed and/or improved value of $3,000,000.00.

688.    In light of the above, the Church and/or Staatz have been damaged in an amount that is between $600,000.00 and $2,500,000.00.

**AS AND FOR A SIXTH CAUSE OF ACTION**

**AGAINST LEDWIN ENTERPRISES, INC.  FOR FRAUD**

689.    Defendants – Third party plaintiffs repeat and reiterate each and every paragraph set forth above as being more fully set forth below.

690.    Ledwin Enterprises, Inc. in is responsible for the fraudulent acts committed by Oviedo.

691.    Oviedo committed and act of fraud when he failed to disclose to the Church that he was Noble's real estate broker on July 9, 2014.

692.    Oviedo committed and act of deceit when he failed to disclose to the Church that he was Noble's real estate broker on July 9, 2014.

693.    Oviedo committed and act of fraud when he failed to disclose to Staatz that he was Noble's real estate broker on July 9, 2014.

694.    Oviedo committed and act of deceit when he failed to disclose to Staatz that he was Noble's real estate broker on July 9, 2014.

695.    Oviedo committed and act of fraud when he failed to disclose to the Church that he was Noble's real estate broker on July 9, 2015.

696.    Oviedo committed and act of deceit when he failed to disclose to the Church that he was Noble's real estate broker on July 9, 2015.

697.    Oviedo committed and act of fraud when he failed to disclose to Staatz that he was Noble's real estate broker on July 9, 2015.

698.    Oviedo committed and act of deceit when he failed to disclose to Staatz that he was Noble's real estate broker on July 9, 2015.

699.    Oviedo committed and act of fraud when he failed to disclose to the Church that he was Noble's real estate broker on the 2017 contract.

700.    Oviedo committed and act of deceit when he failed to disclose to the Church that he was Noble's real estate broker on the 2017 contract.

701.    Oviedo committed and act of fraud when he failed to disclose to Staatz that he was Noble's real estate broker on the 2017 contract.

702.    Oviedo committed and act of deceit when he failed to disclose to Staatz that he was Noble's real estate broker on the 2017 contract.

703.    Oviedo made an untrue statement when he told Staatz on July 9, 2014 that Noble had given the $15,000.00 contract deposit.

704.    Oviedo made an untrue statement when he told Staatz on July 9, 2015 that Noble's contract deposit was in Ramirez's escrow account.

705.    Oviedo's statements to Staatz regarding the $15,000.00 contract deposit were false.

706.    Oviedo knew his statements regarding the $15,000.00 contract deposit were false.

707.    That Oviedo's concealment from the Church regarding the facts surrounding the July 9, 2014 contract deposit was an act of fraud.

708.    That Oviedo's concealment from Staatz regarding the July 9, 2014 contract deposit was an act of deceit.

709.    That Oviedo's concealment from the Church regarding the facts surrounding the July 9, 2015 contract deposit was an act of fraud.

710.    That Oviedo's concealment from Staatz regarding the July 9, 2015 contract deposit was an act of deceit.

711.    That the Church and/or Staatz have been damaged by Oviedo's fraudulent statements and conduct from 2014 through today.

712.    That the Church and/or Staatz were deprived from receiving the fair market value for the property due to Oviedo's fraudulent conduct as detailed above.

713.    That Oviedo is obligated to the Church and/or Staatz for the fair market value of the property should the Court order the sale to go through.

714.    That should the Court order defendants to go through with the sale Oviedo is obligated to the Church for the difference between the fair market value and the contract price of $500,000.00.

715.    That upon information and belief, in its current state the property is worth $1,100,000.00.

716.    That upon information and belief, the property has a fixed and/or improved value of $3,000,000.00.

717.    In light of the above, the Church and/or Staatz have been damaged in an amount that is between $600,000.00 and $2,500,000.00.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**AGAINST**
**JAMIE RAMIREZ ESQ.**
**FOR BREACH OF CONTRACT**
**&**
**FIDUCIARY DUTIES**

718.    Defendants – Third party plaintiffs repeat and reiterate each and every paragraph set forth above as being more fully set forth below.

719.    That Jamie Ramirez ("Ramirez") is attorney.

720.    That Ramirez is an attorney duly licensed to practice law in the State of New York.

721.    That as an attorney in the State of New York Ramirez is required to disclose to his clients any conflicts of interest.

722.    That as an attorney in the State of New York Ramirez owes a duty of loyalty to his clients.

723.    That as an attorney in the State of New York Ramirez owes his clients a duty of dealing truthfully and honestly.

724.    That as an attorney in the State of New York Ramirez owes his clients a duty of communication.

725.    Ramirez is required to be retained prior to performing any work on behalf of a client.

726.    Ramirez is required to send a client either a retainer or a letter of engagement in all non-personal injury matters in the State of New York.

727.    That Ramirez was retained by Noble to represent her regarding the purchase of 2176 Grand Concourse.

728.    That on or about June 26, 2014 Ramirez claimed to Oviedo that he was the attorney for the Church.

729.    That on or about June 26, 2014 Ramirez claimed to Oviedo that he was the attorney for Staatz.

730.    That on or about June 26, 2014 Oviedo transmitted to Ramirez a Purchase memorandum so that he prepare a contract of sale for 2176 Grand Concourse, Bronx, New York.

731.    That Ramirez never had Staatz sign a retainer agreement to represent her or in the church with regard to the sale of the subject property.

732.    That Ramirez never had the Church sign a retainer agreement to the represent it with regard to the subject property.

733.    That Ramirez never issued a letter of engagement to Staatz regarding the subject property.

734.    That Ramirez never issued a letter of engagement to the Church regarding the subject property.

735.    That prior to July 9, 2014 Ramirez prepared a contract of sale for 2176 Grand Concourse.

736.    That prior to July 9, 2014 Ramirez prepared the contract of sale that appears as Exhibit "K" to this complaint.

737.    Ramirez defined himself as the attorney for the seller in the July 9, 2014 contract of sale which is annexed hereto as Exhibit "K".

738.    That Ramirez accepted a $15,000.00 check from Noble which was to serve as the deposit on the contract of sale for the subject property.

739.    Below is a copy of the $15,000.00 check Noble gave to Ramirez:



740.    That Ramirez was supposed to deposit the $15,000.00 check given by Noble as the Contract of Sale Deposit into his IOLA or Escrow account.

741.    That Ramirez never deposited the $15,000.00 down payment check.

742.    That Ramirez never wrote to the Church to inform it that it was not depositing the $15,000.00 deposit check.

743.    That Ramirez never wrote Staatz to inform her that he was not depositing the $15,000.00 Deposit check.

744.    That Ramirez never informed the Church in 2014 that he did not deposit Noble's $15,000.00 down payment Check.

745.    That Ramirez never informed the Church in 2015 that he did not deposit Noble's $15,000.00 down payment Check.

746.    That Ramirez never informed the Church in 2016 that he did not deposit Noble's $15,000.00 down payment Check.

747.    That Ramirez never informed the Church in 2017 that he did not deposit Noble's $15,000.00 down payment Check.

748.    That Ramirez never informed Staatz in 2014 that he did not deposit Noble's $15,000.00 down payment Check.

749.    That Ramirez never informed Staatz  in 2015 that he did not deposit Noble's $15,000.00 down payment Check.

750.    That Ramirez never informed Staatz in 2016 that he did not deposit Noble's $15,000.00 down payment Check.

751.    That Ramirez never informed Staatz in 2017 that he did not deposit Noble's $15,000.00 down payment Check.

752.    That Ramirez never informed the Church in 2014 that Noble allegedly replaced the $15,000.00 down payment check with two checks in the amounts of $1,000.00 and $14,000.00 which were to serve as the new down payment.

753.    That Ramirez never informed the Church in 2015 that Noble allegedly replaced the $15,000.00 down payment check with two checks in the amounts of $1,000.00 and $14,000.00 which were to serve as the new down payment.

754.    That Ramirez never informed the Church in 2016 that Noble allegedly replaced the $15,000.00 down payment check with two checks in the amounts of $1,000.00 and $14,000.00 which were to serve as the new down payment.

755.    That Ramirez never informed the Church in 2017 that Noble allegedly replaced the $15,000.00 down payment check with two checks in the amounts of $1,000.00 and $14,000.00 which were to serve as the new down payment.

756.    That Ramirez never informed  Staatz in 2014 that Noble allegedly replaced the $15,000.00 down payment check with two checks in the amounts of $1,000.00 and $14,000.00 which were to serve as the new down payment.

757.    That Ramirez never informed Staatz in 2015 that Noble allegedly replaced the $15,000.00 down payment check with two checks in the amounts of $1,000.00 and $14,000.00 which were to serve as the new down payment.

758.    That Ramirez never informed Staatz in 2016 that Noble allegedly replaced the $15,000.00 down payment check with two checks in the amounts of $1,000.00 and $14,000.00 which were to serve as the new down payment.

759.    That Ramirez never informed Staatz in 2017 that Noble allegedly replaced the $15,000.00 down payment check with two checks in the amounts of $1,000.00 and $14,000.00 which were to serve as the new down payment.

760.    That Noble alleged in her first complaint that Ramirez negotiated the $1,000.00 down payment check in 2014.

761.    That Ramirez never negotiated the $1,000.00 down payment check given by Noble in 2014.

762.    That Noble alleged in her first complaint that Ramirez told her that he would not negotiate the $14,000.00 check until he completed the OAG paper work.

763.    That Ramirez never informed the Church that he was only depositing a $1,000.00 check from Noble on the July 9, 2014 contract.

764.    That Ramirez never informed Staatz that he was only depositing the $1,000.00 check from Noble on the July 9, 2014 contract.

765.    That Ramirez never informed the Church that he was not going to deposit the $14,000.00 check from Noble given as a deposit on the July 9, 2014 contract.

766.    That Ramirez never informed Staatz that he was not going to deposit the $14,000.00 check from Noble given as a deposit on the July 9, 2014 contract.

767.    That Ramirez violated his fiduciary duties and obligations to the Church when he did not deposit the $15,000.00 down payment Check.

768.    That Ramirez violated his fiduciary duties and obligations to Staatz when he did not deposit the $15,000.00 down payment Check.

769.    That Ramirez violated his fiduciary duties and obligations to the Church when he failed to inform the Church that he was not going to deposit $15,000.00 down payment Check.

770.    That Ramirez violated his fiduciary duties and obligations to Staatz when he failed to inform the Church that he was not going to deposit $15,000.00 down payment Check.

771.    That Ramirez violated his fiduciary duties and obligations to the Church when he failed to inform the Church that Noble replaced the $15,000.00 down payment Check with two checks in the amounts of $1,000.00 and $14,000.00.

772.    That Ramirez violated his fiduciary duties and obligations to Staatz when he failed to inform Staatz that Noble replaced the $15,000.00 down payment Check with two checks in the amounts of $1,000.00 and $14,000.00.

773.    That Ramirez violated his fiduciary duties and obligations to the Church when he failed to deposit the alleged $1,000.00 down payment Check.

774.    That Ramirez violated his fiduciary duties and obligations to Staatz when he failed to deposit the alleged $1,000.00 down payment Check.

775.    That Ramirez violated his fiduciary duties and obligations to the Church when he failed to deposit the alleged $14,000.00 down payment Check.

776.    That Ramirez violated his fiduciary duties and obligations to Staatz when he failed to deposit the alleged $14,000.00 down payment Check.

777.    That Ramirez received instructions from Noble not to negotiate the $15,000.00 check.

778.    That Noble told Ramirez not to negotiate the $15,000.00 check because she lacked sufficient funds.

779.    That Ramirez received instructions from Oviedo not to negotiate the $15,000.00 check.

780.    That Oviedo told Ramirez not to negotiate the $15,000.00 check because Noble lacked sufficient funds.

781.    That Ramirez violated his fiduciary duty to the Church when he failed to inform the Church that Noble did not have the required funds to negotiate the $15,000.00 down payment check.

782.    That Ramirez violated his fiduciary duty to Staatz when he failed to inform her that Noble did not have the required funds to negotiate the $15,000.00 down payment check.

783.    That Ramirez violated his fiduciary duty to the Church when he followed instructions from Noble.

784.    That Ramirez violated his fiduciary duty to Staatz when he followed instructions from Noble.

785.    That Ramirez violated his fiduciary duty to the Church when he followed instructions from Oviedo which were contrary to the expectations of the Church.

786.    That Ramirez violated his fiduciary duty to Staatz when he followed instructions from Oviedo which were contrary to the expectations of Staatz.

787.    That Ramirez acted for the benefit of Noble while having the Church believe he was their lawyer.

788.    That Ramirez acted for the benefit of Noble while have Staatz believe he was her lawyer.

789.    That Ramirez conspired with Noble against the Church to drive the down the price of the property for the benefit of Noble.

790.    That Ramirez convinced the Church the property was only $500,000.00 based upon the information he received from Oviedo.

791.    That Ramirez prepared a second contract of sale between Noble and the Church for the subject property in the amount of $500,000.00.

792.    That on or about July 9, 2015 Ramirez told the Church that he was holding $15,000.00 in his escrow account that Noble had given him on July 9, 2014 contract.

793.    That on or about July 9, 2015 Ramirez told Staatz that he was holding $15,000.00 in his escrow account that Noble had given him on July 9, 2014 contract.

794.    That Ramirez's statement to the Church and Staatz on or about July 9, 2015 convinced the Church and Staatz to enter into the second contract of sale with Noble.

795.    That Ramirez's statement that he was holding $15,000.00 in his escrow account for the Church was false.

796.    That Ramirez violated his fiduciary duty to the Church on or July 9, 2015 when he falsely stated that he was holding $15,000.00 in his escrow account for the Church.

797.    That Ramirez violated his fiduciary duty to Staatz on or July 9, 2015 when he falsely stated that he was holding $15,000.00 in his escrow account for the Church.

798.    That Ramirez concealed the fact he was representing Noble regarding the sale and/or purchase of the subject property until November 2, 2017.

799.    That on November 2, 2017 Ramirez would write to Serge Joseph the following letter (Exhibit "A"):

This shall serve to confirm that this office represents Maria T. Noble whom entered into contract with the Mt. Olivet Church for the purchase of the above referenced premises. It is my understanding that your office has taken over the file. The contract was only subject to appropriate court approval. Please note that the purchaser stands ready, willing and able to close pursuant to the terms of the contract of sale.

Request is hereby made for your office to provide evidence that an application has been filed and the status of said application. Looking forward to closing this transaction promptly.

Thank you for your attention to this matter, I remain

Very truly yours,



Jaime Ramirez, Esq.

Cc: Maria T. Noble

800.    That Ramirez violated his fiduciary duty to the Church when he failed to disclose his dual representation in this matter.

801.    That as a direct result of Ramirez's advice, conduct, and statements the Church and Staatz did not seek to get another broker.

802.    That as a direct result of Ramirez's advice, conduct, and statements the Church and Staatz did not seek to get another purchaser.

803.    That Ramirez violated his fiduciary duty to Staatz when he failed to disclose his dual representation in this matter.

804.    That Ramirez violated his fiduciary duty to the Church and Staatz when he failed to complete the required paper work.

805.    That Ramirez inform the Church in June of 2014 that he had the competence to complete the OAG paper work and get Court approval for the sale.

806.    That the Church and/or Staatz have been damaged by Ramirez's violation of his fiduciary duties and fraudulent statements and misconduct from 2014 through today.

807.    That the Church and/or Staatz were deprived from receiving the fair market value for the property due to Ramirez's fraudulent conduct as detailed above.

808.    That Ramirez is obligated to the Church and/or Staatz for the fair market value of the property should the Court order the sale to go through.

809.    That should the Court order defendants to go through with the sale Ramirez is obligated to the Church for the difference between the fair market value and the contract price of $500,000.00.

810.    That upon information and belief, in its current state the property is worth $1,100,000.00.

811.    That upon information and belief, the property has a fixed and/or improved value of $3,000,000.00.

812.    In light of the above, the Church and/or Staatz have been damaged in an amount that is between $600,000.00 and $2,500,000.00.

### AS AND FOR A EIGHTH CAUSE OF ACTION
### AGAINST
### LAURA C. BROWNE ESQ.
### FOR BREACH OF CONTRACT
### &
### FIDUCIARY DUTIES

813.    Defendants – Third party plaintiffs repeat and reiterate each and every paragraph set forth above as being more fully set forth below.

814.    That LAURA C. BROWNE, ESQ. ("Browne") is attorney.

815.    That Browne is an attorney duly licensed to practice law in the State of New York.

816.    That as an attorney in the State of New York Browne is required to disclose to her clients any conflicts of interest.

817.    That as an attorney in the State of New York Browne owes a duty of loyalty to her clients.

818.    That as an attorney in the State of New York Browne owes her clients a duty of dealing truthfully and honestly.

819.    That as an attorney in the State of New York Browne owes her clients a duty of communication.

820.    Browne is required to be retained prior to performing any work on behalf of a client.

821.    Browne is required to send a client either a retainer or a letter of engagement in all non-personal injury matters in the State of New York.

822.    That Browne was retained by Noble to represent her regarding the purchase of 2176 Grand Concourse.

823.    That Browne knew that Noble was the owner / sole member of Urbany Investment Group LLc.

824.    That Browne received a retaining check from Urbany in the amount of $1,000.00 dated May 9, 2017.

825.    That Browne received the following check from Noble (Exhibit "P"):



826.    That Browne never disclosed to the Church that Noble had retained her prior to the May 9, 2017 contract of sale.

827.    That Browne never disclosed to Staatz that Noble had retained her prior to the May 9, 2017 contract of sale.

828.    That Browne claimed to be the attorney for the Church.

829.    That Browne claimed to be the attorney for Staatz.

830.    That Browne never had Staatz sign a retainer agreement to represent her with regard to the sale of the subject property.

831.    That Browne never had the Church sign a retainer agreement to the represent it with regard to the subject property.

832.    That Browne never had Staatz sign a retainer agreement to the represent her with regard to the subject property.

833.    That Browne never issued a letter of engagement to Staatz regarding the subject property.

834.    That Browne never issued a letter of engagement to the Church regarding the subject property.

835.    That prior to May 9, 2017 Browne prepared a contract of sale for 2176 Grand Concourse.

836.    That prior to May 9, 2017 Browne prepared the contract of sale that appears as Exhibit "R" to this complaint.

837.    That Browne received from Ramirez the $15,000.00 he was holding in his escrow account for the benefit of the Church.

838.    That Browne deposited the $15,000.00 check from Ramirez into her escrow account.

839.    That Browne received from Ramirez the $1,000.00 he was holding in his escrow account for the benefit of the Church.

840.    That Browne deposited the $1,000.00 check she received from Ramirez into her escrow account.

841.    That Brown received a complete file from Ramirez regarding his representation of the Church and Staatz.

842.    Browne defined herself as the attorney for the seller in the May 9, 2017 contract of sale which is annexed hereto as Exhibit "R".

843.    Paragraph 17. of Schedule D of the 2017 contract (Exhibit "R") defined the addresses to which notice was to be sent:

17. Address for notices (§15.01):
   If to Seller:
   LAURA C. BROWNE, ESQ.
   1938 WILLIAMSBRIDGE ROAD, BRONX, NEW YORK 10461

      with a copy to:
   JAIME RAMIREZ, ESQ.
   3058 CROSSBRONX EXPRESSWAY, STE 1, BRONX, NEW YORK 10465

   If to Purchaser:


      with a copy to:

844.    That Browne received a default notice from Noble under the 2017 contract.

845.    That Browne received a default notice from Ortiz and Ortiz in compliance with the 2017 contract.

846.    That Browne never informed the Church that Noble had sent her a default notice under the 2017 contract.

847.    That Browne never informed Staatz that Noble had sent her a default notice under the 2017 contract.

848.    That Browne never informed the Church that Ortiz & Ortiz had sent her a default notice under the 2017 contract.

849.    That Browne never informed Staatz that Ortiz & Ortiz had sent her a default notice under the 2017 contract.

850.    That Browne agreed to present the required paper work to the OAG's office to get approval for the sale of the property.

851.    That Browne never completed the OAG paper work necessary for the sale of the subject property.

852.    That Browne informed Noble that Staatz had fired her.

853.    That Browne informed Noble that the Church had fired her.

854.    That Browne never sent a letter to Staatz acknowledging that she had been terminated.

855.    That Browne never sent a letter to the Church asserting that Staatz had terminated her.

856.    That Browne never sent a letter to Ramirez that Staatz had terminated her.

857.    That Browne never sent Noble a letter asserting that Staatz had terminated her.

858.    That Browne never sent a letter to Ortiz & Ortiz that Staatz had terminated her.

859.    That Browne never deposited the $15,000.00 down payment check.

860.    That Browne never wrote to the Church to inform it that there was no $15,000.00 down payment check from Noble regarding the 1st Contract.

861.    That Browne never wrote Staatz to inform her that he was not depositing the $15,000.00 down payment check from Noble regarding the 1st Contract.

862.    That Browne as an attorney should have known that due to Noble's failure to provide the required consideration meant no contract was formed on July 9, 2014.

863.    That Browne was under a duty to inform the Church that Noble had breached the July 9, 2014 contract by failing to give the requisite deposit.

864.    That Browne was under a duty to inform Staatz that Noble had breached the July 9, 2014 contract by failing to give the requisite deposit.

865.    That Browne as an attorney should have known that due to Noble's failure to provide the required consideration meant no contract was formed on July 9, 2015.

866.    That Browne was under a duty to inform the Church that Noble had breached the July 9, 2015 contract by failing to give the requisite deposit.

867.    That Browne was under a duty to inform Staatz that Noble had breached the July 9, 2015 contract by failing to give the requisite deposit.

868.    That Browne violated her duty to the Church and/or Staatz by concealing the fact Noble had breach the July 9, 2014 contract.

869.    That Browne violated her duty to the Church and/or Staatz by concealing the fact Noble had breached the July 9, 2015 contract.

870.    That Browne concealed facts from the Church and/or Staatz for the benefit of Noble.

871.    Had Browne informed the Church that Noble had breached the July 9, 2014 contract they never would have entered into the 2017 contract.

872.    Had Brown informed Staatz that Noble had breached the July 9, 2015 contract she would have never have signed same.

873.    That Browne owed the Church a duty to recommend that they get a buyer other than Noble due to her prior breaches.

874.    That Browne was taking orders from Noble.

875.    That Browne was taking orders from Oviedo.

876.    That Browne violated her fiduciary duty to the Church when she followed instructions from Noble that were contrary to the Church's best interests.

877.    That Browne violated her fiduciary to Staatz when she followed instructions from Oviedo that were contrary to Staatz's best interests.

878.    That Browne acted for the benefit of Noble while having the Church believe she was their lawyer.

879.    That Browne acted for the benefit of Noble while have Staatz believe she was her lawyer.

880.    That Browne knew Ramirez was representing Noble.

881.    That Browne had a duty to disclose to the Church that Ramirez was in a conflict of interest.

882.    That Browne had a duty to disclose to Staatz that Ramirez was in a conflict of interest.

883.    That Browne concealed the fact he was representing Noble regarding the sale and/or purchase of the subject property.

884.    That there is testimony that Browne was Noble's attorney.

885.    That Browne violated her fiduciary duty to the Church when he failed to disclose her dual representation in this matter.

886.    That Browne stated to Staatz that she knew Oviedo to be an honest broker.

887.    That Browne knew Oviedo was representing both Noble and the Church on this transaction.

888.    That Browne failed to disclose Oviedo's dual representation to the Church.

889.    That Browne failed to disclose Oviedo's dual representation to the Church.

890.    That Browne violated her fiduciary duty to the Church when she failed to disclose Oviedo's dual representation.

891.    That Browne violated her fiduciary duty to Staatz when she failed to disclose Oviedo's dual representation.

892.    That as a direct result of Browne's advice, conduct, and statements the Church and Staatz did not seek to get another broker.

893.    That as a direct result of Browne's advice, conduct, and statements the Church and Staatz did not seek to get another purchaser.

894.    That Browne violated her fiduciary duty to Staatz when he failed to disclose her dual representation in this matter.

895.    That Browne violated her fiduciary duty to Staatz when he failed to disclose her dual representation in other matters.

896.    That Browne violated his fiduciary duty to the Church and Staatz when she failed to complete the required paper work.

897.    That Browne inform the Church in 2017 that she had the competence to complete the OAG paper work and get Court approval for the sale.

898.    That the Church and/or Staatz have been damaged by Browne's violation of his fiduciary duties and fraudulent statements and misconduct from 2017 through today.

899.    That the Church and/or Staatz were deprived from receiving the fair market value for the property due to Browne's fraudulent conduct as detailed above.

900.    That Browne is obligated to the Church and/or Staatz for the fair market value of the property should the Court order the sale to go through.

901.    That should the Court order defendants to go through with the sale Browne is obligated to the Church for the difference between the fair market value and the contract price of $500,000.00.

902.    That upon information and belief, in its current state the property is worth $1,100,000.00.

903.    That upon information and belief, the property has a fixed and/or improved value of $3,000,000.00.

904.    In light of the above, the Church and/or Staatz have been damaged in an amount that is between $600,000.00 and $2,500,000.00.

## AS AND FOR A NINTH CAUSE OF ACTION
## AGAINST
## OVIEDO, RAMIREZ & BROWNE
## CONSPIRACY TO COMMIT FRAUD

905.    Defendants – Third party plaintiffs repeat and reiterate each and every paragraph set forth above as being more fully set forth below.

906.    That Ramirez, Oviedo, and Browne conspired to conceal relevant information from the Church so as to put Noble in a superior bargaining position to the Church.

907.    That Ramirez, Oviedo, and Browne all conspired to conceal relevant information so that Noble could acquire the property at a discounted price.

908.    That Ramirez, Oviedo, and Browne all conspired to conceal information from the Church so that it would not seek out a more suitable buyer.

909.    That Ramirez, Oviedo, and Browne all conspired to not use their best business judgments for the benefit of their client the Church.

910.    That as detailed above Ramirez actively deceived the Church.

911.    That as detailed above Ramirez actively deceived Staatz.

912.    That as detailed above Oviedo actively deceived the Church.

913.    That as detailed above Oviedo actively deceived Staatz.

914.    That as detailed above Browne actively deceived the Church.

915.    That as detailed above Browne actively deceived Staatz.

916.    The fact that three professionals so blatantly disregarded their fiduciary duties to the Church and Staatz is evidence of their concerted efforts.

917.    Had any one of them acted within the bounds of professionalism they would have recommended the Church and Staatz not sell to Noble.

918.    That Oviedo, Ramirez and Browne all conspired to violate their fiduciary duties to the Church when they followed instructions from Noble that were contrary to the Church's best interests.

919.    That Oviedo, Ramirez and Browne all conspired to violate their fiduciary duties to Staatz when they followed instructions from Noble that were contrary to the Staatz's best interests.

920.    That Oviedo, Ramirez and Browne all conspired to act for the benefit of Noble while claiming to the Church that they were the Church's representatives.

921.    That Oviedo, Ramirez and Browne all conspired to act for the benefit of Noble while claiming to Staatz that they were her representatives.

922.    That Oviedo, Ramirez and Browne all conspired to hide and/or conceal the facts surrounding the July 9, 2014 contract deposit from the Church.

923.    That Oviedo, Ramirez and Browne all conspired to hide and/or conceal the facts surrounding the July 9, 2014 contract deposit from Staatz.

924.    That Oviedo, Ramirez and Browne all conspired to hide and/or conceal the facts surrounding the July 9, 2015 contract deposit from the Church.

925.    That Oviedo, Ramirez and Browne all conspired to hide and/or conceal the facts surrounding the July 9, 2015 contract deposit from Staatz.

926.    That Oviedo, Ramirez and/or Browne all conspired to deceive the Church into believing that Noble had performed under the July 9, 2014 contract.

927.    That Oviedo, Ramirez and/or Browne all conspired to deceive Staatz into believing that Noble had performed under the July 9, 2014 contract.

928.    That Oviedo, Ramirez and/or Browne all conspired to deceive the Church into believing that Noble had performed under the July 9, 2015 contract.

929.    That Oviedo, Ramirez and/or Browne all conspired to deceive Staatz into believing that Noble had performed under the July 9, 2015 contract.

930.    But for the concerted acts of Oviedo, Ramirez and/or Browne the Church would have sought out a more suitable purchaser.

931.    But for the concerted acts of Oviedo, Ramirez and/or Browne the Church would have received a far higher contract price.

932.    That Oviedo, Ramirez and Browne all actively and conspired to conceal their conflict of interest from the Church.

933.    That Oviedo, Ramirez and Browne all actively and conspired to conceal their conflict of interest from the Church.

934.    That each Oviedo, Ramirez and Browne agreed amongst themselves not to inform the Church of their dual representations.

935.    That each Oviedo, Ramirez and Browne agreed amongst themselves to conceal the above referenced relevant facts from the Church and Staatz.

936.    That each Oviedo, Ramirez and Browne agreed amongst themselves to conceal Noble's dishonest acts facts from the Church and Staatz so as to benefit noble at the expense of the Church and/or Staatz.

937.    That the Church and/or Staatz have been damaged by Oviedo's, Ramirez's, and Browne's concerted violation of their fiduciary duties and fraudulent statements and misconduct from 2014 through today.

938.    That the Church and/or Staatz were deprived from receiving the fair market value for the property due to Oviedo's, Ramirez's and Browne's concerted and agreed upon fraudulent conduct as detailed above.

939.    That Oviedo, Ramirez and Browne are obligated to the Church and/or Staatz for the fair market value of the property should the Court order the sale to go through.

940.    That should the Court order defendants to go through with the sale Oviedo, Ramirez, and Browne are obligated to the Church for the difference between the fair market value and the contract price of $500,000.00.

941.    That upon information and belief, in its current state the property is worth $1,100,000.00.

942.    That upon information and belief, the property has a fixed and/or improved value of $3,000,000.00.

943.    In light of the above, the Church and/or Staatz have been damaged in an amount that is between $600,000.00 and $2,500,000.00.

WHEREFORE, defendants – third party plaintiffs requests judgment as follows:

1.  Declaratory Judgment that the July 9, 2014 contract is null and void;

2.  Declaratory Judgment that the July 9, 2015 contract is null and void;

3.  Declaratory Judgment that the action of Noble's representatives render the 2017 contract null and void;

4.  Judgment on the first, second, third, fourth, fifth, sixth, seventh, eighth and/or ninth cause of action in an amount exceeding $1,100,000.00; and

5.  For any further and just relief this Court deems appropriate.

Dated:      Forest Hills, New York
            April 20, 2020


                                _/David J. Broderick_____
                                DAVID J. BRODERICK
                                DAVID J. BRODERICK, LLC
                                Attorneys for Defendant(s)
                                Mt. Olivet Church, Inc.
                                ARACELIS STAATZ
                                70-20 Austin Street

Suite 111
Forest Hills, New York 11375
(718) 830-0700