```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
MARIA TERESA NOBLE,

                Plaintiff,

        - against -

MT. OLIVET CHURCH, INC. and ARACELIS
STAATZ, as Trustee of Mt. Olivet          MEMORANDUM AND ORDER
Church,
                                          18 Civ. 7871 (NRB)
                Defendants,
                Third-Party Plaintiffs,


        - against -

LEDWIN OVIEDO, LEDWIN ENTERPRISES
INC., JAIME RAMIREZ, ESQ., and LAURA
C. BROWNE, ESQ.,

                Third-party Defendants.

----------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Defendants and third-party plaintiffs Mt. Olivet Church, Inc. and its director, Aracelis Staatz (together, the "Church"), brought suit against third-party defendants Ledwin Oviedo, Ledwin Enterprises Inc., Jaime Ramirez and Laura C. Browne ("Browne") asserting claims of, <u>inter alia</u>, breach of contract, breach of fiduciary duty, fraud, and conspiracy to commit fraud. Browne moved to dismiss the Church's claims against her. For the following reasons, Browne's motion to dismiss is denied.

**BACKGROUND**

**1. Factual Allegations**[1]

This case arises out of a contract for sale of the Church's real property (the "Property") to plaintiff Maria Noble. According to the Amended Third-Party Complaint, ECF No. 47 (the "ATPC"),[2] in May of 2014, the Church[3] began to explore selling the Property. ATPC ¶ 11. The Church approached Oviedo, a real estate broker with an office across the street from the Property, and retained him as the Church's broker. Id. ¶ 12. On June 26, 2014, Oviedo convinced the Church to sell the Property to Noble – allegedly Oviedo's business colleague and romantic partner – for $600,000. Id. ¶¶ 3, 13. According to the Church, Oviedo was acting as Noble's broker as well but did not disclose this fact to the Church. Id. ¶¶ 204-206. Noble and Oviedo suggested to the Church that the legal work prior to closing – which here, included obtaining approvals from the state Office of the Attorney General ("OAG") – could be completed by Ramirez, an attorney who had worked

---

[1] The following facts, which are drawn primarily from the Church's Amended Third-Party Complaint, are accepted as true for purposes of the Court's ruling on Browne's motion to dismiss. The Court draws all reasonable inferences in the Church's favor. See Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012).
[2] The ATPC, containing 1,071 paragraphs, is hardly the model of a pleading in conformity with Rule 8's injunction that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Nevertheless, given the age of this case despite the Court's efforts at case management, we will endeavor to extract the allegations relevant to the resolution of this motion.
[3] We will refer to the Church in referencing the contractual entity, and will refer to Staatz – a principal director of the Church – when discussing specific actions taken by her, or representations made by or to her.

for Oviedo on several prior occasions.  Id. ¶ 14.  The Church and Noble entered into a contract for the sale of the Property on July 9, 2014 (the "July 2014 Contract").  Id.  Ramirez was listed as the seller's attorney in the July 2014 Contract, even though the Church claims it never entered into a formal retainer agreement with Ramirez.  Id. ¶¶ 88-92; 128-129.  Unbeknownst to the Church, Ramirez was also representing Noble in the sale.  Id. ¶ 14.

Under the July 2014 Contract, Noble was to pay $15,000 as a down payment for the Property.  Id. ¶ 15.  The Church alleges that Ramirez was to accept the payment from Noble and deposit the funds into an escrow account for the benefit of the Church.  Id. ¶ 17.  Instead, Ramirez failed to deposit most or all of the funds into the escrow account – either because Noble lacked the funds to make the down payment or because Noble instructed Ramirez not to deposit the funds – and failed to inform the Church that the down payment had not been satisfied.  Id. ¶¶ 16-17.

In May of 2015, nearly a year after the signing of the July 2014 Contract, Oviedo had an appraisal done on the Property, which the ATPC alleges was done for the purpose of devaluing the Property for the benefit of Noble.  Id. ¶¶ 21-22, 235-236.  Oviedo allegedly told Ramirez that the appraisal report was for Staatz, but Staatz had not ordered the report.  Id. ¶¶ 22, 260.  The Property was appraised at $500,000, and Oviedo disclosed this information to Noble, who then negotiated a new contract with a lower sales price

of $500,000, which the parties entered into on July 9, 2015 (the "July 2015 Contract"). Id. ¶¶ 23, 241-44. The Church claims that it was forced to accept the lower price as Ramirez had evicted the Church's tenants in August of 2014. Id. ¶¶ 23, 230. In entering into the July 2015 Contract, Noble asserted that she had already paid the $15,000 down payment even though Ramirez hadn't deposited these funds into the escrow account. Id. ¶¶ 23, 264-268.

After the parties had entered into the July 2015 Contract, Oviedo or Noble instructed Ramirez not to file the OAG documents because Noble did not have sufficient funds to close. Id. ¶¶ 317-320.

Nearly another year passed when, on May 9, 2017, Noble, through her company, Urbany Investment Group, LLC., retained Browne as her attorney in connection with the acquisition of the Property. Id. ¶¶ 324-27. Browne drafted a third contract (the "May 2017 Contract"), which contained the same $500,000 price as the July 2015 Contract, but which now defined the contract deposit at $1,000 instead of $15,000. Id. ¶¶ 28, 330-33, 843, 875. The May 2017 Contract listed Browne and Ramirez as the Church's attorneys, with no attorney listed for Noble. Id. ¶¶ 29, 334-36, Ex. R. The ATPC claims, however, that Browne was not retained by the Church, and there were no written communications between Browne and the Church. Id. ¶¶ 353-60. However, the complaint also claims that Browne "took upon [sic] the representation of the Church

-4-

regarding the sale of" the Property at some point between May 9 and May 16, 2017, and misled the Church into believing that she acted on the Church's behalf.[4]  Id. ¶¶ 377-381, 840-41.  On May 16, 2017, Browne directed Staatz – who, at this point in time, would have been in her late 80s[5] – to sign the May 2017 Contract on behalf of the Church, claiming that even though she was recommended by Noble, she was in fact the Church's attorney and would act in its best interest.  Id. ¶¶ 890-892.  As the Church alleges, though Staatz informed Browne that she had reservations about signing the May 2017 Contact, Browne informed her that "Maria Noble was an honorable woman and always lived up to her word," that this was "the best contract the Church could get on the open market," and that Oviedo was a "good and honest broker."  Id. ¶¶ 896-98.  She also informed Staatz that she had received the contract deposit from Noble and that she would complete the OAG paperwork for approval of the sale on the Church's behalf.  Id. ¶¶ 893, 898.

The ATPC further states, without any basis in support, that Browne was aware of Oviedo's and Ramirez's conflicts-of-interest and the actions they took in violation of their duties to the

---

[4]  To reconcile this apparent inconsistency, we take the Church to mean that while there was no formal, written retainer agreement between Browne and the Church, Browne acted as attorney for the Church, and the Church accepted her representations that she was the Church's attorney.

[5]  Noble's Amended Complaint, filed in April of 2020, describes Staatz as "approximately 90 years old."  ECF No. 33 ¶ 15.

Church, and failed to reveal those actions to the Church.  Id. ¶¶ 970-71, 980-81, 1004, 1019-20.

Finally, Browne submitted a letter with her motion to dismiss which is signed by Staatz and purports to show that the Church terminated her services as of October 2, 2017.  ECF No. 53, Ex. B. However, the ATPC expressly denies the existence of a letter from the Church to Browne terminating her services.  ATPC ¶¶ 371-73.

**2. Procedural History**

On August 28, 2018, Noble filed her original complaint against the Church seeking specific performance of the July 2014 Contract. ECF No. 1.  After conducting discovery, Noble moved for and was granted leave to file an amended complaint, this time seeking specific performance of the May 2017 Contract.  ECF No. 33.  The Church answered the amended complaint, ECF No. 32, and, on April 20, 2020, filed a third-party complaint against Oviedo, Ledwin Enterprises Inc., Ramirez and Browne.  ECF No. 34.

Browne then filed a pre-motion letter requesting a conference to discuss her proposed motion to dismiss the Church's third-party complaint as against her. ECF No. 41. After reviewing Browne's pre-motion letter, the Court issued an order granting her leave to file the motion without the necessity of a pre-motion conference, and granting the Church leave to file an amended third-party complaint to cure any alleged deficiencies that Browne had raised in her pre-motion letter.  ECF. No. 43.  The Church then

filed the ATPC on July 22, 2020, and the parties stipulated to a briefing schedule for Browne's motion.

**LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In determining whether a claim has facial plausibility, "we accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). However, that tenet "is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678.

**DISCUSSION**

**1. Breach of Fiduciary Duty**

The ATPC describes the Church's first cause of action against Browne as one for "Deceit and Deception per the Disciplinary Code & Breach of Implied Contract of Good Faith." However, in its opposition to Browne's motion, the Church additionally argues that Browne has breached her fiduciary duties. Based on the overlap of the two articulations of the claim, we will construe the first

cause of action against Browne as one for breach of her fiduciary duty.  Cf. Podell v. Citicorp Diners Club, Inc., 859 F. Supp. 701, 706 (S.D.N.Y. 1994) ("The complaint . . . should not be dismissed simply because plaintiff's allegations do not support the legal theory it advances, because the court has a duty to examine the complaint to determine if the allegations provide for relief on any possible theory.").

"To state a claim for breach of fiduciary duty [under New York law],[6] plaintiff must allege '(1) the existence of a fiduciary relationship; (2) a knowing breach of a duty that relationship imposes; and (3) damages suffered.'"  Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison L.L.P., 351 F. App'x 472, 474 (2d Cir. 2009) (quoting Carruthers v. Flaum, 388 F. Supp. 2d 360, 381 (S.D.N.Y. 2005)).

"Counted among the[] hornbook fiduciary relations are those existing between attorney and client."  United States v. Corbin, 729 F. Supp. 2d 607, 614 (S.D.N.Y. 2010) (quoting United States v. Chestman, 947 F.2d 551, 568 (2d Cir. 1991)) (internal quotation marks omitted).  While the Church disavows that it entered into a written retention agreement with Browne, "[a] formal contract is not a prerequisite to forming an attorney-client relationship." Kleeberg v. Eber, No. 16 Civ. 9517, 2019 WL 2085412, at *13

---

[6] The parties do not dispute that New York law applies.

(S.D.N.Y. May 13, 2019).  "When no written agreement exists, 'it is necessary to look to the words and actions of the parties to ascertain if an attorney-client relationship was formed.'"  Id. (quoting C.K. Indus. Corp. v. C.M. Indus. Corp., 213 A.D. 2d 846,848, 623 N.Y.S. 2d 410 (App. Div. 1995)).  For example, courts may consider whether the client and attorney engaged in activity "in furtherance of the objective of the retention," Makhoul v. Watt, No. 11 Civ. 05108, 2014 WL 977682, at *6 (E.D.N.Y. Mar. 12, 2014), and whether the attorney provided legal advice and publicly held himself out as an attorney to the purported client.  See Sang Lan v. Time Warner, Inc., No. 11 Civ. 2870, 2014 WL 764250, at *8 (S.D.N.Y. Feb. 25, 2014).

According to the ATPC, Browne drafted the May 2017 Contract, which listed herself as attorney for the Church.  She then approached Staatz, representing that she was the Church's attorney and was acting in the Church's interest, and proceeded to provide advice on the advantages of selling the Church to Noble and the character of Noble and Oviedo in response to Staatz's misgivings regarding the sale.  She also represented to Staatz that she would continue legal work for the Church in obtaining the OAG's approval for the sale.  These alleged facts, and particularly the drafting of a contract listing herself as attorney for the Church, are sufficient to give rise to an attorney-client relationship between Browne and the Church.

Moreover, the ATPC sufficiently alleges that Browne knowingly breached her duties as counsel to the Church. An attorney has a fiduciary obligation to bring to his or her client's attention "all relevant considerations" when recommending a course of conduct. Summit Rovins & Feldesman v. Fonar Corp., 213 A.D. 2d 201, 202, 623 N.Y.S. 2d 245 (App. Div. 1995). "An attorney who fails to disclose a conflicting representation or circumstance that causes him or her to represent a client with diminished rigor, breaches his or her fiduciary duty to his or her client." Macnish-Lenox, LLC v. Simpson, 17 Misc. 3d 1118(A), 851 N.Y.S. 2d 64 (Sup. Ct. 2007) (citing Estate of Re v. Kornstein Veisz & Wexler, 958 F. Supp. 907, 927-28 (S.D.N.Y. 1997)).

According to the Church, Noble retained Browne as her attorney to assist in her acquisition of the Church's Property mere days before Browne began acting as attorney for the Church in the same matter. If true, this is a quintessential conflict-of-interest, and the Church had a right to know this information before relying on Browne's advice to enter into the May 2017 Contract.[7]

Lastly, the Church adequately avers damages by alleging that the Property has value in excess of $1,000,000, whereas, under the May 2017 Contract, the Church is obligated to sell the Property

---

[7]  Browne cites to Oviedo's deposition testimony that Noble did not retain Browne, but merely advanced Browne's retainer on the Church's behalf in order to facilitate the sale. ECF No. 57 at 4. Such testimony, which is in any event hearsay, cannot be credited at the pleading stage. See e.g. Jager v. Mitschele, No. 06 Civ. 1938, 2010 WL 4722292, at *3 (E.D.N.Y. Nov. 12, 2010).

for only $500,000.  ATPC ¶ 1015-16.  Specifically, the Church has adequately pled that Browne's advice that the May 2017 Contract was a good deal – advice given without the disclosure of Browne's conflict-of-interest – was a "substantial factor" in causing the Church to accept a below-market-value price for its property.  See Milbank, Tweed, Hadley & McCloy v. Boon, 13 F.3d 537, 543 (2d Cir. 1994) (explaining that plaintiff must demonstrate that attorney's breach of fiduciary duty was a substantial factor contributing to – as opposed to a but-for cause of – plaintiff's losses); ABKCO Music, Inc. v. Harrisongs Music, Ltd., 722 F.2d 988, 995–96 (2d Cir. 1983).

Browne contends that the "damages alleged in the ATPC are . . . lost profits . . . [which] are the very type of uncertain and speculative damages . . . insufficient to sustain a claim for breach of fiduciary duty."  ECF No. 57 at 7.  The Church, however, is not seeking lost profits but rather the difference between the fair market value of the Property and the price at which it may be required sell the Property to Noble, which it alleges as a consequence of Browne's breach of fiduciary duty.

The cases Browne cites are inapposite.  In Atias v. Sedrish, 133 Fed. App'x. 759, 760 (2d Cir. 2005), the Circuit upheld the district court's rejection of plaintiff's damages where the estimate of loss profits – "based on a 15-year projection relying on numerous assumptions, including a steady 10% per year increase

-11-

in apartment prices, a constant rate of rent-regulated apartments being vacated, minimal repairs and renovations, and a fairly low level of risk" – was speculative and where the contract in dispute did not contemplate lost profits damages. Giuliano v. Gawrylewski, 40 Misc. 3d 1210(A), 975 N.Y.S. 2d 709 (Sup. Ct. 2013), is equally unavailing. There, the court dismissed plaintiff's breach of fiduciary duty claim in part because plaintiff could not prove that, had the fiduciary considered alternative investments which the complaint alleged it ignored, this would have resulted in the avoidance of plaintiff's bankruptcy filing. Here, the Church's theory of damages does not concern future income streams or hypothetical investments but the market value of real property. Browne offers no reason why this value could not be ascertained with reasonable certainty by the engagement of professional, neutral appraisers. See, e.g., In re Kerwin, 996 F.2d 552, 560 (2d Cir. 1993) ("Determining the market value of real property is a constant feature in today's commercial world. Such valuations are regularly used . . . to make business decisions. . . . [T]he property in this case was capable of valuation by the bankruptcy court.").[8]

---

[8] Browne challenges the Church's theory of damages with two additional arguments, neither of which merit significant discussion. First, she suggests that because the Church had already agreed to sell the Property to Browne for $500,000 in the July 2015 Contract prior to Browne's retention, it cannot allege that it has suffered damages by entering into the May 2017 Contract, which has the same sales price. This ignores the fact that Noble's

The Church therefore has adequately pled a claim of breach of fiduciary duty against Browne.

### 2. Fraud

For many of the same reasons, the ATPC also pleads a claim of fraud against Browne.[9]  "The elements of fraud under New York law are: (1) a misrepresentation or a material omission of fact which was false and known to be false by defendant, (2) made for the purpose of inducing the other party to rely upon it, (3) justifiable reliance of the other party on the misrepresentation or material omission, and (4) injury."  Sawabeh Info. Servs. Co. v. Brody, 832 F. Supp. 2d 280, 297 (S.D.N.Y. 2011) (quoting Premium Mortgage Corp. v. Equifax, Inc., 583 F.3d 103, 108 (2d Cir. 2009)). To meet Rule 9(b)'s heightened pleading standard, applicable here, the plaintiff must allege the fraud with specificity.  Namely, the plaintiff must "(1) detail the statements (or omissions) that the

---

action against the Church seeks to enforce the May 2017 Contract, not the July 2015 Contract.  Browne assumes that Noble could have enforced the July 2015 Contract, but this is not at all clear, given the apparent failure of Noble to secure that contract with the required down payment.
    Browne further asserts that the Church cannot allege damages because it terminated Browne's services and hired a new attorney who could have completed the sale.  ECF No. 53 at 8.  This appears to misunderstand the Church's theory of Browne's liability.  The Church is not claiming that Browne is liable to it if the Church is liable to Noble for failing to close on the sale of the Property.  Rather, the Church claims that if it is required to sell the Property pursuant to the May 2017 Contract, Browne is liable for the Church's losses that will arise from an order of specific performance.  The fact that Browne was terminated in October of 2017 – several months after she allegedly induced the Church to enter into the May 2017 Contract – is irrelevant.
[9]    The ATPC states a cause of action for "conspiracy to defraud," but "New York does not recognize civil conspiracy as an independent cause of action." Reich v. Lopez, 38 F. Supp. 3d 436, 460 (S.D.N.Y. 2014), aff'd, 858 F.3d 55 (2d Cir. 2017).

plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." Harsco Corp. v. Segui, 91 F.3d 337, 347 (2d Cir. 1996).

Here, the ATPC alleges that on or about May 16, 2017, Browne omitted from her statements to Staatz the fact that she had been retained by Noble to represent her in the purchase of the Church's Property. The omission was clearly material: had the Church been aware of Browne's dual representation, it is reasonable to conclude that this would have affected the Church's reliance on Browne's advice of the fairness of the May 2017 Contract and the trustworthiness of Noble and Oviedo.[10] While Browne argues that the ATPC fails to allege intent, under Rule 9(b) "intent . . . may be averred generally." A plaintiff must "allege facts that give rise to a strong inference of fraudulent intent" which may be established "by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290-91 (2d Cir. 2006). Here, Browne offers no other explanation for her alleged omission of her representation of Noble – in violation of basic obligations

---

[10] Browne points out that statements of opinion are insufficient to state a claim of fraud, ECF No. 57 at 4, but here, the fraudulent conduct is Browne's omission of her representation of Noble, not her statements on the May 2017 Contract or about Noble and Oviedo, which in any event may not constitute non-actionable opinions.

of ethical attorney conduct[11] – other than to conceal her conflict-of-interest in order to engender the Church's trust and cause it to take her advice to sell the Property to her other client, Noble.

Similarly, Browne's assertion that the ATPC fails to allege reliance is unconvincing. "Reasonable reliance is often a question of fact for the jury rather than a question of law for the court. Generally, the reliance element does not require complex legal analysis and may be satisfied simply by plaintiff's testimony." Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc., 888 F. Supp. 2d 431, 462 (S.D.N.Y. 2012). The ATPC alleges that Browne, an attorney, represented to the Church's agent, Staatz – a woman in her late 80s by 2017, with no apparent expertise or sophistication in real estate transactions – that she was the Church's attorney and acted in its interest. She then proceeded to offer advice on the fairness of the May 2017 Contract, and Staatz – who had expressed reservations to Browne regarding the sale – relied on that advice and agreed to sign the May 2017 Contract on behalf of the Church. These facts sufficiently establish reasonable reliance.

Lastly, for the reasons stated above, the ATPC adequately alleges injury – i.e., that Browne's fraudulent omission caused

---

[11] See New York Rule of Professional Conduct 1.7 (prohibiting representation of a client where a reasonable lawyer would conclude that "the representation will involve the lawyer in representing differing interests" unless, inter alia, "each affected client gives informed consent").

the Church to enter into a contract to sell the Property for a lower sales price than its market value.[12]

Therefore, the Church has adequately pled a claim of fraud against Browne.

## CONCLUSION

For the foregoing reasons, Browne's motion to dismiss is DENIED.  The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 50.

**SO ORDERED.**

Dated:    New York, New York
          March 11, 2021

                                    _____
                                       NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE

---

[12] Once again, Browne incorrectly argues that the Church's theory of damages relies on "loss of profits" which are not recoverable on a claim of fraud.  As explained above, the Church's alleged damages result not from loss of profits but from the forced sale of real property below its market value.  The cases Browne cites in support of her argument are inapposite.  See Highland Capital Mgmt., L.P. v. Schneider, 533 F. Supp. 2d 345, 357 (S.D.N.Y. 2008) (explaining that alleged lost business opportunities are not recoverable under a claim of fraud); Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (1996) (explaining plaintiff could not recover for "greater profit that could have been made" from selling investment portfolio).  Again, these cases deny awarding plaintiffs damages for hypothetical losses.  Here, the loss alleged is the value of the Church's real property which is currently in its possession and has a reasonably ascertainable value.